

| | U.S. Department of Justice |
|---|---|
| | *United States Attorney* |
| | *Eastern District of New York* |
| DMP:SKW/GMR | *271 Cadman Plaza East* |
| F. #2024R00922 | *Brooklyn, New York 11201* |

October 11, 2024

<u>By ECF and Email</u>

The Honorable Eric Komitee
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Asif Merchant
                <u>Criminal Docket No. 24-362 (EK)</u>

Dear Judge Komitee:

      For "good cause" shown below, the government respectfully requests that the Court enter the proposed Protective Order attached to this motion, which imposes restrictions on the use and dissemination of materials and information disclosed by the government to the defendant pursuant to the government's obligations under Rules 16 and 26.2 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3500, and pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

      The defendant and his attorney signed the Protective Order and consent to the Court entering the proposed Protective Order.

I.      <u>Background</u>

      On September 10, 2024, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with attempting to commit an act of terrorism transcending national boundaries, in violation of Title 18, United States Code, Sections 2332b(a)(1), 2332b(a)(2), 2332b(b)(1)(A), 2332b(b)(1)(C), 2332b(c)(1)(A), and 2332b(c)(2), and murder for hire, in violation of Title 18, United States Code, Section 1958(a).

      As described in the charging documents, beginning no later than the spring of 2024, the defendant traveled to the United States and orchestrated a plot to assassinate U.S. government officials. As part of his scheme, the defendant hired and paid hitmen to murder U.S. government officials.

Case 1:24-cr-00362-EK    Document 21    Filed 10/11/24    Page 2 of 5 PageID #: 91

II.     The Government's Anticipated Production of Discovery

As part of its national security investigation, the government obtained communications and records from third parties and several government agencies, collected records and other information through physical surveillance and inspections, served search warrants on electronic communications service providers, and executed search warrants on a physical premise and several electronic devices, resulting in the seizure of paper and electronic records relevant to the above-captioned case. The government anticipates that its discovery will include several broad categories of materials, including the following:

- Communications, including email, text messages and recorded phone calls, involving the defendant.

- Records and communications of various agencies of the United States Government, including information collected through sensitive non-public law enforcement investigative techniques.

- Law enforcement records relating to the government's efforts to investigate the defendant's activities.

- Recordings and other documents related to a confidential informant and undercover agents.

For the reasons set forth below, the government seeks to produce this anticipated discovery pursuant to the attached Protective Order.

III.    Legal Standard

This Court has the authority under Federal Rule of Criminal Procedure 16(d) to issue a protective order restricting the dissemination of discovery for good cause. See Fed. R. Crim. P. 16(d)(1) ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."); United States v. Stewart, 590 F.3d 93, 98-99 (2d Cir. 2009) (citing Fed. R. Crim. P. 16(d)); In re: Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 93, 122 (2d Cir. 2008) (noting that Rule 16(d) grants district courts the discretion to establish conditions "under which the defense may obtain access to discoverable information"); United States v. Smith, 985 F. Supp. 2d 506, 521 (S.D.N.Y. 2013) (noting that "the Supreme Court has held that the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of materials which they may be entitled to inspect").

By its own terms, Rule 16 contemplates that discovery materials should be exchanged privately between the parties and not disclosed publicly. See Seattle Times Company v. Rhinehart, 467 U.S. 20, 31-33 (1984) (noting that pretrial civil discovery materials are not traditionally available to the public); United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) (holding the same in the context of criminal discovery); Smith, 985 F. Supp.

2

2d at 519 (noting that pretrial discovery "is usually conducted in private"). Because the purpose of pretrial discovery is solely to prepare a defense, discovery materials provided by one party or another should not be disseminated before trial to members of the public. See Anderson, 799 F.2d at 1441 ("Discovery, whether civil or criminal, is essentially a private process because the litigants and courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private."); United States v. McVeigh, 918 F. Supp. 1452, 1460 (W.D. Okla. 1996) (limitations on public disclosure of discovery information "assure the fairness of the proceedings" and "emphasize that trials are conducted inside the courtroom . . . rather than on the courthouse steps").

