NJM:SKW/GMR/NCG
F. #2023R00922

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                    24-CR-362 (EK)

ASIF MERCHANT,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM OF LAW IN SUPPORT OF THE
GOVERNMENT'S MOTIONS *IN LIMINE* TO ADMIT CERTAIN EVIDENCE
AND PRECLUDE CERTAIN EVIDENCE AND ARGUMENTS AT TRIAL

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

Sara K. Winik
Gilbert M. Rein
Nina C. Gupta
Assistant United States Attorneys
    (Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

RELEVANT BACKGROUND ............................................................................................... 2

I.  Overview of the Criminal Scheme ................................................................................ 2

II.  Procedural History ......................................................................................................... 5

ARGUMENT ........................................................................................................................... 6

I.  The Court Should Admit the Defendant's Statements as Party-Opponent Admissions
When Offered by the Government and Preclude the Defendant's Statements When
Offered by the Defendant as Hearsay ............................................................................ 6

    A. Background Regarding the Defendant's Statements ................................................. 6

    B. Applicable Law and Discussion ............................................................................... 6

II.  The Court Should Admit the Defendant's Proffer Protected Statements at Trial If the
Waiver Provision of the Proffer Agreement is Triggered ............................................. 10

    A. Background Regarding the Defendant's Proffers with the Government ................... 11

    B.  The Government Will Seek to Admit the Defendant's Proffer Statements If He or His
    Counsel Trigger the Waiver Provision .................................................................... 12

III.  Business Records, Public Records, and Electronic Records Should Be Admitted Under
Federal Rule of Evidence 902(11) ................................................................................ 14

IV.  The Court Should Allow the Government to Authenticate Extractions from Cell Phones
and Other Electronic Devices by Certification .............................................................. 17

V.  The Court Should Preclude the Defendant From Raising an Entrapment Defense Because
He Cannot Meet the Burden of Production as to Both Elements of the Defense ............. 19

VI.  The Court Should Preclude Evidence or Argument About the Existence or Absence of
Classified Information as Irrelevant ............................................................................... 21

VII.  The Court Should Preclude Evidence and Testimony Regarding Prior Good Acts ......... 24

VIII.  The Court Should Preclude Evidence and Argument About Possible Punishments ........ 26

IX.  The Court Should Preclude Examination Regarding the Identity of a Third-Party Country
Which Assisted the Government's Investigation ............................................................ 28

X.  The Court Should Permit the Government to Use Certain Measures to Protect the
Identities of Witnesses .................................................................................................. 33

    A. Applicable Law ...................................................................................................... 34

    B.  The Government's Proposed Limited Protective Measures Are Warranted ............. 37

CONCLUSION ....................................................................................................................... 42

TABLE OF AUTHORITIES

Page(s)

Cases

*Alvarado v. Burge*,
  No. 05-CV-1851, 2006 WL 1840020 (S.D.N.Y. June 30, 2006) ............................................... 37

*Ayala v. Speckard*,
  131 F.3d 62 (2d Cir. 1997)............................................................................................................ 35

*Brady v. Maryland*,
  373 U.S. 83 (1963) ........................................................................................................................ 39

*Carson v. Fischer*,
  421 F.3d 83 (2d Cir. 2005)............................................................................................................ 35

*Chambers v. Mississippi*,
  410 U.S. 284 (1973)....................................................................................................................... 34

*de Jesus-Castaneda v. United States*,
  133 S. Ct. 2788 (2013) .................................................................................................................. 34

*Delaware v. Fensterer*,
  474 U.S. 15 (1985) ........................................................................................................................ 34

*Dellwood Farms, Inc. v. Cargill, Inc.*,
  128 F.3d 1122 (7th Cir. 1997) ...................................................................................................... 30

*Dep't of Navy v. Egan*,
  484 U.S. 518 (1988)....................................................................................................................... 23

*Diaz v. United States*,
  No. 14-CV-7016 (KAM), 2020 WL 3403057 (E.D.N.Y. June 19, 2020) ............................... 10

*Dutton v. Evans*,
  400 U.S. 74 (1970) ........................................................................................................................ 34

*Friedman v. Bache Halsey Stuard Shields, Inc.*,
  738 F.3d 1336 (D.C. Cir. 1984) ................................................................................................... 30

*Giglio v. United States*,
  405 U.S. 150 (1972)....................................................................................................................... 39

*Goldenberg v. United States*,
  No. 09-CV-4005 (NGG), 2012 WL 1599869 (E.D.N.Y. May 4, 2012).................................... 14

*Hartford Courant Co. v. Pellegrino*,
  380 F.3d 83 (2d Cir. 2004)............................................................................................................ 10

*In re Dep't of Investigation of City of New York*,
  856 F.2d 481 (2d Cir. 1988).......................................................................................................... 29

*In re Terrorist Attacks on Sept. 11*,
  *2011*, 523 F. Supp. 3d 478 (S.D.N.Y. 2021)....................................................................... 29, 31

ii

*In re The City of New York,*
  607 F.3d 923 (2d Cir. 2010)....................................................................29, 30

*Lugosch v. Pyramid Co. of Onondaga,*
  435 F.3d 110 (2d Cir. 2006).........................................................................10

*Melendez-Diaz v. Massachusetts,*
  557 U.S. 305 (2009)................................................................................15, 18

*Morales v. Artuz,*
  281 F.3d 55 (2d Cir. 2002).............................................................................35

*Nat'l Congress for P.R. Rights ex rel. Perez v. City of N.Y.,*
  194 F.R.D. 88 (S.D.N.Y. 2000) ....................................................................29

*Nelson v. Crowley,*
  No. 07-CV-849, 2009 WL 498909 (S.D.N.Y. Feb. 23, 2009)........................37

*New York v. Quarles,*
  467 U.S. 649 (1984).................................................................................6, 11

*Rawlings v. Kentucky,*
  448 U.S. 98 (1980).......................................................................................32

*Rodriguez v. Miller,*
  439 F.3d 68 (2d Cir. 2006).............................................................................41

*Rosemond v. United States,*
  378 F. Supp. 3d 169 (E.D.N.Y. 2019) ...........................................................11

*Roviaro v. United States,*
  353 U.S. 53 (1957).......................................................................................36

*Shannon v. United States,*
  512 U.S. 573 (1994)................................................................................26, 27

*Shephard v. United States,*
  290 U.S. 96 (1933).........................................................................................8

*United States v. Alcantara,*
  396 F.3d 189 (2d Cir. 2005)...........................................................................10

*United States v. Alimehmeti,*
  284 F. Supp. 3d 477 (S.D.N.Y. 2018)..................................................*passim*

*United States v. Amodeo,*
  71 F.3d 1044 (2d Cir. 1995)...........................................................................10

*United States v. Asainov,*
  No. 19-CR-402 (NGG) (E.D.N.Y. Jan. 13, 2023) .........................................36

*United States v. Badia,*
  827 F.2d 1458 (11th Cir. 1987) .....................................................................22

*United States v. Balsassare,*
  No. 11-CR-801 (JBW) (E.D.N.Y. July 23, 2012)......................................37, 41

*United States v. Barrow,*
    400 F.3d 109 (2d Cir. 2005)..................................................................... 12, 13

*United States v. Blake,*
    195 F. Supp. 3d 605 (S.D.N.Y. 2016)............................................................ 7

*United States v. Blume,*
    967 F.2d 45 (2d Cir. 1992)............................................................................. 27

*United States v. Cabrera,*
    13 F.4th 140 (2d Cir. 2021) ........................................................................... 19

*United States v. Cardascia,*
    951 F.2d 474 (2d Cir. 1991)........................................................................... 8

*United States v. Cintolo,*
    818 F.2d 980 (1st Cir. 1987) ......................................................................... 29

*United States v. Curcio,*
    680 F.2d 881 (2d Cir. 1982)........................................................................... 10

*United States v. Damti,*
    109 F. App'x 454 (2d Cir. 2004) .................................................................. 26

*United States v. Davidson,*
    308 F. Supp. 2d 461 (S.D.N.Y. 2004).......................................................... 7

*United States v. Davis,*
    No. 18-CR-00131, 2021 WL 1931871 (D. Alaska May 13, 2021) ........................................ 19

*United States v. Dawkins,*
    999 F.3d 767 (2d Cir. 2021)........................................................................... 25

*United States v. de Jesus-Casteneda,*
    705 F.3d 1117 (9th Cir.) ................................................................................ 35

*United States v. Diaz-Maldonado,*
    727 F.3d 130 (1st Cir. 2013).......................................................................... 21

*United States v. DiMarzo,*
    80 F.3d 656 (1st Cir. 1996)............................................................................ 27

*United States v. Doe,*
    63 F.3d 121 (2d Cir. 1995)............................................................................. 10

*United States v. Ellis,*
    460 F.3d 920 (7th Cir. 2006) ......................................................................... 15

*United States v. El-Mezain,*
    664 F.3d 467 (5th Cir. 2011) ......................................................................... 36

*United States v. Forney,*
    No. 24-CR-146 (KAM), 2025 WL 2208298 (E.D.N.Y. Aug. 4, 2025)................................. 18

*United States v. Gentile,*
    104 F.3d 356 (2d Cir. 1996)........................................................................... 20

*United States v. Goldenberg,*
    No. 04-CR-159 (NGG) (E.D.N.Y) ................................................................ 14

*United States v. Gonzalez,*
    144 F.4th 396 (2d Cir. 2025) ...................................................................... 32

*United States v. Gonzalez,*
    399 F. App'x 641 (2d Cir. 2010) ................................................................... 8

*United States v. Gotti,*
    457 F. Supp. 2d 395 (S.D.N.Y. 2006) ........................................................... 8

*United States v. Greenberg,*
    444 F.2d 369 (2d Cir. 1971) ...................................................................... 20

*United States v. Gurolla,*
    333 F.3d 944 (9th Cir. 2003) ..................................................................... 20

*United States v. Harper,*
    No. 05-CR-6068, 2009 WL 140125 (W.D.N.Y. Jan. 20, 2009) ................................. 8

*United States v. Harwood,*
    998 F.2d 91 (2d Cir. 1993) ........................................................................ 7

*United States v. Hashimi et al.,*
    No. 22-CR-553 (ENV) (E.D.N.Y. Sept. 30, 2025) ............................................. 36

*United States v. Hernandez,*
    No. 12-CR-809 (PKC), 2013 WL 3936185 (S.D.N.Y. July 29, 2013) ....................... 36, 38

