

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NJM:SKW/NCG/GMR  *271 Cadman Plaza East*
F. #2023R00922  *Brooklyn, New York 11201*

January 12, 2026

By Email and ECF

The Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re: United States v. Asif Merchant
> Criminal Docket No. 24-362 (EK)

Dear Judge Komitee:

The government respectfully submits this opposition to the defendant's motion *in limine*, *see* ECF 78, and motion for a jury questionnaire, *see* ECF 79. For the reasons that follow, the Court should deny both motions.

I. The Defendant's Motion to Preclude Classified Material Should Be Denied as Moot

With respect to the defendant's motion to preclude the government from introducing classified information at trial, *see* ECF 78, the government does not intend to introduce classified information at trial and, as described in its motions *in limine*, the government seeks to preclude any cross-examination regarding the existence or absence of classified information, *see* ECF 76, 77 at Section VI. Accordingly, the Court should deny the defendant's motion as moot.

II. The Court Should Deny the Request for a
Jury Questionnaire as Unnecessary and Wasteful of Judicial Resources

The Court should deny the defendant's motion to use a jury questionnaire, *see* ECF 79, because the defendant's proffered reasons for requesting a questionnaire are unfounded and the Court's use of a jury questionnaire is unnecessary. Through *voir dire*, the Court and the parties will be able to elicit and assess any potential bias or prejudice. Conversely, a jury questionnaire would waste significant judicial resources and is plainly unnecessary. *See, e.g.*, *United States v. Goldstein*, No. 21-CR-550 (E.D.N.Y. March 13, 2023) (Chin, J, presiding by designation), Tr. at 40 ("I'm not a fan of jury questionnaires. I've done it once in my entire career and I didn't care for it, but, go ahead, I'll listen . . . The request is denied."); *United States v. Cherwitz et al.* ("OneTaste") No. 23-CR-146 (E.D.N.Y. Dec. 20, 2024), Tr. at 23-24 ("I'm going to deny the

defendants' request to compel the use of a jury questionnaire . . . there is nothing extraordinary about this case that would suggest that a written jury questionnaire would be necessary or indeed even more likely to elicit honest answers from potential jurors in open court regarding such topics.").

Accordingly, the Court should deny the defendant's motion.

a. Applicable Law

The questioning of potential jurors on *voir dire* is "quintessentially" a matter for the discretion of the district court. *United States v. Lawes*, 292 F.3d 123, 128 (2d Cir. 2002); *see also Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981) (holding that district courts have "ample discretion in determining how best to conduct the *voir dire*"); *United States v. Treacy*, 639 F.3d 32, 47 (2d Cir. 2011) (holding that the district judge's personal policy against using a questionnaire is "well within his bailiwick as a trial judge so long as he conducts adequate *voir dire* by some other means"). It is likewise well settled that the use of a written questionnaire is not mandatory even where an anonymous jury is empaneled. *See Treacy*, 639 F.3d at 46; *United States v. Quinones*, 511 F.3d 289, 300 n.8 (2d Cir. 2007) ("In approving the use of questionnaires as part of *voir dire*, we do not hold that district judges are *ever* obligated to make use of this procedure in selecting juries.") (emphasis added).

An appellate court will not interfere with the manner in which *voir dire* has been conducted absent a clear abuse of discretion. *See Treacy*, 639 F.3d at 46. Restrictions on *voir dire* will be upheld "unless a defendant has been precluded from obtaining an impartial jury." *United States v. Barnes*, 604 F.2d 121, 138 (2d Cir. 1979). The Second Circuit has noted that it has apparently never reversed a conviction because of the trial court's refusal to ask a particular question in *voir dire*. *See Treacy*, 639 F.3d at 47; *United States v. Diaz*, 854 F. App'x 386, 389 (2d Cir.), *cert. denied sub nom. Felton v. United States*, 142 S. Ct. 473 (2021).

District courts within this circuit have frequently refused requests to use questionnaires in the jury selection process. *See Treacy*, 639 F.3d at 47; *see also United States v. Salameh*, 152 F.3d 88, 120-21 (2d Cir. 1998) (holding that district court did not abuse its discretion in declining to use defense questionnaire in a terrorism trial lasting six months, involving over 1,000 exhibits, and the testimony of more than 200 witnesses). As the court explained in *Treacy*:

> The[re are] many problems with questionnaires, but the single biggest problem [ ] is that there is no one in the world who can draft a question that will not have ambiguities that will be, as I learned the one time [I] tried it, that will be picked up on by various prospective jurors. And thus during the *voir dire*, a huge amount of time will be spent explaining to a juror why he or she misunderstood the question in the questionnaire or finding out that . . . the way he interpreted it was not the way the lawyers interpreted it.

*Treacy*, 639 F.3d at 36 (quoting Tr. of Jan. 30, 2009 Hearing at 12-13). In *Treacy*, the Second Circuit found that the district court did not abuse its discretion in declining to use a written juror questionnaire, given that he offered a rational, non-arbitrary reason for his policy, and conducted adequate *voir dire* by some other means. *Id.* at 47.

