UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

UNITED STATES OF AMERICA

    - against -                  24 Cr. 362 (EK)

ASIF MERCHANT,

                Defendant.

-------------------------------------------------------X


**DEFENDANT'S OPPOSITION TO MOTION FOR ANONYMOUS JURY**

AVRAHAM C. MOSKOWITZ
CHRISTOPHER NEFF
80 Broad St, Suite 1900
New York, New York 10004
(212) 257-6455
amoskowitz@mcgsllp.com

JOSHUA J. LAX
225 Broadway, Suite 715
New York, New York 10007
(212) 566-6213
jlax@fgdmlaw.com

*Attorneys for Defendant Asif Merchant*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

    1.   The Nature of the Charges Does Not Justify an Anonymous Jury ..................................... 2

    2.   The Government has not Demonstrated a Risk to the Judicial Process ............................. 5

    3.   Potential Publicity Does Not Require Anonymity ............................................................. 8

CONCLUSION ...................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*United States v. Al Fawwaz*, 57 F. Supp. 3d 307 (S.D.N.Y. 2014)....................................................... 3

*United States v. Amilcar*, No. 23-cr-00018 (AMD) (E.D.N.Y) ......................................................... 2

*United States v. Amuso*, 21 F.3d 1251 (2d Cir. 1994) ...................................................................... 4

*United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995)................................................................... 7

*United States v. Barnes*, 604 F.2d 121 (2d Cir. 1979)..................................................................... 7

*United States v. Bellomo,* 954 F.Supp. 630 (SDNY 1997)................................................................ 5

*United States v. Coonan,* 664 F.Supp. 861 (SDNY 1987) ................................................................ 5

*United States v. Melendez,* 743 F.Supp. 134 (EDNY 1990)............................................................. 5

*United States v. Millan-Colon,* 834 F.Supp (SDNY 1993) .............................................................. 5

*United States v. Mostafa*, 7 F. Supp. 3d 334 (S.D.N.Y. 2014) ........................................................ 3

*United States v. Paccione*, 949 F.2d 1183 (2d Cir. 1991) ............................................................... 7

*United States v. Quinones*, 511 F.3d 289 (2d Cir. 2007)................................................................. 6

*United States v. Ross,* 33 F.3d 1507 (11th Cir. 1994)...................................................................... 4

*United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009)...................................................................... 6

*United States v. Thai*, 29 F.3d 785 (2d Cir. 1994)....................................................................... 3, 7

*United States v. Thomas*, 757 F.2d 1359 (2d Cir. 1985) ............................................................. 3, 4

*United States v. Tutino*, 883 F.2d 1125 (2d Cir. 1989) ............................................................ 2, 4, 7

*United States v. Vario*, 943 F.2d 236 (2d Cir. 1991) ......................................................... 1, 3, 4, 5, 6, 7

*United States v. Wong*, 40 F.3d 1347 (2d Cir. 1994) ............................................................... 2, 4, 7

## PRELIMINARY STATEMENT

Defendant Asif Merchant respectfully submits this Memorandum in opposition to the government's motion for an anonymous jury.

As an initial matter, the government's motion is untimely and accordingly should be denied without reaching the merits. On November 11, 2025, the Court adjourned jury selection and trial from January 26, 2026 to February 23, 2026 and ordered that "[i]f either party is moving to empanel an anonymous jury, it should so indicate on or before December 12." (Text only Order docketed 11/26/2025.) The government did not file a notice on or before December 12, 2025. Instead, on January 7, 2026, it filed its instant motion for an anonymous jury. The motion is therefore untimely and should be denied.

The motion should also be denied if the Court reaches its merits. The government's argument that the potential jurors will face or fear harm is speculative and lacks factual substantiation. The government has not alleged that Mr. Merchant has ever obstructed justice, and it makes no assertions that there is a specific concern of any danger related to Mr. Merchant's case, relying instead on generalized allegations about the dangers posed by the Iranian government and the IRGC. Those allegations are insufficient. If accepted, the government's argument would warrant anonymous juries in every terrorism prosecution and in every case in which the government alleges that a defendant is in some way connected to a large-scale criminal organization. That undifferentiated approach is not the law. *See United States v. Vario*, 943 F.2d 236, 241 (2d Cir. 1991) (rejecting use of anonymous jury based on connection to organized crime alone). The jurors will only have reason to fear service if this Court gives them one by making them anonymous.

