UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA

    - against -                        24 Cr. 362 (ERK)

ASIF MERCHANT,

               Defendant.

-------------------------------------------------------X

## DEFENDANT'S OPPOSITION TO
## THE GOVERNMENT'S MOTIONS IN LIMINE

AVRAHAM C. MOSKOWITZ
CHRISTOPHER NEFF
80 Broad St, Suite 1900
New York, New York 10004
(212) 257-6455
amoskowitz@mcgsllp.com

JOSHUA J. LAX
225 Broadway, Suite 715
New York, New York 10007
(212) 566-6213
jlax@fgdmlaw.com

*Attorneys for Defendant Asif Merchant*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................... 1

LEGAL ARGUMENT ............................................................................................... 1

I.   Admissibility of Mr. Merchant's Statements ..................................................... 1

II.   No *Curcio* Hearing is Requred.......................................................................... 3

III.  The Government Should be Precluded From Authenticating FBI Video Recordings and Forensic Electronic Device Extractions Via Rule 902 Certifications ........................................ 4

IV.  The Court Should Permit Inquiry Into The Provenance Of The Government's Electronic Evidence................................................................................................................. 8

V.   The Court Should Deny The Government's Motion For An Order Precluding Evidence About The Existence Of Classified Information ..................................................... 10

VI.  The Government's Motion Concerning Witness Anonymity And Courtroom Procedures Should Be Denied In Part ..................................................................... 17

VII.  The Court Should Deny The Government's Remaining Motions As Moot.................. 18

CONCLUSION....................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Boykin v. W. Express, Inc.*, No. 12 Civ. 7428 (NSR),

    2016 WL 8710481 (S.D.N.Y. Feb. 5, 2016) ......................................................... 6, 7

*Leo v. Long Island R. Co.*, 307 F.R.D. 314 (S.D.N.Y. 2015) ......................................... 6

*Mikus v. U.S.*, 433 F.2d 719 (2d Cir. 1970) .................................................................. 6

*Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F.Supp. 276 (S.D.N.Y. 1996) ............... 1, 8

*United States v. Badia*, 827 F.2d 1458 (11th Cir. 1987) ............................................... 13

*United States v. Browne*, 834 F.3d 403 (3d Cir. 2016) .................................................. 4

*United States v. Collins*, 720 F.2d 1195 (11th Cir. 1983) ............................................. 14

*United States v. Feliz*, 467 F.3d 227 (2d Cir. 2006) .................................................... 6

*United States v. Fuentes*, 563 F.2d 527 (2d Cir. 1977) ................................................. 7

*United States v. Hunt*, 534 F. Supp. 3d 233 (E.D.N.Y. 2021) ......................................... 4, 8

*United States v. James*, 607 F. Supp. 3d 246 (E.D.N.Y. 2022) ........................................ 2

*United States v. LaRouche Campaign*, 695 F. Supp. 1282 (D. Mass. 1988) ......................... 12, 13

*United States v. Marin*, 669 F.2d 73 (2d Cir. 1982) .................................................... 2

*United States v. North*, 708 F. Supp. 389 (D.D.C. 1988) ............................................. 14

*United States v. Okatan*, 536 F. App'x 1 (2d Cir. 2013) ............................................... 16

*United States v. Poindexter*, 698 F. Supp. 316 (D.D.C. 1988) .........................................11

*United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009) .................................................. 15

*United States v. Terranova*, 750 F. Supp. 3d 15 (E.D.N.Y. 2024) ................................... 2, 8

*United States v. Wilson*, 750 F.2d 7 (2d Cir. 1984) .................................................... 14

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003) ................................................... 2

*United States v. Yousef*, 750 F.3d 254 (2d Cir. 2014) ...................................................... 2

*United States v. Yunis*, 867 F.2d 617 (D.C. Cir. 1989) ................................................. 15

**Statutes**

18 U.S.C. § 3505(a) ...................................................................................................... 5

18 U.S.C.A. APP. 3 § 5(a) .................................................................................. 11, 14, 15, 16

18 U.S.C.A. APP. 3 § 5(b) ............................................................................ 11, 13, 14, 15, 16

18 U.S.C.A. APP. 3 § 6(b)(1) ................................................................................. 12, 13

**Rules**

Fed. R. Evid. 106 ......................................................................................................... 2

Fed. R. Evid. 401 ........................................................................................................ 18

Fed. R. Evid. 801(d)(2). ................................................................................................ 1

Fed. R. Evid. 803(6) .................................................................................................. 5, 6

Fed. R. Evid. 803(8) ..................................................................................................... 6

Fed. R. Evid. 806(6) ..................................................................................................... 9

Fed. R. Evid. 901 ......................................................................................................... 6

Fed. R. Evid. 902 ..................................................................................................... 4, 8

Fed. R. Evid. 902(11) .................................................................................................... 4

## PRELIMINARY STATEMENT

Defendant Asif Merchant respectfully submits this memorandum of law in opposition to the government's motions *in limine*, ECF Doc. No. 76 herein.