For these reasons, courts in this Circuit and others have held that it is appropriate to issue a protective order limiting the dissemination of discovery materials solely to the defendant for his use in preparing a defense for trial. See, e.g., Seattle Times, 467 U.S. at 37 (affirming protective order limiting dissemination of pretrial discovery); Stewart, 590 F.3d at 98-99 (same); Anderson, 799 F.2d at 1441 (same); Smith, 985 F. Supp. 2d at 535 (same); United States v. Salemme, 978 F. Supp. 386, 389-90 (D. Mass. 1997) (same); United States v. Al Malik Alshahhi et al., 21-CR-371 (2021 E.D.N.Y.) (ECF 27) (BMC) (same).

IV.   Good Cause Exists to Issue the Protective Order

Under Rule 16(d), good cause exists for the Court to issue the Protective Order restricting the dissemination of the discovery materials. As described above, the discovery in this case implicates a number of different interests that should be protected. For example, the U.S. government and law enforcement records may reveal information about the use of sensitive law enforcement investigative techniques to detect the charged conduct, which if widely disclosed, could compromise their use in future investigations and harm national security interests gong forward. In addition, the discovery will include information related to a confidential human source and undercover agents, the disclosure of which could jeopardize the individuals' personal safety as well as their ability to conduct future law enforcement operations. Moreover, the discovery involves sensitive non-public information relating to communications, records and documents of various agencies of the United States Government, the disclosure of which could also endanger national security interests.

Indeed, because the defendant is alleged to have orchestrated his plot to assassinate U.S. government officials in conjunction with individuals overseas, disclosure of this information to foreign governments, such as the Government of the Islamic Republic of Iran, or terrorist organizations, such as the Islamic Revolutionary Guard Corps ("IRGC"), could greatly harm U.S. national security interest and the safety of witnesses and agents.

The proposed Protective Order balances these varied security interests of the government and witnesses against the defendant's need to investigate the charges against him and to prepare a defense by restricting the disclosure of discovery to individuals with a specific need to review the discovery. The Protective Order permits the defendant and counsel to share discovery materials with defense staff, including expert witnesses and litigation consultants, and establishes a process for the defendant and defense counsel to obtain authorization, either

from the government or the Court, to share discovery with others if there is a need to do so. The Protective Order similarly establishes a process for the defendant and defense counsel to be able to use and refer to the discovery material in litigation without compromising the interests that the Protective Order is intended to protect.

At the same time, the Protective Order requires the defendant and defense counsel to ensure that each person to whom they provide discovery material is advised of the terms of the Protective Order and agrees to be bound by them, and takes care to safeguard the discovery material that is disclosed to them. The Protective Order also balances the defendant's needs to protect defense strategy with the government's need to ensure accountability for the handling of discovery material by requiring defense counsel to retain the copies of Attachment A to the Protective Order that are signed and dated by the authorized recipients to whom defense counsel disclose discovery material, and to return the discovery material and provide the signed copies of Attachment A to the government at the conclusion of the litigation, or earlier, if so ordered by the Court.

Finally, the Protective Order allows the government to designate particularly sensitive discovery material as "Sensitive Discovery Material" or as "Attorneys' Eyes Only Material," which is subject to greater restrictions on its use and dissemination. While defense counsel and defense staff will have access to the Sensitive Discovery Material, the defendant may only review this material in the presence of counsel and may not retain a copy at the Metropolitan Detention Center. Attorneys' Eyes Only Material will be disseminated only to defense counsel and defense staff but not to the defendant. These categories are necessary to ensure that particularly sensitive information, such as information with national security implications or which could reveal the identity of the confidential informant or undercover law enforcement agents, is not misused or disseminated.

V.      <u>Conclusion</u>

        Given the sensitive nature of the discovery in this case and the potential harm to the national security of the United States as well as to victims and third parties that would result from its uncontrolled disclosure to those without a legitimate need to review the discovery, the government respectfully requests that the Court enter the Protective Order.

                                        Respectfully submitted,

                                        BREON PEACE
                                        United States Attorney

By:    /s/
           Sara K. Winik
           Gilbert M. Rein
           Assistant U.S. Attorneys
           (718) 254-7000

Enclosure

cc:     Clerk of Court (EK) (by ECF and Email)
        Defense Counsel (by ECF and Email)