*United States v. Hossain,*
    No. 19-CR-606 (SHS), 2021 WL 4272827 (S.D.N.Y. Sept. 21, 2021) ................... *passim*

*United States v. Hwa,*
    No. --- F.4th ---, 2025 WL 3492484 (2d Cir. Dec. 5, 2025) ................................... 9

*United States v. Jackson,*
    180 F.3d 55 (2d Cir. 1999) ......................................................................... 9

*United States v. Jimenez,*
    513 F.3d 62 (3d Cir. 2008) ....................................................................... 16

*United States v. Johnson,*
    507 F.3d 793 (2d. Cir. 2007) .................................................................... 8, 9

*United States v. Johnson,*
    688 F.3d 494 (8th Cir. 2012) ..................................................................... 15

*United States v. Kandic,*
    No. 17-CR-449 (NGG) (E.D.N.Y. Feb. 28, 2022) ......................................... 36, 40

*United States v. Komasa,*
    767 F.3d 151 (2d Cir. 2014) ...................................................................... 16

*United States v. Lewis,*
    110 F.3d 417 (7th Cir. 1997) ..................................................................... 27

*United States v. Mahaffy*,
   No. 05-CR-613 (ILG), 2007 WL 1094153 (E.D.N.Y. Apr. 10, 2007) ..................................... 7

*United States v. Marin*,
   669 F.2d 73 (2d Cir. 1982) ................................................................................................ 7

*United States v. McDaniel*,
   398 F.3d 540 (6th Cir. 2005) ............................................................................................ 7

*United States v. Michel*,
   879 F. Supp. 2d 291 (E.D.N.Y. 2012) .............................................................................. 16

*United States v. Morgan*,
   505 F.3d 332 (5th Cir. 2007) ........................................................................................... 15

*United States v. Morrison*,
   153 F.3d 34 (2d Cir. 1998) .............................................................................................. 32

*United States v. Naseer*,
   10 CR 19 (RJD), 2015 WL 13843166 ..................................................................... *passim*

*United States v. Pugh*,
   No. 15-CR-116 (NGG) (E.D.N.Y. Feb. 24, 2016) ........................................................... 36

*United States v. Qualls*,
   613 F. App'x 25 (2d Cir. 2015) ................................................................................. 15, 16

*United States v. Rivera*,
   No. 13-CR-149 (KAM), 2015 WL 1725991 (E.D.N.Y. Apr. 15, 2015) ............................. 14

*United States v. Roberts*,
   660 F.3d 149 (2d Cir. 2011) ...................................................................................... 13, 14

*United States v. Rom*,
   528 F. App'x 24 (2d Cir. 2013) ....................................................................................... 16

*United States v. Salman*,
   No. 2025 WL 3089279 ..................................................................................................... 32

*United States v. Scarpa*,
   897 F.2d 63 (2d Cir. 1990) .............................................................................................. 25

*United States v. Scarpa*,
   913 F.2d 993 (2d Cir. 1990) ............................................................................................ 26

*United States v. Schulte*,
   436 F. Supp. 3d 698 (S.D.N.Y. 2020) .............................................................................. 41

*United States v. Sherman*,
   240 F.2d 949 (2d Cir. 1957) ............................................................................................ 20

*United States v. Sosa-Zarzuela*,
   21 CR. 41 (PAC), 2022 WL 16647783 ............................................................................. 21

*United States v. Stewart*,
   590 F.3d 93 (2d Cir. 2009) .............................................................................................. 23

*United States v. Terranova,*
   750 F. Supp. 3d 15 (E.D.N.Y. 2024) ................................................................ 18

*United States v. Thomas,*
   116 F.3d 606 (2d Cir. 1997)................................................................... 27, 28

*United States v. Urena,*
   8 F. Supp. 3d 568 (S.D.N.Y. 2014) ................................................................ 38

*United States v. Vasco,*
   564 F.3d 12 (1st Cir. 2009) ................................................................ 19

*United States v. Walker,*
   191 F.3d 326 (2d Cir. 1999)................................................................ 25

*United States v. Wang,*
   No. 22-CR-553 (ENV) (E.D.N.Y. July 17, 2024) ................................... 25

*United States v. Wang,*
   No. 22-CR-230 (DC) (E.D.N.Y. July 18, 2024) ................................... 41

*United States v. Watts,*
   934 F. Supp. 2d 451 (E.D.N.Y. 2013) ............................................... 27

*United States v. Weiland,*
   420 F.3d 1062 (9th Cir. 2005) ................................................................ 15

*United States v. Wilson,*
   586 F. Supp. 1011 (S.D.N.Y. 1983)........................................... 31, 33

*United States v. Yeley-Davis,*
   632 F.3d 673 (10th Cir. 2011) ................................................................ 15

*United States v. Yousef,*
   327 F.3d 56 (2d Cir. 2003)........................................................................... 7

*United States v. Yunis,*
   867 F.2d 617 (D.C. Cir. 1989) ................................................... 23, 24

<u>Statutes</u>

18 U.S.C. app. 3 § 5 ................................................................................ 22

18 U.S.C. app. 3 § 6 ................................................................................ 22

18 U.S.C. app. 3 § 7 ................................................................................ 23

18 U.S.C. app. 3 § 8(c) ................................................................................ 23

18 U.S.C. § 1958(a) ................................................................................ 5

18 U.S.C. § 3500 ................................................................................ 39

18 U.S.C. §§ 2332b ................................................................................ 5

<u>Rules</u>

Fed. R. Evid. 401 ................................................................... 26, 32

Fed. R. Evid. 402 ................................................................................... 26, 30

Fed. R. Evid. 403 ................................................................................... 26, 30

Fed. R. Evid. 611(a) ................................................................................... 34

Fed. R. Evid. 801(d)(2)(A) ............................................................................ 6

Fed. R. Evid. 803(3) ..................................................................................... 7

Fed. R. Evid. 803(6)(D) ............................................................................... 16

Fed. R. Evid. 902(11) ............................................................................. *passim*

Federal Rules of Evidence 902(4) ............................................................... 14

Federal Rules of Evidence 902(13) .......................................................... *passim*

Federal Rules of Evidence 902(14) ........................................................... *passim*

## PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its

motions *in limine* to:

(1)    Admit the defendant Asif Merchant's statements as party-opponent admissions and preclude the defendant from introducing his own hearsay statements;

(2)    Admit the defendant's proffer-protected statements at trial if the waiver provision of the proffer agreement is triggered;

(3)    Admit business records pursuant to Federal Rule of Evidence 902(11);

(4)    Admit extractions from electronic devices pursuant to Federal Rules of Evidence 902(13) and (14);

(5)    Preclude the defendant from raising an entrapment defense;

(6)    Preclude any attempt to seek information about the existence or absence of classified information related to this matter;

(7)    Preclude evidence regarding prior good acts;

(8)    Preclude evidence and argument about possible punishments;

(9)    Preclude evidence regarding the identity of a third-party country which assisted the government's investigation; and

(10)   Take limited measures to protect the identities of certain witnesses, including light disguises and allowing the witnesses to testify using a pseudonym.

For the reasons set forth herein, the government's motions *in limine* should be

granted.

1

RELEVANT BACKGROUND

I.    Overview of the Criminal Scheme

The defendant Asif Merchant orchestrated a plot to assassinate U.S. government officials inside the United States.   After spending time in Iran, the defendant flew from Pakistan to the United States to recruit hitmen to carry out his scheme.

In approximately April 2024, the defendant arrived in the United States and contacted a person he believed could assist him with the criminal scheme, but who in fact reported the defendant's conduct to law enforcement and became a confidential source (the "CS").   At first, the defendant told the CS that he wanted to discuss potential business opportunities, including selling "yarn-dyed" clothing from Pakistan to customers in the United States.   The defendant, however, later revealed to the CS that the yarn-dyed clothing business was just a guise for his assassination plot.

On or about June 3, 2024, the defendant traveled from Texas to New York to meet with the CS.   Explaining his assassination plot, the defendant stated that it involved three different components: (1) stealing documents or USB drives from a target's home; (2) planning a protest; and (3) killing a politician or government official.   The defendant stated that the victims would be "targeted here," meaning in the United States.   He also stated that the "people who will be targeted are the ones who are hurting Pakistan and the world, [the] Muslim world.   These are not just normal people."   While describing the assassination plot, the defendant made a "finger gun" motion with his hand, indicating he meant murder.   The defendant stated that the people he worked for overseas told him to "finalize" the plan, so he asked the CS to set up meetings with hitmen who could carry out the plot.   The defendant stated that he performed "Istikharah from

Quran before doing this," meaning the defendant prayed to God "about whether [he] should do this work or not" and received clarity from God to carry out his mission.

On or about June 10, 2024, the defendant met with the purported hitmen, who were in fact undercover U.S. law enforcement officers (the "UCs") whom the CS introduced to the defendant at the defendant's request.   The defendant advised the UCs that he was looking for three services from them, including killing a "political person."   During the meeting, the defendant presented himself as the "representative" in the United States, indicating that there were other people he worked for abroad.   The defendant told the UCs that he wanted to pay the hitmen in cash through "hawalas"—an informal and unregulated method of transferring money—in Istanbul and Dubai.   The defendant also stated that he would give the hitmen instructions on whom to kill either the last week of August 2024 or the first week of September 2024, after returning to Pakistan. The defendant requested that the UCs provide him with a secure cellular phone so they could communicate, and the UCs said they would do so.   The UCs also told the defendant that they would be in touch about payment.

On or about June 12, 2024, the defendant met the UCs again and obtained a cellular phone from the UCs to use in furtherance of the assassination plot.   During the meeting, the defendant agreed to pay the UCs a $5,000 advance payment for the plot.

Following the meeting with the UCs, the defendant met with the CS.   In that meeting on or about June 13, 2024, the defendant wrote out coded language on a piece of paper that he instructed the CS to copy down and use when communicating with him in the future.   The defendant wrote that the word "tee-shirt" would mean a "protest," which he described as the "lightest work."   The phrase "flannel shirt" would mean "stealing," which was "heavier work." The phrase "fleece jacket," the heaviest work, would mean "the third task . . . commit the act of

3

the game," indicating murder as previously discussed. The phrase "denim jacket" referred to "sending money." The defendant told the CS to use the code words only orally on the phone and not to text them.

The defendant then began trying to obtain the $5,000 cash to pay the UCs, money he eventually received with assistance from an overseas relative. On or about June 20, 2024, the defendant arranged for the CS to pick up the $5,000 in Queens, New York. The next day, the defendant met with the UCs in Manhattan and paid them the $5,000 advance for the murder plot. After the defendant handed over the money, one of the UCs stated, "now we're bonded," to which the defendant responded "yes." The UC then stated "Now we know we're going forward. We're doing this," to which the defendant responded, "Yes, absolutely."