Moreover, in *United States v. Tomero*, 486 F. Supp. 2d 320, 324 (S.D.N.Y. 2007), the defendants requested the use of a jury questionnaire so that they could obtain more complete information about jurors in the event an anonymous jury was empaneled. There, the district court granted the government's motion for an anonymous jury, but denied the defendants' request, finding that the use of a questionnaire was unnecessary. *Id.* at 325. The district court noted that the government's request for an anonymous jury would "not limit inquiry into the occupations of the jurors, only information about their specific places of employment." *Id.* Moreover, although the jurors' names and addresses would remain confidential, the court would inquire as to the neighborhood in which each potential juror resides. *Id.* The court concluded that the defense would have no problem in assessing the possible bias of potential jurors. *Id.*

   b. Argument

As the Court is aware, juror questionnaires impose a substantial burden on the Court, the parties, and prospective jurors. That burden is unnecessary where, as here, the Court can conduct a "thorough and probing" *voir dire* without the use of a written questionnaire. *Salameh*, 152 F.3d at 120-121. Tellingly, contrary to the defendant's claim, many judges in this district have denied defendants' motions to use jury questionnaires in cases that received significant media attention or implicated sensitive topics. *See, e.g.*, *United States v. Gentile*, No. 21-CR-54 (RPK) (E.D.N.Y. 2024) (denying defendant's request for a questionnaire in a securities fraud case); *United States v. Yu, et al.*, No. 22-CR-208, ECF No. 129 (E.D.N.Y. 2023) (denying request for a questionnaire in a murder-for-hire case and explaining that normal voir dire procedures were sufficient); *United States v. Weaver*, 992 F. Supp. 2d 152, 162 (E.D.N.Y. 2014) (declining to use a questionnaire).

Indeed, the publicity in this case has been far less than that in other high-profile cases tried in this District in recent years, in which the trial courts conducted *voir dire* primarily in the traditional, oral manner. For instance, in *United States v. Shkreli*, No. 15-CR-637 (KAM), Judge Matsumoto did not use a written jury questionnaire despite the defendant's public nickname as the "most hated man in America" and pre-trial publicity dwarfing the instant case. Furthermore, in *United States v. Jho Low et al.*, No. 18-CR-538 (MKB) (E.D.N.Y.), a case involving the largest known corporate guilty plea in history and a high-profile trial, Judge Brodie did not use a written jury questionnaire even though the case had generated significant media attention and a bestselling novel had been published about the fraud scheme at issue. Likewise, no jury questionnaire was used in *United States v. Carlos Watson*, No. 23-CR-82 (EK) (E.D.N.Y.), even though the defendant was subject to substantial pretrial publicity, and Watson was himself a member of the media.

The defendant's proffered reasons for requesting a questionnaire are unfounded. The defendant claims that this case will involve evidence that he "travelle[d] to the United States in order to carry out one of more political assassinations on behalf of the government of Iran, in vengeance for the Trump Administration's targeted killing of Qassem Soleimani." ECF 79 at 1. But, unless the defendant opens the door to his own proffer admissions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the government does not intend to introduce evidence of the IRGC or Soleimani in its

3

case-in-chief.[1] Thus, the defendant's claim that the "nature of the allegations" is likely to include topics on which potential jurors have biases such as Iran, the targeted killing of Qassem Soleimani, and Islamic sects, *see id*. at 2, is inaccurate.[2]

Moreover, the use of a questionnaire imposes significant logistical burdens on court personnel, which is unnecessary in this case. In upholding the trial court's decision declining the use of a questionnaire in *Treacy*, for example, the Second Circuit found compelling the trial court's "rational, non-arbitrary reason" that "jurors tended to understand written questions differently from those who drafted the questions, leading to substantial difficulty in parsing their responses." *Treacy*, 639 F.3d at 47. Use of the questionnaire, instead of direct, in-person, generalized and individualized questioning, may serve to unduly complicate the jury selection process.

Nor are jury questionnaires necessary for a meaningful *voir dire*. The government does not object to the Court asking jurors their neighborhood of residence and how each juror is employed (without mentioning the employer name and precise location). Thus, in terms of learning information about potential jurors, the fact that the jurors' names are withheld does not affect the quality of the information that can be acquired through thorough *voir dire* in any relevant or meaningful way. So long as the Court conducts a "thorough and probing" oral *voir dire*, the parties will be able to assess any possible bias of potential jurors and the defendant's rights will be adequately protected without the use of a questionnaire. *See Tomero*, 486 F. Supp. 2d at 325.

Accordingly, the Court should deny the defendant's motion to use a jury questionnaire. Alternatively, should the Court be inclined to use a jury questionnaire, the government respectfully requests an opportunity to submit a proposed questionnaire that more appropriately aligns with the case. For example, questions about the IRGC are not relevant—and would complicate the trial—unless the defendant intends to intentionally open the door to his own proffer admissions. If that is the defendant's intention, the government respectfully requests that the Court order him to inform the Court and the government so it can be considered in *voir dire*.

---

[1] *See* Government's Motion in Limine, ECF 77, Section II at 10 ("The Court Should Admit the Defendant's Proffer Protected Statements at Trial If the Waiver Provision of the Proffer Agreement is Triggered.").

[2] To the extent the defendant intends to affirmatively open the door to his proffer admissions, the government respectfully request the Court order the defendant to inform the Court and the government so it can be considered in *voir dire*.

4

III. Conclusion

For the reasons set forth above, the government respectfully requests the Court deny the defendant's motions.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:       /s/
Sara K. Winik
Nina C. Gupta
Gilbert M. Rein
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of the Court (EK) (by ECF)
Avraham C. Moskowitz, Esq., Counsel to Defendant (by email and ECF)