As set forth below, empaneling an anonymous jury in this case would unfairly burden the presumption of innocence and should be rejected in favor of less extreme measures to protect the

1

privacy of the members of the jury—including such measures as conducting *voir dire* about sensitive issues through use of a written questionnaire exploring such sensitive topics as the jurors opinions about Iran, the IRGC, President Trump and his supporters.  By contrast to such measures, seating an anonymous jury would poison the atmosphere of the case and serve to bolster the government's proof by creating the impression that the defendant on trial is guilty and dangerous. Particularly in a case where the government has charged the defendant with attempted terrorism on behalf of a foreign power and with acting in furtherance of a scheme to assassinate government officials, juror anonymity sends the message to each juror that he or she needs to be protected from the defendant on trial and/or from the foreign power whose aims he is accused of furthering.  From there, members of the jury could rationally infer both that the defendant is actually associated with a foreign power and that he is dangerous and guilty.  Accordingly, granting the government's application would deny Mr. Merchant the fair trial guaranteed by the United States Constitution.[1]

### 1.  <u>The Nature of the Charges Does Not Justify an Anonymous Jury</u>

Empaneling an anonymous jury "carries with it numerous risks" to the integrity of the judicial process, including "the possibility of unfair prejudice to the defendant and the danger of encroaching on the presumption of innocence." *United States v. Tutino*, 883 F.2d 1125, 1132 (2d Cir. 1989). *See also United States v. Wong*, 40 F.3d 1347, 1376 (2d Cir. 1994) ("Empaneling an anonymous jury undoubtedly has serious implications for a defendant's interest in effectively conducting *voir dire* and in maintaining the presumption of innocence."). It is, therefore, justified

---

[1] The defense anticipates that the government may also seek to have the jury partially sequestered, though it has not yet sought such relief, or that the Court may consider doing so *sua sponte*.  *See, e.g.*, *United States v. Amilcar*, No. 23-cr-00018-AMD, ECF Order dated Jan. 12, 2026 (explaining that a "court's decision to sequester a jury often accompanies the decision to make a jury anonymous" and that courts "have determined *sua sponte* that additional protections for jurors beyond what the government has requested are warranted").  This Court should decline to sequester the jury for the same reasons that an anonymous jury is inappropriate.

only where "there is a strong reason to believe that the jury needs protection." *United States v. Thomas*, 757 F.2d 1359, 1365 (2d Cir. 1985).

The government argues that an anonymous jury is necessary because of the severity and nature of the charges in this case. But that is not the law. "[T]he mere incantation of words such as 'terrorist,' 'terrorism,' 'al Qaeda,' 'Bin Laden,' and '9/11' is insufficient to require an anonymous jury." *United States v. Mostafa*, 7 F. Supp. 3d 334, 337 (S.D.N.Y. 2014); *see also United States v. Al Fawwaz*, 57 F. Supp. 3d 307, 309 (S.D.N.Y. 2014) (same); *United States v. Vario*, 943 F.2d 236, 241 (2d Cir. 1991) (same, with respect to organized crime). Rather, there must be "a demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf or a showing that trial evidence will depict a pattern of violence by the defendant[ ] and his associates such as would cause a juror to reasonably fear for his own safety." *Vario,* 943 F.2d at 241. The empaneling of an anonymous jury is an unusual and drastic measure that is justified only when the Government establishes that it is "genuinely called for." *United States v. Vario,* 943 F.2d 236, 239 (2d Cir. 1991); *United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994).

The Second Circuit has repeatedly and consistently held that this deviation from standard methods of jury-selection is permissible only when the government make a convincing showing of a "strong reason to believe the jury needs protection." *United States v. Thomas,* 757 F.2d 1359, 1365 (2d Cir. 1985). Without this predicate showing, an anonymous jury may not be empaneled. In assessing whether a jury truly "needs protection" and whether an anonymous jury is "genuinely called for," the Circuit has emphasized that, "[a]n obstruction of justice charge, particularly one involving jury-tampering, has always been a crucial factor in our decisions regarding anonymous

juries." *Vario,* 943 F.2d at 240; *see also United States v. Tutino,* 883 F.2d 1125, 1132-33 (2d Cir. 1989).