## LEGAL ARGUMENT

### I.     ADMISSIBILITY OF MR. MERCHANT'S STATEMENTS

The government moves to admit prior statements of Mr. Merchant if offered by the government and to preclude any such statements if offered by the defendant.  The bulk of the government's argument on this initial motion consists of recitations of the law of evidence.  The defendant is aware of the rules of evidence and will comply with them at trial.  It is respectfully submitted that the Court should withhold decision on this portion of the government's motion, which on its face seeks a ruling permitting the introduction of broad categories of purported statements, described only in general terms, together with a ruling precluding wholesale every statement attributable to the defendant if offered by him.

The Court should reserve ruling on the government's request to admit party admissions pursuant to Rules 801(d)(2)(A) and (E) because the government has not identified with specificity the statements it seeks to admit.  As a result, the government's motion lacks "the necessary specificity with respect to the evidence to be [admitted] or the purported reason for the introduction of such evidence" and therefore is "too sweeping in scope to be decided in limine."  *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F.Supp. 276, 287 (S.D.N.Y. 1996).

The government has identified no specific statements it intends to offer into evidence so the relevance and potential prejudice of the statements cannot be assessed.  Accordingly, rather than ruling that all statements are admissible if offered by the government and inadmissible if

offered by the defendant for any purpose, the Court should determine the admissibility of each statement when offered at trial. In the alternative, and at a minimum, the Court should require the government to identify with particularity each statement it intends to offer, so that the defendant can raise appropriate objections to its admission and, if appropriate, request that other parts of the defendant's statement be admitted pursuant to the rule of completeness.

The Court should also deny as premature the government's motion to preclude Mr. Merchant from offering any statement (or portion of a statement) into evidence. *See*, *e.g.* *United States v. Terranova*, 750 F. Supp. 3d 15, 29 (E.D.N.Y. 2024) ("Despite the benefits of resolving potential evidentiary disputes before trial, the court may exclude the disputed evidence only if the evidence is clearly inadmissible on all potential grounds"); *United States v. James*, 607 F. Supp. 3d 246, 251 (E.D.N.Y. 2022). The defendant has not determined what statements, if any, he intends to offer into evidence at trial. He cannot do so in advance of trial, because the admissibility of any such statements will be dependent, in large part, on the nature and substance of the government's presentation.

Because the government has not provided either the Court or the defense the statements or portions of statements by Mr. Merchant it seeks to admit, Mr. Merchant cannot yet determine which statements he would offer under the rule of completeness. Fed. R. Evid. 106; *United States v. Yousef*, 327 F.3d 56, 154 (2d Cir. 2003) ("[T]he rule of completeness is violated 'only where admission of the statement in redacted form distorts its meaning or excludes information substantially exculpatory of the declarant.'") (overruled on other grounds as stated in *United States v. Yousef*, 750 F.3d 254, 261 (2d Cir. 2014)); *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) ("We have interpreted this Rule to require that a statement be admitted in its entirety when this is necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier of

fact."). Likewise, other of Mr. Merchant's statements may be subject to one or more other hearsay exceptions. Thus, should the defendant offer any prior statements, he will articulate permissible bases for the admission of those specific statements as appropriate.

II.     NO *CURCIO* HEARING IS REQUIRED

The government's second motion *in limine* informs the Court that the government intends to introduce the defendant's proffer statements at trial if the defendant triggers the "waiver provision" of the proffer agreement. The defendant is aware of the scope of the proffer agreement, including the waiver provision thereof, and will litigate any purported violation of any of its terms when and if it becomes necessary to do so.