The defendant reiterated that the plan was for the UCs to go forward with his three plots previously discussed—the assassination, the protest, and the stealing of documents. The defendant added that he wanted the UCs to launder money for him as well. The defendant explained that he would leave the United States before giving the UCs additional details about the plot and suggested meeting the UCs in Dubai or Istanbul to convey the instructions because it would be "easier" for him. The defendant reiterated that the plot would occur in the United States. The defendant ended the meeting by telling the UCs that he would be in touch to deliver further instructions.

The defendant made flight arrangements, which included a departure out of the United States on July 12, 2024, but he was arrested that day in Richmond, Texas prior to his flight. Notably, when the FBI arrived at his residence to arrest him and search the premises, the defendant refused to exit his residence for approximately 20 minutes after the FBI announced their presence and the search warrant. During the search, law enforcement agents searched the defendant's

wallet and found the handwritten note inside with the code words that he had invented to communicate with the CS about the assassination plot.

On the defendant consented to the search of several of his electronic devices, including two cell phones and a laptop.   The defendant's electronic devices contained evidence of his plot. For example, consistent with his plot to assassinate a government official at a "rally," evidence from the defendant's laptop shows that he searched the internet for the location of a then-presidential candidate Donald J. Trump presidential rally.   The defendant's cell phones also contained flight itineraries documenting his international travel in furtherance of the scheme.   And the defendant's devices contained messages regarding obtaining the $5,000 he paid the UCs as a down payment for his murder-for-hire plot.

II.    Procedural History

On July 15, 2024, the defendant was presented before a magistrate judge in the Southern District of Texas where he waived preliminary hearing and consented to removal to the Eastern District of New York.   On September 10, 2024, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with (1) attempt to commit an act of terrorism transcending national boundaries, in violation of 18 U.S.C. §§ 2332b, and (2) murder for hire, in violation of 18 U.S.C. § 1958(a).   *See* ECF No. 16.   Trial is scheduled to begin on February 23, 2026.

<u>ARGUMENT</u>

I.    <u>The Court Should Admit the Defendant's Statements as Party-Opponent Admissions</u>
      <u>When Offered by the Government and Preclude the Defendant's Statements When</u>
      <u>Offered by the Defendant as Hearsay</u>

      The government respectfully moves to admit prior statements of the defendant if those statements are offered at trial by the government, and to preclude any additional prior statements if offered by the defendant.

      A.    <u>Background Regarding the Defendant's Statements</u>

      The government intends to offer numerous statements made by the defendant in its case-in-chief.   Such statements include, for example, communications between the defendant and the CS, including in video and audio recordings and text messages; communications between the defendant and the UCs in video and audio recordings; text and audio messages between the defendant and certain relatives who helped the defendant procure $5,000 to pay the hitmen; and voluntary statements to law enforcement officers, including statements to U.S. Customs and Border Protection and statements the defendant made during a public safety interview with law enforcement agents pursuant to *New York v. Quarles*, 467 U.S. 649 (1984).

      B.    <u>Applicable Law and Discussion</u>

      The government generally may introduce a defendant's statements into evidence because a statement is not hearsay if it is "offered against an opposing party and . . . was made by the party in an individual or representative capacity."   Fed. R. Evid. 801(d)(2)(A).   The above-described statements of the defendant are well within the purview of Rule 801(d)(2)(A) and are admissible.

      The Court should preclude the defendant from admitting other portions of his statements, either on cross-examination or in his case-in-chief, because such testimony would

constitute hearsay without any exception.  It is well established that a defendant generally is prohibited from introducing his own out-of-court statements at trial.  *See United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."); *United States v. Blake*, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) (quoting same).  Therefore, a "court may . . . exclude any portion that consists largely of a defendant's own self-serving statements, which, as offered by him, are inadmissible hearsay."  *United States v. Mahaffy*, No. 05-CR-613 (ILG), 2007 WL 1094153, at *2 (E.D.N.Y. Apr. 10, 2007) (internal quotations omitted); *see also United States v. Yousef*, 327 F.3d 56, 153 (2d Cir. 2003) (holding that "while the Government was free to introduce the statement as an admission by a party-opponent, [the defendant] had no right to introduce it on his own" (citations omitted)).  As the Sixth Circuit has explained, were the law otherwise, a defendant "could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury."  *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005).  Indeed, a defendant may not offer his own prior hearsay statements in an "attempt to get [his] side of the . . . story in front of the jury without him[self] testifying and opening him[self] up to cross-examination."  *United States v. Davidson*, 308 F. Supp. 2d 461, 480 (S.D.N.Y. 2004).

Nor, except in extremely limited circumstances, may a defendant introduce his own out-of-court statements as evidence of his state of mind.  The state of mind exception to the hearsay rule allows into evidence "[a] statement of the declarant's then-existing state of mind . . . but not including a statement of memory or belief to prove the fact remembered or believed."  Fed. R. Evid. 803(3).  The state of mind must be relevant, and the statement cannot be offered for any underlying truth.  *See United States v. Harwood*, 998 F.2d 91, 98 (2d Cir. 1993) (proposed

state-of-mind evidence inadmissible under Rule 803(3) because it was offered not to prove co-defendant's state of mind, but to prove defendant's past conduct).   "The exclusion of statement[s] of memory or belief [proffered] to prove the fact remembered or believed is necessary to prevent the exception from swallowing the hearsay rule.   This would be the result of allowing one's state of mind, proved by a hearsay statement, to provide an inference of the happening of an event that produced the state of mind."   *United States v. Cardascia*, 951 F.2d 474, 487 (2d Cir. 1991) (alterations in original; internal quotations omitted).   To be admissible, the statement must be forward-looking and not backward-looking.   *See id.* (citing *Shephard v. United States*, 290 U.S. 96, 104 (1933), for proposition that statement, "Dr. Shephard has poisoned me," is not admissible as an existing state of mind because it was backward-looking).

The defendant's own prior hearsay statements are also not admissible pursuant to the rule of completeness.   Under Federal Rule of Evidence 106, courts only permit inclusion of otherwise hearsay testimony where it is "essential to explain an already admitted document, to place the admitted document in context, or to avoid misleading the trier of fact."   *United States v. Gotti*, 457 F. Supp. 2d 395, 397-98 (S.D.N.Y. 2006).   Self-serving exculpatory statements are not admissible by a defendant unless "their exclusion would unfairly distort the meaning of the declarant's non-hearsay statements that are in evidence."   *United States v. Harper*, No. 05-CR-6068, 2009 WL 140125, at *5 (W.D.N.Y. Jan. 20, 2009).   Accordingly, the Second Circuit has excluded hearsay statements offered by the defendant that, by their omission, do not distort the admitted statements.   *See United States v. Gonzalez*, 399 F. App'x 641, 645 (2d Cir. 2010) (summary order) (affirming district court's decision to exclude portion of defendant's statement where admitted portion did not distort the meaning of the full statement); *United States v. Johnson*, 507 F.3d 793, 796 (2d. Cir. 2007) (affirming district court's decision to exclude portions of

confession that did not explain the admitted portion or place the admitted portion in context, noting that while "[t]he admitted portion of the confession related to . . . plans to execute the robbery, . . . the redacted portion related to the execution of the robbery" (emphasis omitted)). As the Second Circuit has explained, a defendant may not introduce other parts of the same statement offered in part by the government unless the defendant makes a proper showing that the statements he seeks to introduce have a separate basis for admission. *See United States v. Jackson*, 180 F.3d 55, 73 (2d Cir. 1999) (rejecting claim under the completeness doctrine that later portions of conversation provided relevant context and noting that "the portions of the tape proffered by [defendant] consisted largely of [his] own self-serving statements, which, as offered by him, are inadmissible hearsay"). The completeness doctrine does not "require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *Johnson*, 507 F.3d at 796 (citations omitted); *United States v. Hwa*, No. --- F.4th ---, ---, 2025 WL 3492484, at *11 (2d Cir. Dec. 5, 2025) (district court appropriately denied request to admit portion of defendant's statement that "was not needed to explain or place in context" other evidence).

The law is clear: while the government may introduce the defendant's prior statements as admissions of a party-opponent, the defendant may not introduce his own prior statements via the testimony of other witnesses or via cross-examination. Therefore, the Court should preclude the defendant from cross-examining government witnesses about the defendant's prior statements that the government does not seek to admit.

9

II.    The Court Should Admit the Defendant's Proffer Protected Statements at Trial If the
       Waiver Provision of the Proffer Agreement is Triggered[1]

        The government writes to inform the Court of its intent to introduce the defendant's

proffer statements at trial in its case-in-chief or rebuttal case in the event that the defendant or his

counsel offer evidence or make arguments that trigger the "waiver provision" of the defendant's

proffer agreement.   This issue, by its nature, often requires a district judge to determine the

admissibility of proffer-protected statements mid-trial.   In an effort to aid the Court, the

government details below the bounds of the waiver provision.

        The government also respectfully requests that the Court hold a hearing pursuant

to *United States v. Curcio*, 680 F.2d 881, 886 (2d Cir. 1982), in advance of trial to ensure the

defendant is aware of the potential conflict of interest presented by his attorney's presence at each

proffer session, such that counsel could be a witness should he open the door to the admission of

defendant's proffer statements.   *See, e.g.*, *Diaz v. United States*, No. 14-CV-7016 (KAM), 2020

WL 3403057, at *2 (E.D.N.Y. June 19, 2020) (holding a *Curcio* hearing "after the Government

---

[1]    The government has filed limited portions of this memorandum and the accompanying exhibits related to the defendant's proffer sessions with the government under seal (the "Redacted Information").   While courts recognize a "qualified First Amendment right" to access judicial documents and proceedings and a presumptive right of access to judicial documents under the common law, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119, 120 (2d Cir. 2006) (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)), those rights may be overcome in certain circumstances, including where a court makes "specific, on the record findings" "demonstrating that closure [or sealing] is essential to preserve higher values and is narrowly tailored to serve that interest."   *United States v. Alcantara*, 396 F.3d 189, 199 (2d Cir. 2005); *see also United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995).   In making that determination, courts apply a balancing test.   *United States v. Doe*, 63 F.3d 121, 128 (2d Cir. 1995).   Here, public disclosure of the Redacted Information implicates sufficiently "higher values" that warrant sealing, including the privacy interests of third parties, the safety of witnesses, and the government's interest in the integrity of ongoing investigations and the instant case.   The government therefore requests that the Court make specific findings, in accordance with *Doe*, that sealing the Redacted Information is both essential to preserve compelling interests and narrowly tailored to serve those interests.   *Alcantara*, 396 F.3d at 199 (internal quotation marks omitted). The government further requests that the Court's findings be made under seal.

advised that there could be a potential conflict of interest between [the defendant and the attorney], due to their participation in two proffer sessions with the Government"); *Rosemond v. United States*, 378 F. Supp. 3d 169, 173–74 (E.D.N.Y. 2019) (same).