The reason a decision to impanel an anonymous jury may come only after a strong showing of its necessity is that the practice places a burden on two important interests: the presumption of innocence and the defendant's interest in conducting a meaningful *voir dire.*  As stated in *United States v. Amuso,* 21 F.3d 1251, 1264 (2d Cir. 1994), in considering a motion for an anonymous jury, a court "must balance the defendant's interest in conducting a meaningful *voir dire* and in maintaining the presumption of innocence against the jury's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict." Courts do not reach the balancing test, however, without a credible and convincing predicate showing from the Government that there is, in fact, "strong reason to believe the jury needs protection," defined as a finding that there is "a serious threat to jury safety." *Thomas,* 757 F.2d at 1364-65; *Amuso*, 21 F.3d at 1264 (quoting *Thomas* with approval)*; see also United States v. Wong,* 40 F.3d 1347, 1376 (2d Cir. 1994) ("Empanelling an anonymous jury undoubtedly has serious implications for a defendant's interest in effectively conducting *voir dire* and in maintaining the presumption of innocence.").

In *United States v. Ross,* 33 F.3d 1507 (11th Cir. 1994), the Court summarized the risks of an anonymous jury as follows:

> Unquestionably, the empanelment of an anonymous jury is a drastic measure, one which should be undertaken only in limited and carefully delineated circumstances. An anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected, thereby implicating the defendant's constitutional right to a presumption of innocence.

*Ross,* 33 F.3d at 1519.

4

Because of the importance of the interests that are burdened by the practice, an anonymous jury "is a measure that should be taken only with care." *United States v. Bellomo,* 954 F.Supp. 630, 654 (SDNY 1997)*; see United States v. Millan-Colon,* 834 F.Supp. 78 (SDNY 1993) (denying application for anonymous jury)*; United States v. Melendez,* 743 F.Supp. 134, 135 (EDNY 1990) (denying "drastic remedy of an anonymous jury")*; United States v. Coonan,* 664 F.Supp. 861 , 862 (SDNY 1987) (denying anonymous jury in the absence of evidence that the defendants were likely to interfere with the judicial process, notwithstanding the fact they were charged with "predicate acts including murder, attempted murder, kidnapping, loansharking, extortion, and narcotics trafficking as part of a racketeering enterprise known as the Westies").

The government has failed to make the requisite compelling showing that Mr. Merchant poses a threat to juror safety or is likely to engage in obstruction of justice. The government cites a recent narcotics case in which a juror was purportedly offered a $10,000 bribe, but it proffers no basis to believe that Mr. Merchant is likely to attempt to bribe a juror. Nor does the government proffer any basis for a finding that Mr. Merchant poses a danger to the safety of any juror. Indeed, unlike the defendants in the myriad terrorism cases cited in the government's Footnote 2, Mr. Merchant is not even accused of involvement in any plot that would have, if successful, endangered members of the general public. Instead, he is accused of plotting to take targeted actions against specific prominent politicians. These allegations are insufficient to demonstrate that an anonymous jury is "genuinely called for" in this case. *Vario,* 943 F.2d at 240

## 2. <u>The Government has not Demonstrated a Risk to the Judicial Process</u>

The government next argues that an anonymous jury is requires because of a risk that the IRGC will interfere in the judicial process, whether by bribing jurors with the fruits of its "access to a wealthy nation's coffers" or through threats of reprisal in the event of a conviction. This

argument, too, is a red herring.  Like the government's first argument, it conflates the very real risks posed by Iran and the militias it supports to American interests in the Middle East and elsewhere with a risk to jurors.  But the government cites no case in which the IRGC or any other militia associated with Iran has been accused of bribing, threatening, or harming a juror, or otherwise interfering with the judicial process.

If unsupported speculation like that offered by the government were a sufficient basis to justify empaneling an anonymous jury, then anonymous juries would be the rule and not the exception.  After all, it is the rare defendant who has no friends or associates who *might* pose some hypothetical threat to a juror when viewed with a prosecutor's natural suspicion.  But hypothetical risks of this kind are not sufficient.  As the Second Circuit has explained, the fact that a defendant is associated with other people or with an organization that might have some hypothetical desire to reward or punish a juror does not justify an anonymous jury.  "Before a district judge may rely on the organized crime connection of a defendant as a factor in the question of anonymous juries, he must make a determination that this connection has some direct relevance to the question of juror fears or safety in the trial at hand, beyond the innuendo that this connection conjures up." *Vario*, 943 F.2d at 241.