The government seeks a *Curcio* hearing in advance of trial, arguing that Mr. Moskowitz may be a fact witness to events that took place at the defendant's proffer sessions. The government is wrong and no *Curcio* hearing is required. Mr. Moskowitz is no more a fact witness than are the prosecutors who attended those same proffer sessions, and if there is a dispute as to what was said at a proffer session, that dispute can be resolved through other witnesses. Specifically, defense counsel can call (or cross-examine) one of the law enforcement agents who was present, or in the alternative Mr. Merchant himself can testify. Simply put, Mr. Moskowitz's participation in the proffers does not present a conflict requiring a *Curcio* hearing.

Finally, it should be noted that the government was aware of this issue from the very beginning of the case but did not raise the issue until shortly before trial is scheduled to commence. The government's delay is highly prejudicial to the defendant, who may be forced to choose between continuing with his current counsel, whom the government claims may be conflicted, or choosing to be represented by a different counsel, thereby delaying his trial for an indeterminate period of time.

III. THE GOVERNMENT SHOULD BE PRECLUDED FROM AUTHENTICATING FBI VIDEO RECORDINGS AND FORENSIC ELECTRONIC DEVICE EXTRACTIONS VIA RULE 902 CERTIFICATIONS

Point III of the government's motion seeks an order permitting the government to authenticate certain documents as business records using Rule 902(11) certifications.

"Rule 902 of the Federal Rules of Evidence provides that certain items of evidence are 'self-authenticating,' meaning that 'they require no extrinsic evidence of authenticity' to be admitted." *United States v. Hunt*, 534 F. Supp. 3d 233, 253 (E.D.N.Y. 2021) (quoting Fed. R. Evid. 902). "These include 'domestic record[s] that meet[ ] the requirements of Rule 803(6)(A)–(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court.'" *Id.* (quoting Fed. R. Evid. 902(11)). "Rule 803(6), in turn, allows business records to be admissible if they are accompanied by a certification of a custodian or other qualified person showing that: (A) 'the record was made at or near the time by—or from information transmitted by—someone with knowledge;' (B) 'the record was kept in the course of a regularly conducted activity' of the business; and (C) 'making the record was a regular practice of that activity.'" *Id.* (quoting Fed. R. Evid. 803(6)). "Similarly, 18 U.S.C. § 3505 provides for authentication by certification and admissibility of foreign business records in criminal proceedings." *Id.* at 254 (citing 18 U.S.C. § 3505(a)). "[T]he business-records exception under Rule 803(6) is designed to capture records that are likely accurate and reliable in content, as demonstrated by the trustworthiness of the underlying sources of information and the process by which and purposes for which that information is recorded." *Id.* (citing *United States v. Browne*, 834 F.3d 403, 410 (3d Cir. 2016) (collecting cases)).

Mr. Merchant agrees in principle that certain records may be admissible pursuant to certification and is prepared to discuss appropriate stipulations with the government.[1] However, at least two categories of documents the government seeks to admit—surveillance videos and forensic reports generated during the investigation of Mr. Merchant—should not be admitted pursuant to certification because they are not "business records" made by a person with knowledge in the course of a regularly-conducted business activity.

The government has provided defense counsel with a preliminary list of "certificates of authenticity pertaining to records the government intends to admit at trial pursuant to Federal Rule of Evidence 902." Most of the listed certificates relate to business records provided to the government by nonparty entities, and Mr. Merchant concedes that such business records may be authenticated by certification.[2] However, one of the listed certificates purports to authenticate surveillance video taken by the Federal Bureau of Investigation during the government's investigation of Mr. Merchant. Contrary to the government's argument at Point III of its motion, those videos are not "Records of a Regularly Conducted Activity" under Fed. R. Evid. 902(11). The videos are not "record[s] kept in the course of a regularly conducted activity of" the FBI and do not contain information recorded by a person with knowledge of its accuracy. *See* Fed. R. Evid. 803(6). Instead, the videos were created pursuant to judicial warrant as part of the investigation. Records of this kind are explicitly excluded from the definition of "public records" under Rule 803(8), which excludes records setting out, "in a criminal case, a matter observed by law-enforcement personnel." Fed. R. Evid. 803(8). Accordingly, the videos cannot be authenticated

---

[1] Because the government has indicated that its list of certifications is not yet complete, Mr. Merchant respectfully reserves the right to object to the admission of such documents and records on an individual basis.