A.    Background Regarding the Defendant's Proffers with the Government

The defendant proffered with the government three times: on or about July 16, 2024, July 17, 2024, and July 22, 2024.[2]    Each meeting was governed by a proffer agreement, which provided certain protections against the government's use of the defendant's statements in its case-in-chief at trial.    *See* Proffer Agreements, attached hereto as Exhibits 1 and 2.[3]    The proffer agreements that the defendant signed with the government provided, in what is commonly referred to as the "waiver" provision, that the government may use the defendant's proffer-protected statements "as substantive evidence to cross-examine the defendant, should the defendant testify," and to "rebut, directly or indirectly, any evidence offered or elicited, or factual assertions made, by or on behalf of the defendant" at trial or other proceeding.    Exhibits 1-2 at ¶ 4.

During his meetings with the government, the defendant made several inculpatory admissions.[4]    ██████████████████████████████████████████████████

██████████████████████████████████████████████████

---

[2]    The defendant also spoke to law enforcement agents at the time of his arrest, on or about July 12, 2024, and July 13, 2024.    In the first interview, the defendant waived his *Miranda* rights.    The second interview was a public safety interview conducted pursuant to *New York v. Quarles*, 467 U.S. 649, 655-56 (1984), as described above, after then-presidential candidate Donald J. Trump was shot.

[3]    Exhibit 1 is the proffer agreement for both July 16 and 17, 2024.

[4]    The defendant also made other statements, including various false exculpatory statements.

██████████████████████████████████ *See* FBI-302s from July 16, 2024, July

17, 2024, and July 22, 2024, attached as Exhibits 3, 4, and 5, respectively. ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

### B.    The Government Will Seek to Admit the Defendant's Proffer Statements If He or His Counsel Trigger the Waiver Provision

Should the defendant or his counsel offer evidence or make arguments that trigger the "waiver" provision of the proffer agreements, the government will seek to introduce the defendant's proffer statements at trial through an FBI agent who was present for the interviews.

Under Second Circuit precedent, it is well-established that "[s]pecific or direct contradiction between [a defendant's] proffer statement and an assertion by counsel" is not required to trigger the waiver. *United States v. Barrow*, 400 F.3d 109, 117 (2d Cir. 2005) (interpreting a proffer agreement virtually identical to the one the defendant signed). Rather, pursuant to *Barrow*, the defendant could trigger the waiver provision not only through presentation of testimony or other evidence, but also if his counsel contradicted the defendant's proffer statements either in his jury addresses or through cross-examination. *Id.* at 118 ("Factual

assertions made by a defendant's counsel in an opening argument or on cross-examination plainly fall within this broad language."). Thus, in an opening statement, counsel could trigger the waiver through an assertion of fact that is contrary to the defendant's proffer-protected statements. *Id.* at 119.

Here, for instance, if counsel claims in a jury address that the defendant did not (1) travel to the U.S. to hire hitmen; (2) obtain money to hire the hitmen from relatives overseas; (3) recruit the CS to locate hitmen; (4) use his garment business at least in part as a cover story, (5) explain to the CS how to conduct an assassination at a rally; or (5) pay people he thought were hitmen as an advance payment for a murder-for-hire, then counsel would open the door for the government to introduce those contrary proffer statements through testimony from an FBI agent who witnessed the statement. And on cross-examination of a witness who is testifying consistently with the defendant's proffer statements, counsel would trigger the waiver by asserting a contrary fact in the form of a question to suggest that the witness is fabricating his testimony. *Id.* at 114, 119 (noting that the question, "You made up about meeting the [confidential informant] there that day, didn't you?" opened the door for the government to introduce the proffer statements because it was an implicit factual assertion contrary to those statements).[5] Moreover, the defendant's introduction of evidence—such as evidence implying he did not hire the hitmen to carry out a future murder plot or that he came to the United States solely to work in the garment industry—that contradicts a proffer statement also triggers the waiver provision. *United States v.*

---

[5] The Second Circuit has recognized that the distinction between challenging perception or recollection of an event and implying that an event did not occur is "more easily stated than applied." *United States v. Roberts*, 660 F.3d 149, 158 (2d Cir. 2011). "In close cases, the identification of what facts are being implied by counsel's questions and arguments may depend on the 'unique insights' a district court gains from actually seeing and hearing these matters pursued in the dynamic context of a trial." *Id.* The Second Circuit is "disinclined to second guess [the district court's] reasonable assessments informed by such insights." *Id.*

*Roberts*, 660 F.3d 149, 163 (2d Cir. 2011) ("The factual assertion thus being urged from the documents was that [the government's witness] could not have been on the ramp for the offloading of the Barbados flight.   Because that fact was rebutted by [the defendant's] proffer statements, the district court properly admitted excerpts from those statements into evidence.").

Finally, should counsel for the defendant trigger the waiver provisions of the agreement in closing arguments, the government should be permitted to reopen its case and call an FBI agent to testify about the defendant's statements.   *See, e.g., United States v. Goldenberg*, No. 04-CR-159 (NGG) (E.D.N.Y.) (Docket No. 364) (denying Rule 33 motion and adhering to ruling made during trial to permit government to reopen its case after defendant triggered waiver provisions during closing arguments); *see also Goldenberg v. United States*, No. 09-CV-4005 (NGG), 2012 WL 1599869, at *4-5 (E.D.N.Y. May 4, 2012) (discussing trial ruling to admit proffer statements after counsel triggered waiver provision during closing arguments and denying writ of habeas corpus pursuant to 28 U.S.C. § 2255).

Importantly, the proffer waiver is not automatically triggered by any and all defense arguments and thus does not leave the defendant without an ability to present a defense or challenge the government's proof.   "The Second Circuit has cautioned that 'arguments or questions challenging the sufficiency of government proof, or the credibility of a witness without a factual assertion contradicting facts admitted in the proffer statement do not trigger a waiver provision.'"   *United States v. Rivera*, No. 13-CR-149 (KAM), 2015 WL 1725991, at *3 (E.D.N.Y. Apr. 15, 2015) (quoting *Roberts*, 660 F.3d at 158).

III.    Business Records, Public Records, and Electronic Records Should Be Admitted Under
        Federal Rule of Evidence 902(11)

At trial, the government intends to authenticate certain certified business records pursuant to Fed. R. Evid. 902(11).   A table listing the producing entities, the Bates ranges for the

14

records as produced in discovery, and the Bates ranges for the applicable certifications will be provided to defense counsel.[6]   The government will produce additional certifications as they become available and reserves the right to amend this table as necessary leading up to and during trial.

The Supreme Court has held that admitting business records and public records that have been authenticated by affidavit or certificate does not violate a defendant's right to confrontation.   *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009).   The Court has explained that "[b]usiness and public records are generally admissible absent confrontation . . . because — having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial — they are not testimonial."   *Id.* at 324.

Relying on *Melendez-Diaz*, the Second Circuit and at least five other circuit courts have concluded that certifications authenticating records are not testimonial and therefore are permissible.   *See, e.g., United States v. Qualls*, 613 F. App'x 25, 28 (2d Cir. 2015) (summary order); *United States v. Johnson*, 688 F.3d 494, 504-05 (8th Cir. 2012); *United States v. Yeley-Davis*, 632 F.3d 673, 680-81 (10th Cir. 2011); *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007); *United States v. Ellis*, 460 F.3d 920 (7th Cir. 2006); *United States v. Weiland*, 420 F.3d 1062, 1077 (9th Cir. 2005).   As the Seventh Circuit explained in *Ellis*, an authenticating certification under Rule 902(11) is "nothing more than the custodian of records . . . attesting that the submitted documents are actually records kept in the ordinary course of business" and "merely establish the existence of the procedures necessary to create a business record."   460 F.3d at 927. It is the underlying records, not the certification, that are introduced to establish the facts at trial.

_____

[6]    To the extent the defendant opposes admission of any of these records, the government is prepared to provide any or all of the certifications to the Court upon request.

Consistent with this understanding of the confrontation right, federal law permits the authentication of business and electronic records by certification and sets forth specific requirements for their admission. Federal Rule of Evidence 902(11) expressly permits the authentication of domestic business records by certification. Courts in the Second Circuit have routinely applied these provisions to admit certified business records at trial. *See, e.g.*, *United States v. Komasa*, 767 F.3d 151 (2d Cir. 2014); *Qualls*, 613 F. App'x at 28 (affirming district court decision to allow government to offer into evidence foreign business records based upon a certification, absent a live witness to authenticate the documents). Similarly, Rule 803(6)(D) provides that a document may be qualified as a record of a regularly conducted activity "by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification." Fed. R. Evid. 803(6)(D); *see also United States v. Michel*, 879 F. Supp. 2d 291, 304 n.13 (E.D.N.Y. 2012) (bank representative's signed declaration under penalty of perjury sufficiently laid foundation for admission of bank records). Thus, "Rule 902(11) extends Rule 803(6) by allowing a written foundation in lieu of an oral one." *United States v. Rom*, 528 F. App'x 24, 27 (2d Cir. 2013) (summary order).

Likewise, under Federal Rule of Evidence 902(4), certified copies of public records — including "a copy of a document that was recorded or filed in a public office as authorized by law" — are self-authenticating and "require no extrinsic evidence of authenticity in order to be admitted" so long as they are "certified as correct by . . . the custodian or another person authorized to make the certification." *See United States v. Jimenez*, 513 F.3d 62, 79-80 (3d Cir. 2008).