The cases in which the Circuit has upheld the use of anonymous juries (including many of the cases cited in the government's motion) have generally involved some concrete, specific allegation that the defendant or his criminal associates tampered with the judicial process. *See, e.g.*, *United States v. Stewart*, 590 F.3d 93, 125 (2d Cir. 2009) ("terrorist conspiracy to murder" and "charges against Stewart and Yousry" that were "in significant part about their alleged corruption of the judicial process"); *United States v. Quinones*, 511 F.3d 289, 295 (2d Cir. 2007) ("murdering a confidential informant in retaliation for his cooperation with law enforcement");

*United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995) (attempt to bribe and threaten witness); *Wong*, 40 F.3d at 1376-77 (defendant's gang "had an extensive history of interfering with the judicial process," including witness killings); *United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994) (defendants had attempted "to subvert the judicial process through intimidation and murder"); *United States v. Paccione*, 949 F.2d 1183, 1192-93 (2d Cir. 1991) (co-defendant "had been murdered in circumstances that strongly suggested a connection to the present case and to certain of these defendants" and that "a government witness had recently received a middle-of-the-night anonymous telephone call telling him that he would be safe so long as he remembered nothing"); *Vario*, 943 F.2d at 240 (obstruction of justice charge "involving jury tampering"); *Tutino*, 883 F.2d at 1132 ("substantial showing that there was a risk of jury tampering"); *United States v. Barnes*, 604 F.2d 121, 141 (2d Cir. 1979) ("much pretrial publicity playing up the alleged acts of violence on the part of the actors in this case" so that "the suggestion of disruption was manifest"). No such allegations have been made in this case.

Anonymity is not required in every alleged terrorism case, gang case, narcotics conspiracy case, and every case involving violence simply because unindicted co-conspirators might pose some hypothetical risk to a juror. The hypothetical risks described by the government in this case are similarly insufficient to justify encroaching on Mr. Merchant's rights by empaneling an anonymous jury.

To the extent that the allegations against Mr. Merchant might cause individual jurors to fear for their safety—even if those fears are not rationally supported by the individual evidence—the use of a jury questionnaire would be a more appropriate way to protect the judicial process than would anonymity. By using a questionnaire, the Court and the parties can elicit from potential jurors what preconceived ideas they might have about Muslims, Iran, the IRGC, and the prominent

politicians allegedly targeted by Mr. Merchant.  Follow-up questioning can both ensure that jurors can be fair and that any legitimate concerns can be appropriately addressed.  Indeed, as the government argues in seeking an anonymous jury, vigorous *voir dire* designed to uncover bias as to issues in the case and as to the defendant himself is essential in ensuring that a defendant's rights are protected.  The use of a questionnaire will become even more essential should the Court grant the government's request for an anonymous jury, because in addition to exploring the jurors attitudes towards the inflammatory issues mentioned above, it will be essential to explore the jurors potential fear of sitting as a juror in a case involving charges that the defendant was acting as an agent of a foreign government and was plotting to assassinate high-ranking government officials, including President Trump. Potential jurors are much more likely to be candid about their views on such sensitive topics if they can give their answers in writing rather than in front of a room full of strangers, including members of the press.

### 3.  <u>Potential Publicity Does Not Require Anonymity</u>

The government argues that an anonymous jury should be empaneled because of the likelihood that the press will cover the trial.  The likelihood that this case will receive press coverage does not require an anonymous jury.  To the extent that the government seeks to have the identity of jurors kept secret from the public (though not from the parties), Mr. Merchant does not object to that request—and such a measure would be sufficient to avoid any risk that potential jurors will be subjected to press scrutiny.  In that regard, it is notable that the press coverage to date has largely relied on information that was leaked to the media by people not associated with the defendant.  It was the government that issued a press release upon Mr. merchant's arrest and it was the government that leaked details of Mr. Merchant's alleged proffer statements to Senator Grassley, who subsequently provided them to the press, thus potentially prejudicing the venire

against Mr. Merchant. The government should not be granted an anonymous jury based on the risk that persons having access to information in the possession of the government might misuse that information.

By contrast, the use of an anonymous jury would prejudice Mr. Merchant by improperly suggesting to jurors that there *is* reason for them to be concerned for their safety.  As detailed above, this suggestion is unfounded. In light of the nature of the pending charges, the improper suggestion that Mr. Merchant is dangerous or that his alleged sponsors connected to the government of Iran or to the IRGC might seek to interfere with the jury would erode the presumption of innocence before trial even begins.

## CONCLUSION

For the reasons set forth above and based on the authorities cited herein, Mr. Merchant respectfully submits that it is not appropriate to empanel an anonymous jury in this case.


Dated: New York, New York
         January 14, 2026

Respectfully submitted,

Avraham C. Moskowitz
Christopher Neff
Joshua J. Lax
*Attorneys for Defendant Asif Merchant*