[2] Mr. Merchant would object to any attempt by the government to explain terms and other parts of these records in the absence of a witness with knowledge who is competent to testify to their meaning and/or significance.

by certification as "Records of a Regularly Conducted Activity" or as "Public Records.". *See United States v. Feliz*, 467 F.3d 227, 234 (2d Cir. 2006) (explaining that "business records cannot be made in anticipation of litigation or include observations made by law enforcement personnel"). The government's motion for an order permitting it to authenticate FBI surveillance videos via certification that they are self-authenticating business or public records should therefore be denied.

Furthermore, even if the surveillance videos could be considered business records of the FBI notwithstanding that they were created pursuant to judicial warrant and in anticipation of a future prosecution, rather than in the ordinary course of business, the government's motion must be denied because the certification produced at Bates AM_008856-58 fails to authenticate the videos to the standard required in the Second Circuit. Fed. R. Evid. 901 mandates that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." The Second Circuit requires authentication of video evidence "on the same principles as still photographs." *Mikus v. U.S.*, 433 F.2d 719, 725 (2d Cir. 1970); s*ee also Leo v. Long Island R. Co.*, 307 F.R.D. 314, 323-26 (S.D.N.Y. 2015) (holding that videos are not self-authenticating and require authentication testimony). Thus, to authenticate the recordings at issue, "[the government] must demonstrate not only that [defendant] is the individual depicted in the video but also that the video is authentic and that the events are accurately depicted." *Boykin v. W. Express, Inc.*, No. 12 Civ. 7428 (NSR), 2016 WL 8710481, at *5 (S.D.N.Y. Feb. 5, 2016) (finding insufficient authentication of a video though one party "has admitted that she is the individual in the videos, this alone does not confirm the genuineness or authenticity of what, according to [the proponent of the evidence], 'was truly and accurately before the camera'").

The Second Circuit "does not have a rigid formula for evaluating the authenticity of audio and video tapes, the requisite indicia of authenticity can be created by presenting witnesses who recall the events depicted, testimony as to the chain of custody, testimony of the person recording the events, or any other evidence tending to show the accuracy of the depictions." *Boykin*, 2016 WL 8710481, at *5 (*citing United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir. 1977) (noting that "since recorded evidence is likely to have a strong impression upon a jury and is susceptible to alteration, [it] ha[s] adopted a general standard, namely, that the government 'produce clear and convincing evidence of authenticity and accuracy' as a foundation for the admission of such recording"). Here, the certification merely recites that the video "had been made with the FBI's collection system," that the system in question is intended to protect against alteration, deletion, or modification of video stored therein, and that the process by which the FBI takes and stores surveillance video purportedly "produces an accurate result." The certification does not identify with specificity the videos it purports to certify but instead recites that the agent executing the certification "reviewed the video associated with this case and verified that the video had been made with the FBI's collection system." In short, the certification fails entirely to meet the requirements for authentication of video recordings in the Second Circuit. The government accordingly should be precluded from authenticating the FBI surveillance video as a self-authenticating "business record" pursuant to Rule 902 certification.

Point IV of the government's motions *in limine* seeks an order permitting the government to authenticate extractions from cell phones and other seized electronic devices by certification. The government has not produced its proposed certifications to the defense and has not identified with particularity the supposed electronic evidence it proposes to authenticate by certification. The government's motion should therefore be denied as premature and inappropriate for resolution *in*

*limine. See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F.Supp. at 287; *see also United States v. Terranova*, 750 F. Supp. 3d 15, 33 (E.D.N.Y. 2024) ("Under Rule 902(11), the proponent must give 'reasonable written notice' and 'make the record and certification available for inspection' so that the adverse party 'has a fair opportunity to challenge them.'")[3]

Moreover, "authenticity does not imply admissibility." *Id.* Accordingly, even if the government ultimately submits certifications adequate to authenticate the electronic data as having been collected from specific devices, it must also produce a witness who can testify to how the electronic devices in question came into the government's possession and what measures were taken to ensure that their contents were genuine and had not been tampered with prior to the generation of the forensic images. Absent an adequate showing that the evidence is reliable, it should not be admitted even if it is authenticated. *Cf.*, *United States v. Hunt*, 534 F. Supp. 3d at 254 (explaining that specific messages and videos retrieved from social media accounts "are not self-authenticating business records that require no extrinsic evidence of authenticity other than a certification from a custodian to be admitted" even if the social media extractions containing those items can be authenticated via certification); cf. Fed. R. Evid. 806(6) (permitting admission of "records of a regularly conducted activity" only if "the opponent does not show that the source of information … indicate[s] a lack of trustworthiness").