The government should therefore be permitted to authenticate the records described above using certifications because it is proper under the law. As noted, the government has provided the defendant, and will continue to provide as they become available, the certifications

16

and underlying records in discovery, and the defendant is hereby informed of the government's intention to offer them as evidence at trial. Such a process would eliminate unnecessary witnesses and help the case proceed in an efficient manner without the need for wasteful sidebars. Accordingly, the government seeks a pretrial ruling that these records may properly be authenticated as self-authenticating records.[7]

IV.    The Court Should Allow the Government to Authenticate Extractions from Cell Phones and Other Electronic Devices by Certification

The Court should permit the government to authenticate extractions from cell phones and other electronic devices by certification. Here, the government has obtained or will obtain certifications regarding the extraction and imaging of electronic devices and the subsequent generation of forensic reports. Under Federal Rules of Evidence 902(13) and (14), these extractions and forensic reports, and exhibits obtained from these materials, may be authenticated by a certification from a qualified person.

As amended in 2017, Rules 902(13) and (14) provide a mechanism for parties to authenticate evidence generated by electronic process of systems other than through witness testimony. Specifically, Rule 902(13) allows authentication by certification of "[a] record generated by an electronic process or system that produces an accurate result," and Rule 902(14) does the same for "[d]ata copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification." The purpose of these Rules is to reduce the unnecessary "expense and inconvenience of producing a witness to authenticate an item of electronic evidence." Fed. R. Evid. 902(13) & (14), Advisory Committee's Note to 2017 Amendment. The

---

[7]    In addition to authentication, the government will also need to establish relevancy prior to admitting documents at trial. The government anticipates that the relevance of each record will be plain at the time they are moved into evidence.

Rules rely on the same framework set forth under Rule 902(11) which, as discussed above, is used to authenticate business records.

In this case, law enforcement agents lawfully seized and searched several electronic devices, including cell phones and a laptop belonging to the defendant and an iPhone belonging to the defendant's relative.   The government also obtained video recordings from a recording device located in the defendant's hotel room during a visit to New York.[8]

"Data extracted from a cellular telephone may be authenticated under Rule 902(14)."  *See United States v. Terranova*, 750 F. Supp. 3d 15, 33 (E.D.N.Y. 2024); *see also United States v. Forney*, No. 24-CR-146 (KAM), 2025 WL 2208298, at *17 (E.D.N.Y. Aug. 4, 2025) (admitting data extracted from a cellphone when properly certified).   As discussed above, the use of a certification to admit electronic records does not offend the Confrontation Clause because the certificate itself is nontestimonial.  *See Melendez-Diaz*, 557 U.S. at 311.   Excerpts from such records that are generated using standard electronic systems and processes to generate copies for use in discovery and as trial exhibits are examples of data copied from an electronic device, storage medium, or file which may be authenticated by a process of digital identification. Accordingly, these items of electronic evidence can be authenticated, pursuant to Rule 902(13) and (14), by certification of competent technicians who performed the extractions and generated the copies rather than by the live testimony of those technicians.   *United States v. Davis*, No. 18-CR-00131, 2021 WL 1931871, at *2-3 (D. Alaska May 13, 2021) (finding digital records

---

[8]       Self-authentication of electronic evidence by certification establishes that electronic evidence is authentic, not that it is relevant or non-hearsay.   In this case, the particular contents of the defendant's cell phone (as authenticated by certification) that the government intends to introduce are relevant and not hearsay because they are the defendant's statements. This relevance will be evident from the face of the communications themselves and further established by witness testimony.

sufficiently authenticated under Rules 902(11) and 902(13) where the certificates were not testimonial in nature).

Thus, pursuant to Rules 902(11), (13), and (14), the government should be permitted to authenticate and offer as evidence materials extracted and imaged from the electronic devices.   Admitting evidence in this manner will streamline the trial and avoid unnecessary delay.

V.    The Court Should Preclude the Defendant From Raising an Entrapment Defense Because He Cannot Meet the Burden of Production as to Both Elements of the Defense

The defendant should be precluded from raising an entrapment defense in his opening statement or otherwise because he cannot meet the burden of production as to the elements comprising the defense, and therefore, lacks a good faith basis to raise the defense.

An affirmative defense of entrapment consists of "two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct."  *United States v. Cabrera*, 13 F.4th 140, 146 (2d Cir. 2021) (internal citations omitted).   The defendant bears the initial burden of showing "some credible evidence" of inducement, at which point the burden switches to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime.  *Id.* at 148.   "The ultimate question basic to all claims of entrapment is whether the defendant was ready and willing to commit the offense if given an opportunity to do so."  *Id.* at 147.   To meet the element of inducement, it is not enough for a defendant to show that the government provided him with an opportunity to commit the crime.   Rather, the defendant must show "the existence of a 'plus' factor that raises concerns of 'government overreaching.'"  *United States v. Vasco*, 564 F.3d 12, 18 (1st Cir. 2009).

Notably, "[e]ntrapment is not a jury question if uncontradicted proof has established that the accused had the requisite propensity." *United States v. Greenberg*, 444 F.2d

19

369, 371–72 (2d Cir. 1971) (affirming the district court decision to not submit the entrapment defense to the jury because "the government's evidence show[ed] uncontradicted evidence of readiness and willingness."). And "[a] district court may require a defendant to submit a pretrial offer of proof on an entrapment defense; if the defendant fails to make a prima facie showing, the district court may preclude him from presenting the defense at trial." *United States v. Gurolla*, 333 F.3d 944, 952 (9th Cir. 2003).

Here, the defendant cannot meet the initial burden of production required for an entrapment defense and therefore should be precluded from raising it in his opening statement or otherwise. The evidence (including audio recordings and video recordings) shows that the defendant initiated the murder-for-hire plot, explained the plot to the CS, directed the CS to connect him with hitmen, and directed the hitmen on what he was looking to hire them to do. Thus, the defendant cannot make a *prima facie* showing that he was induced to hire hitmen and he should be precluded from raising or alluding to an entrapment defense in his opening statement.[9]

---

[9] In addition to there being no good faith basis to raise an entrapment defense, such a defense would be contrary to what the defendant told the government in proffer sessions and would open the door to the government admitting the defendant's proffer statements at trial, as described above.

To the extent the defendant is permitted to raise entrapment in his opening statement, the government should be permitted to introduce evidence to demonstrate that the defendant was predisposed to commit the offense in its case-in-chief, including introducing the defendant's proffer-protected statements to the contrary. *See United States v. Gentile*, 104 F.3d 356 (2d Cir. 1996); *United States v. Sherman*, 240 F.2d 949, 953 (2d Cir. 1957), *rev'd on other grounds*, 356 U.S. 369 (1958) (predisposition evidence "is admissible as part of the prosecution's case in chief where it is clear . . . that the [entrapment] defense will be invoked."). And if the defendant raises the defense in his opening statement but is unable to present evidence sufficient to support an entrapment defense, the Court should instruct the jury that entrapment is not a defense in the case. *United States v. Sosa-Zarzuela*, No. 21 CR. 41 (PAC), 2022 WL 16647783, at *2 (S.D.N.Y. Nov. 3, 2022) ("the court will instruct the jury that entrapment is not a defense in this case.").

The Court of Appeals for the First Circuit previously upheld a conviction and affirmed a district court's decision to preclude a defendant from raising entrapment in his opening statement. *United States v. Diaz-Maldonado*, 727 F.3d 130, 136 (1st Cir. 2013). In *Diaz-Maldonado*, a corrections officer was charged with attempted possession with intent to distribute narcotics after a confidential informant observed the defendant engage in "drug transactions" and then asked the defendant to provide security for a "street deal." *Id.* at 139. On appeal, the defendant argued that the district court erred in precluding him from opening on an entrapment defense because the government "creat[ed] and present[ed] the opportunity to commit the crime of conviction." *Id.* at 137. Affirming the decision to preclude the defendant from opening on an entrapment defense, the Court of Appeals found that the defendant failed to "generate enough evidence" and stated that it was not the case in which "a government agent refused to take no for an answer and persisted in recruiting a target." *Id.*

The same is true here. In light of the lack of evidentiary support for an entrapment defense, the defendant should be precluded from alluding to an entrapment defense during opening statements. In the absence of a good faith basis, permitting the defendant to raise this issue at the opening stages of trial would serve, at best, to confuse and mislead the jury. At worst, allowing the defendant to make a claim absent a good faith basis would unfairly prejudice the government and invite a miscarriage of justice.

VI.    The Court Should Preclude Evidence or Argument About the Existence or Absence of Classified Information as Irrelevant

On July 11, 2025, the government filed a motion for a protective order pursuant to Section 4 of the Classified Information Procedures Act ("CIPA"), which provides the procedural

framework for handling classified information in criminal cases.[10]  *See* ECF No. 48.  To the extent the defendant seeks to elicit classified information at trial, he is required to comply with CIPA, which requires a defendant who reasonably expects to disclose or to cause the disclosure of classified information to notify the United States "within the time specified by the court, or, where no time is specified, within thirty days prior to trial."  18 U.S.C. app. 3 § 5.  Accordingly, and out of an abundance of caution, the government moves to preclude any inquiry or argument about classified information during trial outside the scope of CIPA.  *See, e.g.*, *United States v. Badia*, 827 F.2d 1458, 1464-66 (11th Cir. 1987) (precluding inquiry for failure to provide notice under CIPA Section 5).  Publicly disclosing the existence or absence of particular classified information, even in general terms, would tend to reveal classified facts and thus risk damage to national security.  Additionally, any testimony or argument about the general absence or existence of classified information would be irrelevant and inadmissible.

As background, CIPA Section 5 requires a defendant to provide notice of his or her intention to disclose classified information at trial.  18 U.S.C. app. 3 § 5.  CIPA Section 6 prescribes a hearing for the Court to make pretrial determinations about the use, relevance, and admissibility of that classified information.  18 U.S.C. app. 3 § 6.  Finally, CIPA Section 8 addresses limited circumstances not covered by Sections 5 and 6, like when defense counsel inadvertently asks a question calling for classified information, permitting the government to

---

[10]     The government refers the Court to its CIPA Section 2 filing for a more comprehensive discussion of the statute.  *See* ECF No. 26.

object to any inquiries that might require a witness to disclose classified information not previously held to be admissible.[11]    18 U.S.C. app. 3 § 8(c).

The Supreme Court has "recognized the Government's 'compelling interest' in withholding national security information from unauthorized persons in the course of executive business" and described the reasons underlying that interest as "too obvious to call for enlarged discussion." *Dep't of Navy v. Egan*, 484 U.S. 518, 527, 529 (1988) (citations omitted). This interest applies both to disclosing information as well as to confirming or denying the existence of such information, which could harm intelligence sources, methods, and operations by revealing the scope of the government's ability to collect information on foreign governments (or lack thereof). As the D.C. Circuit has explained, "much of the government's security interest in the conversation lies not so much in the contents of the conversations, as in the time, place, and nature of the government's ability to intercept the conversations at all." *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989). The Second Circuit has adopted *Yunis*'s reasoning and made clear that disclosing whether the U.S. intelligence community obtained information about any particular person would reveal national security and classified information. *See United States v. Stewart*, 590 F.3d 93, 131–32 (2d Cir. 2009) (holding that the details of the NSA's operations, including "the surveillance vel non of any particular group," implicate national security). Thus, any witness examination about the existence, scope, or content of intelligence collection related to this case in violation of CIPA would reveal classified information and should be precluded.