IV.    THE COURT SHOULD PERMIT INQUIRY INTO THE PROVENANCE OF THE GOVERNMENT'S ELECTRONIC EVIDENCE

The Court should deny Point IX of the government's motion, which seeks an order precluding the defendant from enquiring into how the government obtained an Apple iPhone purportedly belonging to a relative of Mr. Merchant, for reasons similar to the reasons it should

---

[3] Because the government has not yet produced certifications related to the electronic device extractions, the defense respectfully reserves the right to assert specific challenges to such certifications after they are produced.

deny the government's motion to authenticate cell-phone extractions via certification. According to the government, a foreign government provided prosecutors with that device (or possibly with a clone of that device or with an electronic database purporting to be a forensic image of that device)—but the government has not identified the foreign country in question to the defense and has not otherwise explained the provenance of the iPhone or its purported contents. Notably, many foreign governments are known to use surveillance software packages such as "Pegasus," "Phantom," and "Graphite." These software packages are capable of modifying the contents of electronic devices in real time, without the knowledge of the persons using those devices—and the United States government has previously declined to confirm whether it employs such software against persons located overseas (though it denies using such software domestically against citizens).

The government correctly notes that arguments concerning the device's provenance and chain of custody go to the weight that should be afforded the evidence, but before the jury can consider the weight to be given to the evidence, the government must establish that the evidence obtained from the phone in question is authentic, i.e., it is what it purports to be and was not altered in any way. (Govt Mem. at 32.) Without explaining how, when and from whom it received the iPhone in question, the government cannot establish the authenticity of the information extracted from the phone. Moreover, the defense cannot effectively challenge the reliability and authenticity of electronic records purportedly collected overseas from a device in the possession of an unknown foreign government without inquiring into the provenance of the device and the identity of the foreign government, and the jury cannot evaluate the reliability of the evidence without knowing where it came from and how it was obtained. Thus, for example, a jury may be more inclined to trust the authenticity and reliability of information and evidence provided by British intelligence

than if the same information was provided by Russian intelligence. Without knowing the source of the evidence, the jury will not have any rational basis to judge whether the information and evidence received from the foreign government is authentic and reliable.

Point IX of the government's motion should therefore be denied.

V.     THE COURT SHOULD DENY THE GOVERNMENT'S MOTION FOR AN ORDER PRECLUDING EVIDENCE ABOUT THE EXISTENCE OF CLASSIFIED INFORMATION

In Point VI, the government seeks an order under 18 U.S.C.A. APP. 3 § 5(b) of the Classified Information Procedures Act ("CIPA") "to preclude any inquiry or argument about classified information during trial outside the scope of CIPA." Although the government fails to explain what it means by "outside the scope of CIPA," elsewhere in its motion the government seeks to preclude any questioning or arguments that might reference classified information, intelligence collection, or questions the existence of classified information. The government offers the most generalized and conclusory arguments in support of this motion, which focus on relevance and the notice required in some circumstances under CIPA Section 5(a) notice.

This motion should be denied for several reasons. First, Mr. Merchant and his counsel have received no classified information whatsoever, nor any notice of what might be contained therein. As explained further below, there can be no CIPA preclusion order without knowledge of what is or is not classified or possession of the classified information itself.  Second, the government offers no authority for the relief it seeks in this motion. Third, the CIPA proceedings are ongoing, and the Court's most recent order concerning the government's CIPA motion indicates that some quantity of classified information may be disclosed at a later date. Fourth, the government's motion is premature because it has yet to provide its witness list, exhibits, or Jencks Act materials. Fifth, the government's relevance arguments are meritless.

The fundamental flaw in the government's motion is that the government has thus far failed to provide notice to the defense under CIPA of the types of classified information that was the subject of its motion, nor has it disclosed any classified information to Mr. Merchant or his counsel. In the total absence of any information concerning what is and what is not classified in this matter, the defense has no ability to judge what type of question or argument may be objectionable under CIPA because it may reveal classified information. Moreover, this is a situation entirely of the government's own making.