---

[11]    CIPA Section 7 permits the government to take an expedited interlocutory appeal if the district court: (1) authorizes the disclosure of classified information; (2) imposes sanctions for nondisclosure of classified information; or (3) refuses to issue a protective order sought by the government to prevent the disclosure of classified information.    18 U.S.C. app. 3 § 7.

23

Likewise, general questions or arguments about the existence or non-existence of intelligence information about the defendant are irrelevant and inadmissible and should also be precluded. Testimony confirming the existence of classified documents (if any did exist) could cause the jury to speculate about the nature of any such document and could damage national security by revealing intelligence sources and methods. *See Yunis*, 867 F.2d at 623. Testimony confirming that no such documents exist (if that were so) is likewise inadmissible. A lack of records held by U.S. intelligence agencies could mean, for example, that inculpatory communications were not intercepted, not that they did not occur. As a result, all that would be revealed would be a potential gap in intelligence collection, which would not be relevant, could cause the jury to draw unsupported inferences, and would cause significant damage to national security. And any claims about the lack of a particular type of evidence or records, like the absence of classified intercepts, would be an argument about law enforcement techniques—an area far outside the jury's concern. Any inquiry or argument about classified information at trial should thus be precluded.

VII.    The Court Should Preclude Evidence and Testimony Regarding Prior Good Acts

The Court should preclude the defendant from introducing evidence about his garment business to the extent the defendant does so to argue that because he engaged in lawful conduct on certain occasions while in the United States, he did not engage in unlawful conduct on other occasions. Notably, in court filings, the defendant has indicated that he intends to argue that he traveled to the United States to engage in lawful conduct, including to further his garment business, as opposed to engaging in a murder-for-hire plot. *See, e.g.*, ECF No. 65 at 4 (suggesting that the defendant's activities in the United States were "focused on a different purpose" other than the murder-for-hire plot). While the government does not intend to dispute that the defendant

24

was involved in the garment industry while in the United States (and does not move to preclude all evidence suggesting that he was), the evidence will show that the business was, at least in part, a cover for the defendant's murder-for-hire plot.    To the extent the defendant seeks to argue that his crimes were negated by the lawful business he conducted, the defendant should be precluded from doing so.[12]

Evidence that a criminal defendant did not engage in criminal activity on other instances is irrelevant to the charged crimes.    The Second Circuit has held that evidence that a defendant engaged in legal, honest conduct on other occasions is simply irrelevant to whether the defendant engaged in the criminal conduct charged by the government.    *See, e.g., United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions."); *see also United States v. Dawkins*, 999 F.3d 767, 792 (2d Cir. 2021) (affirming district court's exclusion of defendant's proffered evidence that he did not bribe certain basketball coaches and reasoning "[n]o less than evidence of a defendant's prior 'bad acts' used to show that he committed the crime charged, such 'good acts' evidence is only relevant if we assume that a defendant acted in conformity with those prior good acts—*i.e.*, if we make the exact propensity inference Rule 404(b)(1) is designed to prohibit"); *United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999) (affirming district court's exclusion of non-fraudulent applications, reasoning "[w]hether [defendant] had prepared other, non-fraudulent applications was simply irrelevant to whether the applications charged as false statements were fraudulent").    Indeed, "[e]vidence of past "good acts" by a defendant is generally not probative unless a defendant is alleged to have "always" or "continuously" committed "bad

---

[12]    Additionally, for the reasons described above, such arguments would open the door to the defendant's proffer-protected statements.

acts." *United States v. Damti*, 109 F. App'x 454, 455-56 (2d Cir. 2004) (citing *United States v. Scarpa*, 913 F.2d 993, 1010 (2d Cir. 1990), for proposition that "good acts" evidence "would only be relevant if the indictment charged [defendants] with *ceaseless* criminal conduct" (alterations and emphasis in original)).

Here, the government has not alleged that the defendant engaged in "ceaseless" criminal conduct or that he "continuously" committed illegal acts. *See Damti*, 109 F. App'x at 456. The government has charged that the defendant participated in a discrete and specific scheme to hire hitmen to kill U.S. government officials. As such, any evidence or argument that the defendant abided by the law on other occasions, or otherwise traveled to the United States to engage exclusively in lawful activity, is not probative of whether he committed the charged crimes, and accordingly should be precluded.

VIII.    The Court Should Preclude Evidence and Argument About Possible Punishments

The government moves *in limine* to preclude evidence and argument regarding the punishments that the defendant may face if convicted on one or more counts at trial.

"Evidence is relevant" where it pertains to a fact that "is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Courts may exclude even relevant evidence where its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. Fed. R. Evid. 403. Evidence and argument regarding the possible punishment the defendant may face if convicted should be precluded because it is irrelevant. *See Shannon v. United States*, 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task.").

26

Moreover, such evidence and argument improperly "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.* Indeed, jurors are routinely instructed not to consider a defendant's punishment in determining a defendant's guilt. *See generally* Sand et al., Modern Federal Jury Instructions ("Sand"), Instruction 9-1 (2017 ed.); *see also Shannon*, 512 U.S. at 579 (a jury "should be admonished to reach its verdict without regard to what sentence might be imposed [and] not to consider the consequences of their verdicts . . . ." (internal citation omitted)); *United States v. Watts*, 934 F. Supp. 2d 451, 464-65 (E.D.N.Y. 2013) ("[I]t is well-established precedent that jurors should not be informed about the possible consequences of their verdict due to the likelihood that prejudice, unfairness, and confusion that would result.").

For these reasons, courts have repeatedly precluded evidence and argument regarding the potential sentences a defendant may face on the grounds that such evidence is irrelevant, unfairly prejudicial, and outside the province of the jury. *See, e.g., United States v. Blume,* 967 F.2d 45, 49 (2d Cir. 1992) ("Federal courts usually instruct juries not to consider a verdict's consequences"); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997) (holding that district court correctly refused to permit defendant to argue about the severity of his possible punishment); *United States v. DiMarzo*, 80 F.3d 656, 660 (1st Cir. 1996) (district court "soundly excluded" evidence of potentially harsh sentence).[13] In short, guilt should determine punishment, not the other way around. *See United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) ("Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court . . . . We categorically reject the idea that, in a society committed to the rule of law, jury

---

[13] The government reserves the right to revisit this issue should the defendant exercise his right to testify at trial and thereby put his credibility at issue.

nullification is desirable or that the courts may permit it to occur when it is within their authority to prevent."). Courts have consistently recognized that juries have no right to nullify, and "trial courts have the duty to forestall or prevent such conduct." *Id.* at 616. Therefore, the Court should preclude the defendant from referencing potential punishment and collateral consequences at trial.

IX. <u>The Court Should Preclude Examination Regarding the Identity of a Third-Party Country Which Assisted the Government's Investigation</u>

The government intends to admit at trial the contents of an Apple iPhone (the "iPhone") belonging to the defendant's relative, which the FBI obtained from a foreign government and extracted overseas. The Court should preclude the defendant from cross-examining the government's FBI Computer Analysis Response Team ("CART") witness about which country provided the iPhone to her for extraction or where she extracted it because that information is not relevant to the case and is protected by the law enforcement privilege.

At trial, the government anticipates eliciting testimony from the FBI CART witness who will explain that she traveled to the foreign country, obtained the iPhone from a foreign government, and conducted a forensic extraction of the device. A forensic report was later generated from that extraction.[14] Although the witness will testify about her extraction of the iPhone, the government will not elicit the name of the foreign country that provided her the device or the country where the extraction occurred. Among other things, data from the iPhone contains communications between the defendant and his relative regarding the defendant's efforts to procure the $5,000 the defendant paid to the UCs as a down payment for his murder-for-hire plot.

---

[14] The government anticipates admitting data from the iPhone pursuant to Fed. R. Evid. 902(11), (13), and (14) as discussed above at Section IV.

Geolocation data from the iPhone shows that the device, and by extension its user, were in a foreign country around the time of the relevant communications. The government has produced materials from the iPhone to the defendant in discovery. For the reasons below, the defendant should be precluded from questioning the government's witness about the foreign country in which the iPhone was obtained. A classified, *ex parte* declaration (the "Declaration" or "Decl.") will be filed with the Court in support of this motion.

A. <u>Applicable Law</u>

The law enforcement privilege is properly invoked to protect "information pertaining to 'law enforcement techniques and procedures,' information that would undermine 'the confidentiality of sources,' information that would endanger 'witnesses and law enforcement personnel [or] the privacy of individuals involved in an investigation,' and information that would 'otherwise . . . interfere[] with an investigation.'" *See In re The City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) (quoting *In re Dep't of Investigation of City of New York*, 856 F.2d 481, 483 (2d Cir. 1988)). The privilege may be invoked even in the absence of an ongoing investigation when the ability of a law enforcement agency to conduct future investigations will be impaired if certain information is made public. *See id.* (citing *Nat'l Congress for P.R. Rights ex rel. Perez v. City of N.Y.*, 194 F.R.D. 88, 95 (S.D.N.Y. 2000)). In particular, "disclosure of the FBI's techniques and procedures, including the use of certain . . . investigatory methods and strategies," and the confidential cooperation of a foreign government, "can be reasonably expected to interfere with . . . future investigations." *In re Terrorist Attacks on Sept. 11, 2011*, 523 F. Supp. 3d 478, 502-03 (S.D.N.Y. 2021) (permitting withholding information, including material concerning a foreign partner to U.S. law enforcement authorities, under the law enforcement privilege). The privilege applies equally in civil and criminal cases. *See United States v. Cintolo*, 818 F.2d 980,

29

1002 (1st Cir. 1987) (finding a qualified privilege "entirely appropriate in the context of criminal trials" in a case where the defense sought to question witnesses about the location of surveillance devices).