Section 6 of CIPA sets forth the procedures for a motion for a protective order. Under that section, the government is required to

> [P]rovide the defendant with notice of the classified information that is at issue. Such notice shall identify the specific classified information at issue whenever that information previously has been made available to the defendant by the United States. When the United States has not previously made the information available to the defendant in connection with the case, the information may be described by generic category, in such form as the court may approve, rather than by identification of the specific information of concern to the United States.

18 U.S.C.A. APP. 3 § 6(b)(1). *United States v. Poindexter*, 698 F. Supp. 316, 318 (D.D.C. 1988). Thus, prior to seeking any relief under CIPA, the government is required to provide notice of either the materials it previously produced or by identifying the categories of information that have not been produced. Here, the government has never provided the notice required by Section 6(b)(1)—neither before the original CIPA motion nor before the instant motion *in limine*. As a result, the defense has been wholly deprived of any notice of what may be classified information, whether it is within "the scope of" CIPA or not.

Simply put, Mr. Merchant does not know what information known to him is considered by the government to be classified. Nor has the government given him notice of its classification decisions. Accordingly, neither Mr. Merchant nor his counsel knows what information the

government seeks to preclude the defense from using at trial. The defense cannot be precluded from pursuing a line of inquiry or argument without being told what it is forbidden from doing—and the defense has no way of knowing whether the underlying information it is seeking is classified.[4]

The government invokes Sections 5 and 6 as authority for the preclusion order it seeks, arguing in part that Mr. Merchant has or will fail to provide a notice required under Section 5(a). Section 5 does not apply, however, where there is no disclosure of classified information. Indeed, the government itself advanced this interpretation of CIPA and has argued in other cases that the provisions in "sections 5 and 6 apply to classified information already in the hands of defense counsel or required to be disclosed to them if the prosecution is to proceed." *United States v. LaRouche Campaign*, 695 F. Supp. 1282, 1284 (D. Mass. 1988). In *LaRouche*, the defendant sought to obtain discovery of classified information during trial. Prior to trial, the court found that CIPA procedures did not apply to the discovery materials in the case. *Ibid.* A CIPA issue arose during trial, however, and a threshold issue became what section of CIPA would provide the procedure for resolving the dispute. *Id*. The defendant argued that the court should follow the procedures in Sections 5 and 6, and the government argued that only CIPA Section 4 applied. *Id*. In support of its position, the government asserted that CIPA Sections 5 and 6 only apply to circumstances where the defendant has received or will receive classified information. *Id*. The court accepted the government's position, and held that CIPA Section 4 applied to the dispute. *Id*.

---

[4] The defense is similarly hindered in responding to the government's motion because it lacks knowledge or notice of what information the government considers classified. Accordingly, Mr. Merchant respectfully reserves the right to respond with particularity to the government's motion to preclude specific items of evidence or lines of argument, if any, when the defense receives notice that such evidence is classified.

at 1284-85. Thus, *LaRouche* makes clear that at the trial stage, Sections 5 and 6 do not apply where no disclosure of classified information has been or will be made to the defense.

The decision in *LaRouche* also highlights some of the legislative history of CIPA relevant here. *LaRouche* references a statement in the Senate Reports for CIPA explaining that the legislative intent behind Section 5 was that a "defendant who intends to disclose classified information at pretrial or in trial 'notify the Government prior to trial, *when possible.*'" *Id*. at 1286 (emphasis in original). Thus, Congress recognized that in certain circumstances a notice under Section 5 would not be possible. Here, such a notice is not possible because the defense has received no notice or information concerning what is classified. Thus, the legislative history indicates that notice is required when the circumstances make such a notice possible. In this case, no such notice is possible in light of the complete absence of any indication as to what is and is not classified.

Notwithstanding its lack of disclosure of any classified information, the government contends that there has been no Section 5(a) notice in this case and asserts that it is entitled to a preclusion order under Section 5(b). The government provides no authority supporting its requested relief in cases where the defendant has no notice or knowledge of what is classified. This lack of support is unsurprising, as the decisions granting an order under Section 5(b) occur when 1) the defendant was himself involved in classified activity for the United States government, or 2) the defendant was provided classified information and materials in discovery. For example, in *United States v. Badia*, 827 F.2d 1458 (11th Cir. 1987), the only case cited here by the government, the defendant sought to advance a defense of CIA involvement "which would have demonstrated that the government approved the operations in which he was involved." *Badia*, 827 F.2d at 1464. The defendant failed to provide any notice under Section 5, despite two requests for the notice

from the government, and was precluded from offering a defense based on CIA involvement. *Ibid*.