Once the Court determines that the law enforcement privilege applies, there is "a pretty strong presumption against lifting the privilege." *In re City of New York*, 607 F.3d at 945 (quoting *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122 (7th Cir. 1997).   Ordinarily, the party seeking disclosure of the protected information "must show (1) that its suit is "non-frivolous and brought in good faith, (2) that the information sought is [not] available through other discovery or from other sources, and (3) that the information sought is important to the party's case." *Id.* (quoting *Friedman v. Bache Halsey Stuard Shields, Inc.*, 738 F.3d 1336, 1343 (D.C. Cir. 1984)). This test has been tailored to the criminal context "by articulating that a criminal defendant must show that the evidence covered by the law enforcement privilege 'is necessary, or at least important, to his case; and (2) that there is not an alternative means to secure and present this evidence to the jury." *United States v. Hossain*, No. 19-CR-606 (SHS), 2021 WL 4272827, at *7 (S.D.N.Y. Sept. 21, 2021) (quoting *United States v. Alimehmeti*, 284 F. Supp. 3d 477, 494 (S.D.N.Y. 2018)).

In *Alimehmeti*, the district court applied the law enforcement privilege to prevent cross examination of law enforcement officers about the means and methods used to investigate international terrorism.   284 F. Supp. 3d at 494.   In doing so, the Court found that the particular investigative methods used in the case were irrelevant to the determination of the defendant's guilt and that "the public interest in preserving the confidentiality of the sensitive means and methods used by law enforcement . . . to investigate international terrorism is uncommonly strong." *Id.*

In addition to the law enforcement privilege, Federal Rules of Evidence 402 and 403 provide equal grounds for precluding examination identifying certain law enforcement sources and methods.   *See Hossain*, 2021 WL 4272827, at *7 (precluding cross-examination about surveillance techniques); *Alimehmeti*, 284 F. Supp. 3d at 494 (same).   Under Rule 402, relevant evidence is generally admissible and "irrelevant evidence is not admissible."   Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   In the context of law enforcement's sources and methods, courts usually preclude inquiry into the sensitive manner in which law enforcement acquired particular evidence because such information is generally irrelevant to the question of whether the defendant is guilty of the charged crime.   *See, e.g.*, *Hossain,* 2021 WL 4272827, at *7 (stating that information about how communications were captured had no probative value to the potential defenses); *Alimehmeti*, 284 F. Supp. 3d at 491 (explaining that the manner of a recording device's placement or installation was not relevant); *United States v. Wilson*, 586 F. Supp. 1011, 1016 (S.D.N.Y. 1983) (precluding the introduction of evidence of intelligence activities to reduce risk that jury would focus on "controversial character of covert intelligence . . . operations).

B.  Discussion

The defendant should be precluded from questioning the government's CART witness about the foreign country that provided the iPhone to be extracted because it is not relevant, and revealing this information risks compromising confidential and sensitive law enforcement relationships that could harm national security.   *See In re Terrorist Attacks on Sept. 11, 2011*, 523 F. Supp. 3d at 502-03 (withholding information concerning a foreign partner's confidential

31

cooperation under the law enforcement privilege).    There is a strong presumption against lifting the privilege which can only be overcome by a showing from the defendant that the information is "necessary, or at least important to the case" and, if so, that the defendant lacks other means to get the information before the jury.    *Hossain*, 2021 WL 4272827, at *7.

Here, as detailed in the Declaration, the information is sensitive because it would necessarily reveal the confidential cooperation of a foreign law enforcement partner.    That foreign partner has requested that its involvement in this matter remain confidential and not be made public.    Should that partner's cooperation become public, future cooperation may be hindered, and U.S. law enforcement authorities may lose the ability to obtain the type of evidence received in this case.

Moreover, the defendant cannot overcome the presumption against disclosure. The name of the country in which the phone was obtained is not relevant because it does not tend "to make a fact more or less probable" and is of no consequence to elements of the charged offenses.    *See* Fed. R. Evid. 401.    In addition, any arguments about the device's chain of custody, including who originally possessed it, go to the weight afforded to the evidence and not its admissibility.    *See United States v. Gonzalez*, 144 F.4th 396, 406 (2d Cir. 2025) (challenges to Cellebrite extraction "go to the weight, not the admissibility of the evidence."); *United States v. Morrison*, 153 F.3d 34, 57 (2d Cir. 1998) ("Breaks in the chain of custody do not bear upon the admissibility of evidence, only the weight of the evidence . . ..").    Further, the iPhone belongs to the defendant's relative, not the defendant.    Therefore, the defendant does not have standing to challenge the seizure of the device or its data.    *See Rawlings v. Kentucky*, 448 U.S. 98, 106 (1980) (explaining that standing for purposes of the Fourth Amendment requires a legitimate expectation of privacy in the place searched); *see also United States v. Salman*, No. 2025 WL 3089279, at *

(E.D.N.Y. Nov. 5, 2025) ("[The] defendant does not have a privacy interest in the contents of a cell phone that does not belong to her.").

For similar reasons, Rules 402 and 403 provide an alternative means to preclude cross examination about the country in which the phone was obtained.   Notably, the country in which the FBI obtained the iPhone is not relevant to any issue in this case.   Instead, the material contained in the phone itself—including the contents of communications and the iPhone's geolocation information—has relevance independent of how and where the phone was obtained. Therefore, the probative value of any cross examination regarding the methods used and the location of the device when acquired by the FBI "is substantially outweighed by the risk of prejudice to the government in compromising its operational methods as well as the danger of confusing the issues and misleading the jury." *Hossain*, 2021 WL 4272827, at *7 (citing *Alimehmeti*, 284 F. Supp. 3d at 491-92).   Further, divulging the methods in issue risk diverting the jury's attention toward a topic that bears no relevance on the issues in this case.   *See Wilson*, 586 F. Supp. at 1016 ("[Admission] would bring before the jury matters utterly irrelevant to the basic charge in this case, and serve to divert the jury's attention from those basic issues."). Accordingly, the Court should preclude cross-examination of the FBI CART witness regarding which foreign government provided the iPhone, and where the witness extracted the phone.

X.    <u>The Court Should Permit the Government to Use Certain Measures to Protect the Identities of Witnesses</u>

The government intends to call as witnesses at trial the civilian CS who the defendant recruited for his murder-for-hire plot, as well as two UCs ("UC-1" and "UC-2") whom the defendant believed to be hitmen (together, "the Witnesses").   None of the Witnesses' names have been made public in connection with this case, and UC-1 is actively engaged in undercover operations related to national security investigations.

The government moves *in limine* to (i) permit each of the Witnesses to testify in a light disguise; (ii) permit the Witnesses to testify under a pseudonym rather than disclose their true identities; (iii) prohibit members of the public from possessing electronic devices in the courtroom; (iv) preclude the defendant from inquiring into the Witnesses' true identity, place of residence, location of family, and other investigations unrelated to the defendant or this case; (v) preclude the defendant from inquiring into the FBI's undercover program, including training and operations; and (vi) permit the Witnesses to use a non-public entrance and exit to the courthouse and courtroom.    A classified, *ex parte* declaration (the "Declaration" or "Decl.") will be filed with the Court in support of this motion and the motion referenced above in Section IX.

A.    Applicable Law

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him.  *See Dutton v. Evans*, 400 U.S. 74, 79 (1970).   The right of confrontation, however, "is not absolute."  *United States v. Naseer*, No. 10 CR 19 (RJD), 2015 WL 13843166, at *2 (E.D.N.Y. Jan. 26, 2015) (citing *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)).   In appropriate circumstances, the right must "bow to accommodate other legitimate interests in the criminal trial process." *Id.*  "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  *Delaware v. Fensterer,* 474 U.S. 15, 20 (1985) (emphasis in original).

District courts have discretion to impose measures at trial to protect witness safety and the integrity of ongoing investigations, provided those measures do not violate the Sixth Amendment's protections for public trials and confronting witnesses.  *See, e.g.*, Fed. R. Evid. 611(a).   The Second Circuit has repeatedly recognized the government's strong interest in

34

protecting the identities of confidential witnesses based on concerns for their safety and the desire

to enable their continued work on ongoing and future investigations.  *See, e.g.*, *Carson v. Fischer*,

421 F.3d 83, 91 (2d Cir. 2005) (affirming district court's decision ordering partial closure of

courtroom for confidential source's testimony); *Ayala v. Speckard*, 131 F.3d 62, 72 (2d Cir. 1997)

("The state interest in maintaining the continued effectiveness of an undercover officer is an

extremely substantial interest . . ..").

        The use of a light disguise—such as use of a wig or glasses—is permissible, as it

does not interfere with the defendant's or the jury's ability to assess witnesses' credibility and

demeanor.  *See, e.g.*, *Naseer*, 2015 WL 13843166 (permitting six undercover witnesses to testify

in light disguises, finding that such measures would not interfere with the defendant's or jury's

ability to assess witnesses' credibility and demeanor); *see also Morales v. Artuz*, 281 F.3d 55, 61-

62 (2d Cir. 2002) (the "obscured view" of a witness's eyes who refused to remove her sunglasses

"resulted in only a minimal impairment of the jurors' opportunity to assess her credibility" since

they had "an entirely unimpaired opportunity to assess the delivery of [the witness's] testimony,

notice any evident nervousness, and observe her body language"); *United States v. de Jesus-*

*Casteneda*, 705 F.3d 1117, 1121 (9th Cir.) *cert. denied sub nom.*, *de Jesus-Casteneda v. United*

*States*, 133 S. Ct. 2788 (2013) (despite confidential informant's disguise, "the jury was able to hear

his voice, see his entire face including his eyes and facial reactions to questions, and observe his

body language").  Thus, courts have found that where necessary to further an important

government interest, such as a witness's safety, a disguise is appropriate.  *See Naseer*, 2015 WL

13843166 (noting that "given the state interest protecting the identities of the [foreign law

enforcement] witnesses," including keeping their identities anonymous, "any limitation on the

defendant's confrontation right is justified"); *de Jesus-Casteneda*, 705 F.3d at 1120 ("the

[confidential informant's] disguise in the form of a wig and mustache was necessary to further an important state interest, namely a witness's safety").