A key distinction between the circumstances in *Badia* and this case is that Badia maintained he was part of the classified operations himself, and in turn, he would have been able to identify the classified information he expected to rely upon, whereas Mr. Merchant is not making such a claim and cannot identify any classified information he may rely upon. This distinction played a role in other Eleventh Circuit cases. *United States v. Collins*, 720 F.2d 1195, 1199 (11th Cir. 1983).

Likewise, the Second Circuit affirmed a preclusion order where the defendant failed to provide a Section 5(a) notice but tried to offer evidence "about certain covert activities … on behalf of the United States … that would have tended to disprove the charges being made against him." *United States v. Wilson*, 750 F.2d 7, 9 (2d Cir. 1984). The Court described this posture as "the kind of situation that Congress had in mind when it enacted the Classified Information Procedures Act (CIPA)." *Ibid*. Section 5(b) orders have also been granted where the defendant received the classified information in discovery, and would be able to identify specific items in a Section 5(a) notice. *United States v. North*, 708 F. Supp. 389, 391 (D.D.C. 1988) ("North in almost every instance was provided the full language and text of the classified documents, including the portions still deemed classified. Unlike defendants and their attorneys in other cases, he has not been in the position of guessing the content of material withheld by classification. He knows in actual text what the government is seeking to maintain classified. Thus, he has been fully equipped to decide, along with his counsel, whether or not detail in still classified papers or redacted portions are relevant and material for his defense.").

None of these circumstances apply in this matter. Mr. Merchant was not an insider or participant in classified or covert activity on behalf of the United States government, nor has he received classified documents which he could point to in a Section 5(a) notice. As explained above,

Mr. Merchant has so far received no classified information, whether as original items or as a substitute summary, nor has he received any notice of what the government has withheld as classified. Thus, none of the circumstances that typically warrant preclusion under Section 5 are present in this matter.

Aside from *Badia*, the government cites two cases for the most general propositions concerning the sensitive nature of classified information and the government interest in protecting such information. Further, these decisions concern CIPA in the pretrial discovery context and provide no specific pronouncements concerning CIPA in the trial phase. *See United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989); *United States v. Stewart*, 590 F.3d 93, 131–32 (2d Cir. 2009). These decisions have nothing to do with the issue here, which is whether in the absence of any knowledge as to what is or is not classified, a defendant can be precluded from asking questions or making arguments that could touch on some classified information.

A further flaw in the government's motion is that Mr. Merchant has non-classified sources of information from which he can build a defense. If by chance there is some overlap between the information from both classified and non-classified sources, and Mr. Merchant has no way to know that such an overlap may exist, the government cannot prevent him from offering evidence or presenting a defense merely because classified material reflects the same information.

In addition, the government's motion, to the extent it has any basis, is premature. First, the litigation of the CIPA motion remains ongoing. Although the Court has rendered a decision, the defense has not yet received the Court's decision and order, and the public docket entry indicates that Mr. Merchant may receive at least some classified information in the future. (Docket Entry No. 85). Based on this order, the earliest Mr. Merchant might receive the Court's decision is

January 26, 2026, which would be less than thirty days before trial.[5] Second, the government has yet to produce its witness list, its exhibits, and its Jencks Act materials. The government also continues to produce discovery for reasons it also maintains are classified, as evidenced by other government submissions on the docket. As a result, the defense does not have a comprehensive understanding of the government's case in chief.

Lastly, the government argues that any evidence or argument concerning the existence or non-existence of intelligence information is irrelevant and inadmissible. As an initial matter, for the reasons discussed in Mr. Merchant's motion *in limine*, any materials withheld under CIPA do not exist for purposes of this trial. The government's opposition to that motion does not dispute any of the legal principles described by Mr. Merchant that require this result, and in fact, the government tries to sidestep them and asserts in conclusory fashion that the defense motion is moot.