Similarly, the use of an alias by a testifying witness is permissible when the government's interest in maintaining the anonymity of its witness outweighs the defendant's interest in confronting the witnesses without limitation.  *See Roviaro v. United States*, 353 U.S. 53 (1957).   Indeed, courts in this district and elsewhere have been especially willing to permit the use of an alias in cases where the disclosure of a testifying witness's real identity would endanger the safety of the witness or create national security concerns.  *See United States v. Wang*, No. 22-CR-230 (DC) (E.D.N.Y. July 17, 2024) (permitting undercover law enforcement agent to testify under pseudonym and in partially closed courtroom); *United States v. Hashimi et al.*, No. 22-CR-553 (ENV) (E.D.N.Y. Sept. 30, 2025) (permitting confidential source to testify under pseudonym and precluding cross-examination regarding the source's identity, occupation, and place of residence); *United States v. Asainov*, No. 19-CR-402, ECF No. 122 at 26-27 (NGG) (E.D.N.Y. Jan. 13, 2023) (same);   *United States v. Kandic*, No. 17-CR-449 (NGG), ECF No. 266 (E.D.N.Y. Feb. 28, 2022) (same); *United States v. Pugh*, No. 15-CR-116 (NGG), ECF No. 99 (E.D.N.Y. Feb. 24, 2016) (granting motion to close courtroom during testimony of undercover law enforcement agent and use pseudonym); *Naseer*, 2015 WL 13843166 at *3 (permitting undercover officers to testify using pseudonyms); *United States v. Hernandez*, No. 12-CR-809 (PKC), 2013 WL 3936185 (S.D.N.Y. July 29, 2013) (same); *United States v. El-Mezain*, 664 F.3d 467, 491 (5th Cir. 2011) (finding no constitutional violation where trial court permitted witnesses to testify using pseudonyms).

In the same vein, courts have held that permitting law enforcement testimony under a shield or badge number does not necessarily curtail a defendant's trial rights because "[t]he

cross-examiner can question the witness' activities in the . . . operation without regard to the witness' name, and similarly has an opportunity to see and hear that which he testifies about." *Alvarado v. Burge*, No. 05-CV-1851, 2006 WL 1840020, at *2 (S.D.N.Y. June 30, 2006). The same analysis applies to testimony under a pseudonym. As Judge Dearie observed in permitting undercover officers from the United Kingdom Security Service to testify using pseudonyms in *Naseer*, a terrorism trial:

> Here, the defendant will not be deprived of his right to confront these witnesses and cross-examine them—he will be free to cross-examine them on all topics other than their identity. Nothing about the witnesses' true names goes to their credibility or knowledge regarding the subject of their testimony. As in other cases where government officers were permitted to testify pseudonymously, here, an officer's "true name is immaterial to defendant's guilt or innocence."

2015 WL 13843166 at *3 (citation omitted); *see also Nelson v. Crowley*, No. 07-CV-849, 2009 WL 498909, at *5 (S.D.N.Y. Feb. 23, 2009) (observing that anonymous testimony by undercover officer did not violate Confrontation Clause's prohibition against anonymous accusers and absentee witnesses); *United States v. Baldassare*, No. 11-CR-801 (JBW), ECF No. 58 (E.D.N.Y. July 23, 2012) (granting protective order permitting undercover agent to testify under pseudonym and limiting cross-examination).

      B.    <u>The Government's Proposed Limited Protective Measures Are Warranted</u>

      The Court should (i) permit each of the Witnesses to testify in a light disguise; (ii) permit the Witnesses to testify under a pseudonym rather than disclose their true identities; (iii) prohibit members of the public from possessing electronic devices in the courtroom; (iv) preclude the defendant from inquiring into the Witnesses' true identity, place of residence, location of family, and other investigations unrelated to the defendant or this case; (v) preclude the defendant from inquiring into the FBI's undercover program, including training and operations; and (vi)

37

permit the Witnesses to use a non-public entrance and exit to the courthouse and courtroom.

The government's request for limited protective measures is warranted because of its compelling interest in ensuring the Witnesses' safety and protecting the integrity of national security investigations.   The UCs do not use their true names, and their true identities have never been disclosed during their interactions with the defendant.   And while the CS's identity is known to the defendant, the CS's identity is not public.   Testifying publicly in the CS's true name, without a disguise, would compromise the CS's identity and personal safety.   Indeed, the CS has expressed concern to the government regarding safety and as the Declaration sets forth, those concerns are not unfounded.   Additionally, for UC-1, in particular, who is actively engaged in sensitive national security investigations as an undercover law enforcement agent, the requested measures are significant to UC-1's continued ability to work in confidential capacities in other investigations.   The government's compelling interest in ensuring the Witnesses' safety and protecting their identities is explained more fully in the Declaration.

Additionally, the fact that the Witnesses may face retribution for their work is a separate and sufficient basis to protect their identities.   *See, e.g.*, *Hernandez*, 2013 WL 3936185, at *3 (finding that "[t]he risk that the Agent's safety and efficacy might be compromised is heightened if the Agent's real name is publicly disclosed").   These safety concerns are particularly acute in this case, ██████████████████████████████████████████—a designated foreign terrorist organization known for acting against its adversaries, including through lethal plotting and kidnapping—and as further explained in the Declaration.

The Witnesses should also be permitted to testify under a pseudonym.   Here, the Witnesses' true names have no specific relevance to the case or to their credibility or knowledge regarding the topics about which they will testify.   *See, e.g.*, *United States v. Urena*, 8 F. Supp.

38

3d 568, 573 (S.D.N.Y. 2014) ("UC–188's true name is immaterial to defendants' guilt or innocence.   The defendants will have access to all *Giglio* material associated with UC–188's true name, and will be able to freely cross-examine him on all topics other than his identity.   Moreover, nothing about UC–188's real name goes to his credibility or knowledge regarding the subject of his testimony. The limitation imposed on the defense is therefore negligible.").   In this case, the Witnesses' communications with the defendant, which the government intends to introduce at trial, were generally captured in video or audio recordings or text messages.   The Witnesses will testify regarding those communications, which will corroborate the Witnesses' testimony.   Additionally, the government will provide the defendant with appropriate disclosures under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and 18 U.S.C. § 3500, which will enable the defendant to mount an effective cross-examination.   In light of the foregoing, the Witnesses' true name, place of residence, and location of family have no relevance to their testimony and no impeachment value, and the defendant will suffer no prejudice as a result of being precluded from cross-examining on those topics.  *See Naseer*, 2015 WL 13843166 at *3 ("Nothing about the witnesses' true names goes to their credibility or knowledge regarding the subject of their testimony.").

Similarly, the defendant should be precluded from inquiring into other investigations that the UCs have been involved in that are unrelated to the defendant, as well as the FBI's undercover program generally, because such information is irrelevant.   As described in the Declaration, the use of undercover law enforcement agents in counterterrorism investigations is essential to providing access to important information to further the government's national security and law enforcement missions.   Disclosure of information regarding the UCs' other investigations unrelated to the defendant or UCs' operations and training could provide details

regarding other national security investigations that bear no relevance to their testimony in this case, and the defense should be precluded from such inquiry. *See generally Alimehmeti*, 284 F. Supp. 3d at 494 (granting, preliminarily, government motion to preclude defense inquiry into UC's participation in unrelated matters where defense had not articulated any basis on which such information was relevant); *see also Kandic*, ECF No. 266, at 14 (granting similar motion, citing *Alimehmeti*, without prejudice to the defense articulating a basis on which the confidential informant's work on other matters would be relevant); *Hossain*, 2021 WL 4272827 at *6 (granting motion to preclude cross-examination of CHSs on information about their participation in other investigations unrelated to the defendant).

The government's other requested protective measures are warranted for the same reasons. The government requests that the Court prohibit members of the public from possessing electronic devices in the courtroom during the Witnesses' testimony. Local Civil Rule 1.8 provides that, "[u]nless authorized to do so by an administrative or standing order of the court, the clerk, or the district executive, no one other than court officials engaged in the conduct of court business may … bring any camera, transmitter, receiver, recording device, cellular telephone, computer, or other electronic device into any courthouse." Although Administrative Order 2007-10 allows attorneys to enter courthouses in this District "in possession of Personal Digital Assistants ('PDAs'), laptop computers, and cellular telephones," the order "does not limit in any way the authority of a district judge or magistrate judge to curtail the presence or use of such devices as circumstances may warrant." *See In re: Electronic Devices*, Admin. Order 2007-10.

The government also requests that the Court direct courthouse staff and the U.S. Marshals Service to allow the Witnesses to enter and leave the courthouse and courtroom on the date of their scheduled testimony without passing through any public spaces and that the jury not

40

be present when they enter and leave the courtroom.  The Second Circuit has recognized trial courts' ability to "take[] appropriate precautions to prevent" a defendant's associates "from encountering [an undercover officer] in or around the courthouse, such as permitting the Undercover to use an alternate entrance to the courtroom or courthouse."  *Rodriguez v. Miller*, 439 F.3d 68, 75 (2d Cir. 2006), *vacated on other grounds*, 127 S. Ct. 1119 (2007); *see also United States v. Wang*, No. 22-CR-230 (DC), ECF No. 76 (E.D.N.Y. July 18, 2024) (allowing undercover agent to use non-public entrance to courthouse and courtroom); *United States v. Baldassare*, No. 11-CR-801 (JBW), Protective Order, ECF No. 58, (E.D.N.Y. July 23, 2012) (permitting undercover agent to use non-public entrance to courtroom after considering "the need to ensure a fair trial for the defendants and to take appropriate steps to protect the safety of the Witness and avoid needlessly impairing ongoing investigations involving the Witness, which are unrelated to this Case"); *United States v. Schulte*, 436 F. Supp. 3d 698, 707 (S.D.N.Y. 2020) (allowing witnesses from intelligence agency to use nonpublic entrances to enter and exit court).

In sum, use of a light disguise and non-public entrances to the courthouse and courtroom is justified to protect the Witnesses' safety.  Likewise, the use of a pseudonym rather than the Witnesses' true name will not deprive the defendant of the ability to confront them or to challenge the substance of their testimony, nor will it deprive the Court or jury of the ability to evaluate their credibility or demeanor.   This measure, along with the related preclusion of inquiry into their place of residence and family location will ensure their continued safety and ability to participate in a confidential capacity in future national security investigations.   In light of these measures, there will be minimal, if any, prejudice to the defendant, and the limited deprivation to the public is far outweighed by the government's interest in concealing the Witnesses' identities for their safety.   Likewise, the preclusion of inquiry into their other work unrelated to the

defendant, or the undercover program, will protect from needless disclosure information about other, unrelated national security matters which are irrelevant to the defendant's case.

CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant the government's motions *in limine*.

Dated:      Brooklyn, New York
            January 7, 2025


                                        JOSEPH NOCELLA, JR.
                                        United States Attorney
                                        Eastern District of New York

                            By:     _/s/_____
                                        Sara K. Winik
                                        Gilbert M. Rein
                                        Nina C. Gupta
                                        Assistant U.S. Attorneys
                                        (718) 254-7000