The absence or lack of evidence is in itself relevant, because that absence has the tendency to make a fact consequential to the action more or less probable. Fed. R. Evid. 401. Further, parties are often permitted to argue the inferences that are to be drawn from the absence of evidence. *See e.g. United States v. Okatan*, 536 F. App'x 18, 21 (2d Cir. 2013). Contrary to the government's contentions here, whether certain evidence exists or not may be relevant to the jury's determination of this case. Because any classified information that is withheld is excluded from the case, it does not exist for purposes of trial. The government's decision to invoke CIPA protections creates this legal fiction, and it is for this reason that Mr. Merchant's motion *in limine* is not moot. His motion contemplates the scenario where either Mr. Merchant may wish to highlight the absence of certain

---

[5] In an abundance of caution, the government is hereby put on notice that Mr. Merchant may rely on the classified information for which the court may permit disclosure.

evidence before the jury or prevent the government from trying to ambush the defense with previously unproduced materials if the government realizes it has a proof problem.

In any event, the defense has no way of knowing whether a particular question will inquire into the existence of classified information, and because that knowledge is a pre-condition to a preclusion order, the defense should not be precluded from asking questions on a hypothetical basis.

Point VI should therefore be denied.

## VI. THE GOVERNMENT'S MOTION CONCERNING WITNESS ANONYMITY AND COURTROOM PROCEDUDES SHOULD BE DENIED IN PART

Point X of the government's motions seeks an order permitting certain witnesses to testify in "light disguises" and under pseudonyms. The defense does not object to those requests as they pertain to the undercover agents who may testify, provided that the pseudonyms used are not evidently pseudonymous (*i.e.*, not "Officer Jane Doe" or the equivalent), such that the jury does not know that the names provided are pseudonyms and cannot draw from them an inference that Mr. Merchant poses a threat to the officers' safety, and provided that the disguises are not obvious to the jury.

The defense objects to the use of a pseudonym and a disguise by the cooperating witness, which cannot be justified on the basis of witness safety or any other basis. As to safety, Mr. Merchant has known the cooperating witness for years. If he were inclined to provide his name and address to his alleged coconspirators, he would have had an opportunity to do so before his arrest and will be able to provide such information after the trial, regardless of the outcome. Moreover, the evidence at trial will include audio recordings that reveal the name of the cooperating witness and may include videos that show the face of the cooperating witness. Thus, if he testifies under a pseudonym and wearing a disguise, it will be obvious to the jury and will

prejudice the defendant. Finally, unlike at least one of the law enforcement witnesses, the government does not assert that the cooperating witness is involved in any ongoing investigation that would be jeopardized if he testified under his own name and without a disguise.

Finally, the defense does not object to the government's request that the public not be permitted to use electronic devices, or to its request that law enforcement witnesses be permitted to use a non-public entrance when entering and leaving the courthouse. However, the defense opposes that portion of the government's motion which seeks to preclude inquiry into how the law enforcement officers were trained. Such information is not sensitive and is directly relevant to the officers' expertise and credibility, and the defendant should be permitted to make appropriate, limited inquiries concerning the officers' training.

## VII.    THE COURT SHOULD DENY THE GOVERNMENT'S REMAINING MOTIONS AS MOOT

Point V of the government's motion seeks an order precluding the defendant from asserting that the government induced him to commit the crimes with which he is charged. The Court should deny that motion at this juncture as premature. The defense does not intend to argue, in its opening statement, that Mr. Merchant was entrapped into participating in the plot alleged in the indictment, but cannot be foreclosed from making the argument at the end of trial if the evidence presented supports such a defense.

Point VII of the government's motion seeks an order precluding the defendant from arguing that the fact that he conducted legitimate business in the United States on some occasions demonstrates that he did not engage in criminal conduct on other occasions. The government expressly disclaims that its motion is intended to preclude the defendant from introducing evidence that at least some of his activity in the United States related to his work in the garment industry.

The defendant does not intend to argue that his innocent conduct on some occasions demonstrates that all of his other conduct was also innocent, and the defendant does not intend to introduce irrelevant evidence.  Similarly, Point VIII of the government's motion seeks an order precluding the defendant from introducing irrelevant evidence and making improper arguments about potential punishments—neither of which the defendant intends to do.  Points VII and VIII of the government's motion, which seek to preclude Mr. Merchant from making improper arguments he does not intend to make and from introducing irrelevant evidence he does not intend to introduce, should be denied as moot.

## CONCLUSION

For the reasons set forth above and based on the authorities cited herein, Mr. Merchant respectfully requests that the Court deny the government's motions in limine.


Dated: New York, New York
        January 21, 2026

                                        Respectfully submitted,


                                        _____/s/_____

                                        Avraham C. Moskowitz
                                        Christopher Neff
                                        Joshua J. Lax
                                        *Attorneys for Defendant Asif Merchant*