NJM:SKW/GMR/NCG
F. #2023R00922

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                     No. 24-CR-362 (EK)

ASIF MERCHANT,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

<u>REPLY IN SUPPORT OF THE
GOVERNMENT'S MOTIONS *IN LIMINE* TO ADMIT CERTAIN EVIDENCE
AND PRECLUDE CERTAIN EVIDENCE AND ARGUMENTS AT TRIAL</u>

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

Sara K. Winik
Gilbert M. Rein
Nina C. Gupta
Assistant United States Attorneys
    (Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT.................................................................................................................................. 2

I. The Court Should Admit the Defendant's Statements as Party-Opponent Admissions When Offered by the Government and Preclude the Defendant's Statements When Offered by the Defendant as Hearsay .................................................................................. 2

II. The Court Should Admit the Defendant's Proffer Protected Statements at Trial If the Waiver Provision of the Proffer Agreement is Triggered.................................................... 3

III. The Government Should Be Permitted to Authenticate Video Recordings, Electronic Records, and Device Extractions Under Federal Rule of Evidence 902 ............................ 4

IV. The Court Should Preclude the Defendant from Raising an Entrapment Defense Because He Cannot Meet the Burden of Production as to Both Elements of the Defense ............... 7

V. The Court Should Preclude Evidence or Argument About the Existence or Absence of Classified Information as Irrelevant..................................................................................... 8

VI. The Court Should Preclude Inquiry Regarding the Identity of a Third-Party Country Which Assisted the Government's Investigation................................................................ 9

VII. The Court Should Permit the Government to Use Certain Measures to Protect the Identities of Witnesses ....................................................................................................... 11

VIII. The Court Should Grant the Government's Motions to Preclude Evidence and Testimony Regarding Prior Good Acts and About Possible Punishments as Unopposed.................. 13

CONCLUSION............................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Boykin v. Express, Inc.*,
   No. 12-CV-7428 (NSR), 2016 WL 8710481 (S.D.N.Y. Feb. 5, 2016) ....................... 5

*Carson v. Fischer*,
   421 F.3d 83 (2d Cir. 2005) ............................................................................................ 12

*Diaz v. United States*,
   No. 14-CV-7016 (KAM), 2020 WL 3403057 (E.D.N.Y. June 19, 2020) ................. 3

*Goldenberg v. United States*,
   No. 09-CV-4005 (NGG), 2012 WL 1599869 (E.D.N.Y. May 4, 2012) .................... 8

*In re City of New York*,
   607 F.3d 923 (2d Cir. 2010) ......................................................................................... 10

*Leo v. Long Island R. Co.*,
   307 F.R.D. 314 (S.D.N.Y. 2015) .................................................................................. 5

*Rosemond v. United States*,
   378 F. Supp. 3d 169 (E.D.N.Y. 2019) ........................................................................ 3

*SCS Communications, Inc. v. Herrick Co., Inc.*,
   360 F.3d 329 (2d Cir. 2004) .......................................................................................... 7

*United States v. Alimehmeti*,
   284 F. Supp. 3d 477 (S.D.N.Y. 2018) ...................................................................... 11

*United States v. Benitez*,
   920 F.2d 1080 (2d Cir. 1990) ........................................................................................ 2

*United States v. Bird*,
   No. 23-CR-326 (AKB) (D. Idaho November 12, 2024) ........................................... 5

*United States v. Bowens*,
   No. 18-CR-835 (N.D. Ill. Feb 14. 2020) .................................................................... 6

*United States v. Curcio*,
   680 F.2d 881 (2d Cir. 1982) .......................................................................................... 3

*United States v. Ennab*,
 No. 22-CR-464 (AMD) (E.D.N.Y. 2025) .................................................................................. 6

*United States v. Farekh*,
 No. 15-CR-268 (BMC), ECF No. 118 (E.D.N.Y. Aug. 10, 2017) ........................................... 10

*United States v. Forney*,
 No. 24-CR-146 (KAM), 2025 WL 2208298 (E.D.N.Y. Aug. 5, 2025) ...................................... 6

*United States v. Goldenberg*,
 No. 04-CR-159 (NGG) (E.D.N.Y.) ............................................................................................ 8

*United States v. Gonzalez*,
 144 F.4th 396 (2d Cir. 2025) ..................................................................................................... 7

*United States v. Hossain*,
 No. 19-CR-606 (SHS), 2021 WL 4272827 (S.D.N.Y. Sept. 21, 2021) ................................... 10

*United States v. Karony*,
 No. 23-CR-433 (EK) (E.D.N.Y. 2025) ...................................................................................... 6

*United States v. Morrison*,
 153 F.3d 34 (2d Cir. 1998) ......................................................................................................... 7

*United States v. Smith*,
 No. 23-CR-65 (WLS)(ALS) (M.D. Ga. Aug. 2, 2024) .............................................................. 6

*United States v. Taqi*,
 No. 22-CR-553 (ENV) (E.D.N.Y. 2025) ................................................................................... 6

*United States v. Terranova*,
 750 F. Supp. 3d 15 (E.D.N.Y. 2024) ......................................................................................... 6

*United States v. Thiam*,
 934 F.3d 89 (2d Cir. 2019) ......................................................................................................... 2

*United States v. Wilson*,
 586 F. Supp. 1011 (S.D.N.Y. 1984) ........................................................................................ 11

*United States v. Woods*,
 No. 18-CR-261 (EEF)(MLH) (W.D. La. Nov. 18, 2019) .......................................................... 6

*United States v. Yunis*,
 867 F.2d 617 (D.C. Cir. 1989) ................................................................................................... 9

**Statute**

18 U.S.C. app. 3 § 8(c) ............................................................................................................. 9

**Rules**

Fed. R. Evid. 902(13) ....................................................................................................... 5, 6, 7

Fed. R. Evid. 902(14) .......................................................................................................... 6, 9

PRELIMINARY STATEMENT

The government respectfully submits this reply in support of its motions *in limine*, ECF Nos. 76, 77 (the "Government's Motions" or "Gov't Mot."), and in response to the defendant's opposition, ECF No. 88 ("the Opposition" or "Opp."). For the reasons stated in the Government's Motions and below, the Government's Motions should be granted.

## ARGUMENT

I. **The Court Should Admit the Defendant's Statements as Party-Opponent Admissions When Offered by the Government and Preclude the Defendant's Statements When Offered by the Defendant as Hearsay**

The defendant objects to a ruling that all the defendant's statements are admissible when offered by the government but inadmissible when offered by the defendant, although the government and the defendant largely agree on the applicable law. *See* Opp. at 1. The government plans to produce its exhibits to the defendant by February 9, 2026, which will include numerous statements made by the defendant including, for example, communications between the defendant and the confidential source ("CS"); communications between the defendant and the undercover law enforcement agents ("UCs") in video and audio recordings; and text and audio messages between the defendant and certain relatives who helped the defendant procure $5,000 to pay the hitmen.[1]

If the defendant identifies any specific additional material that he believes is "necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion," the government will consider whether to expand the excerpt to include such additional material, and of course, the Court will rule on any disputes between the parties. *United States v. Thiam*, 934 F.3d 89, 96 (2d Cir. 2019) (quotation marks and citation omitted). But so long as the government's excerpts do not "distort[] its meaning or exclude[] information substantially exculpatory of the declarant," no additional material need be included under Federal Rule of Evidence 106. *Id.* (quoting *United States v. Benitez*, 920 F.2d 1080, 1086-87 (2d Cir. 1990)).

---

[1] The government also intends to introduce voluntary statements the defendant made to law enforcement officers through agent testimony.

Accordingly, the government requests that the defendant be required to inform the government of whether the defendant wishes to introduce other portions of the government's identified exhibits by February 18, 2026, so any disputes can be presented to the Court in advance of trial.

II. The Court Should Admit the Defendant's Proffer Protected Statements at Trial If the Waiver Provision of the Proffer Agreement is Triggered

The defendant asserts that he understands the scope of the proffer agreement and does not dispute the type of scenarios that the government described in its motions that would trigger the waiver provision of the agreement and enable the government to introduce the defendant's proffer statements. *See* Opp. at 3; Gov't Mot. at 13-14.

The defendant does, however, object to the Court holding a hearing pursuant to *United States v. Curcio*, 680 F.2d 881, 886 (2d Cir. 1982), in advance of trial to ensure the defendant is aware of the potential conflict of interest presented by his attorney's presence at each proffer session. *See* Opp. at 3. The defendant incorrectly claims that no potential conflict exists.

There is indisputably a potential conflict, albeit a waivable one, given that Mr. Moskowitz could be a witness should defense counsel open the door to the admission of defendant's proffer statements.[2] *See, e.g.*, *Diaz v. United States*, No. 14-CV-7016 (KAM), 2020 WL 3403057, at *2 (E.D.N.Y. June 19, 2020) (holding a *Curcio* hearing "after the Government advised that there could be a potential conflict of interest between [the defendant and the attorney], due to their participation in two proffer sessions with the Government"); *Rosemond v. United States*, 378 F. Supp. 3d 169, 173–74 (E.D.N.Y. 2019) (same). Contrary to the defendant's claim, the prosecutors who were present at the proffers are similarly potential fact witnesses, but there is

---

[2] No similar conflict exists for the defendant's other counsel who were not present at the proffers.

no conflict because the prosecutors do not represent the defendant. Viewed differently, the government has waived any potential conflict arising from a variance in memory regarding the substance of the defendant's proffer between testifying law enforcement agents and litigating attorneys. The defendant may effect a similar waiver, but because it affects his rights—which he could seek to vindicate after the fact—he has to waive counsel's potential conflict knowingly and on the record.

Accordingly, the government respectfully requests the Court hold a *Curcio* hearing to advise the defendant of the potential conflict and his rights in advance of trial, and to make the defendant's waiver of such conflict clear for the record.

III.   <u>The Government Should Be Permitted to Authenticate Video Recordings, Electronic Records, and Device Extractions Under Federal Rule of Evidence 902</u>

The Court should permit the government to authenticate video from the defendant's hotel room, recorded telephone calls, and device extractions pursuant to a certification under Federal Rule of Evidence 902(13) and (14). *See* Gov't Mot. 17-19. The defendant's claim that the records the government seeks to introduce are not "records of regularly conducted conduct" under Rule 902(11) misunderstands the provision under which the government seeks to properly admit the evidence. *See* Opp. at 5. Contrary to the defendant's position, the government seeks to admit the video, recorded phone calls, and device extractions under Rule 902(13) and (14), which permits the authentication of records generated by an electronic process or system via certification.

With respect to admitting recorded video and telephone calls, the Court should reject the defendant's challenge because it is based on an outdated view of the law which fails to account for Rule 902(13) and the 2017 revisions to the Federal Rules of Evidence. *See* Opp. at 6. Notably, all the cases on which the defendant relies predate the 2017 revisions and analyzed the

admissibility of electronic video evidence under Rule 901. *See* Opp. at 6 (citing *e.g. Leo v. Long Island R. Co.,* 307 F.R.D. 314, 323-26 (S.D.N.Y. 2015); *Boykin v. Express, Inc.*, No. 12-CV-7428 (NSR), 2016 WL 8710481, at *5 (S.D.N.Y. Feb. 5, 2016)).

In 2017, however, Rule 902(13) was enacted. That rule "specifically allows the authenticity foundation that satisfies Rule 901(b)(9) to be established by a certification rather than the testimony of a live witness." Fed. R. Evid. 902(13) advisory committee's note to 2017 amendment. This Rule was intended to avoid "the expense and inconvenience of producing a witness to authenticate an item of electronic evidence," something which the Rules' advisory committee found to be "often unnecessary." *Id.*

Here, the video was recorded by a system maintained by the Federal Bureau of Investigation ("FBI"), and the government provided the defendant with a certification (the "Video Certification") signed by a supervisory special agent attesting to the video's authenticity. *See* Gov't Letter (Jan. 6, 2026), ECF No. 73. The Video Certification establishes that the video was generated by the FBI's video collection system, "an electronic process or system that produces an accurate result." Therefore, it complies with Rule 902(13)'s requirements. *See* Fed. R. Evid. 902(13). Similarly, evidence of the defendant's recorded telephone calls should be admitted pursuant to a certification under Rule 902(13) because the calls also were recorded on an automated collection system that produces an accurate result.[3]

Indeed, evidence collected in this manner, including FBI interceptions of telephone calls, is regularly offered via certification and admitted in district courts throughout the United States. *See e.g.*, *United States v. Bird*, No. 23-CR-326 (AKB) (D. Idaho November 12, 2024), ECF No. 63-1 (noticing an intent to admit wire intercepts under Rule 902(13)); *United States v.*

---

[3] The government will provide a certification regarding the audio calls before trial.

*Smith*, No. 23-CR-65 (WLS)(ALS) (M.D. Ga. Aug. 2, 2024), ECF No. 401 (same); *United States v. Bowens*, No. 18-CR-835 (N.D. Ill. Feb 14. 2020), Order, ECF No. 643 (admitting wire intercepts pursuant to a Rule 902(13) certification); *United States v. Woods,* No. 18-CR-261 (EEF)(MLH) (W.D. La. Nov. 18, 2019) (Dkt. 90-1) (noticing an intent to admit intercepts under Rule 902(13)). This practice furthers the intent behind the Rule, namely streamlining the presentation of evidence by avoiding an unnecessary authentication witness when the certification authenticates the records. *See* Fed. R. Evid. 902(13) advisory committee's note to 2017 amendment. Accordingly, the Court should permit the government to authenticate video and audio recordings via certification.

For similar reasons, the government should be permitted to authenticate extractions of the defendant's cellular phones and laptop via a certification. The government has provided to the defendant multiple certifications under Rules 902(13) and 902(14) related to the forensic extraction, imaging, and analysis of the defendant's electronic devices, including several cellphones and a laptop. Additional certifications will be provided as they become available.

As the government explained in its opening brief, data extracted from cellphones is admissible at trial when accompanied by Rule 902(13) or 902(14) certifications. Gov't Mot. at 17-19. Courts in this district routinely admit such evidence using this method. *See, e.g. United States v. Taqi*, No. 22-CR-553 (ENV) (E.D.N.Y. 2025); *United States v. Karony*, No. 23-CR-433 (EK) (E.D.N.Y. 2025); *United States v. Ennab et al.*, No. 22-CR-464 (AMD) (E.D.N.Y. 2025); *United States v. Forney*, No. 24-CR-146 (KAM), 2025 WL 2208298, at *17 (E.D.N.Y. Aug. 5, 2025) (admitting data extracted from cellphones when properly certified); *United States v. Terranova*, 750 F. Supp. 3d 15, 33 (E.D.N.Y. 2024) (same). The defendant offers no argument or case law to the contrary. Therefore, the Court should also permit the government to

6

authenticate cellphone and laptop extractions pursuant to a certification under Rule 902(13) and (14).

Without any citation, the defendant also incorrectly claims that the government needs to satisfy additional requirements to authenticate data extracted from electronic devices by certification or otherwise. *See* Opp. at 8. But specifics regarding the chain of custody or who was present when data was extracted "do not bear upon the admissibility of evidence, only the weight" it is to be given by the jury. *See United States v. Gonzalez*, 144 F.4th 396, 406 (2d Cir. 2025). (quoting *United States v. Morrison*, 153 F.3d 34, 57 (2d Cir. 1998)). All the government must show to authenticate evidence from a device is that the contents of the device were generated by a system that produces an accurate result, information that is covered by the certification. *See* Fed. R. Evid. 902(13). The defendant is of course free to cross-examine witnesses about chain of custody, but it does not bar admission of evidence from the devices. *See Gonzalez*, 144 F.4th at 406-07 (citing *SCS Communications, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 344-45 (2d Cir. 2004) (2d Cir. 2004)). In any event, the government anticipates eliciting testimony about the recovery of several of the devices from the defendant's person and residence. Accordingly, the government should be permitted to authenticate device extractions by certification.

IV. <u>The Court Should Preclude the Defendant from Raising an Entrapment Defense Because He Cannot Meet the Burden of Production as to Both Elements of the Defense</u>

The defendant argues that the government's motion to preclude the defendant from raising an entrapment defense should be denied as premature because the defendant "does not intend to argue, in its opening statement, that Mr. Merchant was entrapped into participating in the plot alleged in the indictment, but cannot be foreclosed from making the argument at the end of trial if the evidence presented supports such a defense." Opp. at 18. As the Government's Motions set forth, the defendant cannot meet the burden of production as to the elements

comprising the defense and thus lacks a good faith basis to raise the defense, including at the end of trial. *See generally* Gov't Mot. at 19-21. And such an argument would open the door to the defendant's proffer statements. Accordingly, the government's motion should be granted and to the extent the defendant makes such an argument in his summation, the government should be permitted to reopen the case. *See United States v. Goldenberg*, No. 04-CR-159 (NGG) (E.D.N.Y.) (Docket No. 364) (denying Rule 33 motion and adhering to ruling made during trial to permit government to reopen its case after defendant triggered waiver provisions during closing arguments); *see also Goldenberg v. United States*, No. 09-CV-4005 (NGG), 2012 WL 1599869, at *4-5 (E.D.N.Y. May 4, 2012) (discussing trial ruling to admit proffer statements after counsel triggered waiver provision during closing arguments and denying writ of habeas corpus pursuant to 28 U.S.C. § 2255).

V. The Court Should Preclude Evidence or Argument About the Existence or Absence of Classified Information as Irrelevant

The defendant provides no basis to oppose the government's motion to preclude evidence or argument regarding the existence or absence of classified information as irrelevant. *See* Opp. at 10.

On January 14 and 22, 2026, the Court granted the government's motion for a protective order pursuant to Section 4 of the Classified Information Procedures Act ("CIPA"). *See* ECF No. 85; Dkt. Entry dated 01/22/2026. Thus, the defendant is incorrect that the government is seeking a preclusion order under CIPA Section 5(b), which only applies if the defendant possesses classified material. *See* Opp. at 14. Because the Court has already ruled that the government may properly withhold classified information, such an order is unnecessary.

Instead, the government is seeking a ruling from the Court to preclude any argument regarding the existence or absence specifically of classified information because it is

8

irrelevant. Contrary to the defendant's arguments, *see* Opp. at 16, general questions or arguments about the existence or non-existence of intelligence information about the defendant are irrelevant and inadmissible. Testimony confirming the existence of classified documents could cause the jury to speculate about the nature of any such document and could damage national security by revealing intelligence sources and methods. *See United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989). And any claims about the lack of a particular type of evidence or records would be an argument about law enforcement techniques—an area far outside the jury's concern. Therefore, any inquiry or argument about classified information at trial should be precluded.

Relatedly, but differently, in line with CIPA Section 8, if defense counsel inadvertently asks a question calling for classified information during trial, the government will object to any such inquiries that might require a witness to disclose classified information that has been ordered withheld and will request a sidebar with the Court. 18 U.S.C. app. 3 § 8(c).

VI. <u>The Court Should Preclude Inquiry Regarding the Identity of a Third-Party Country Which Assisted the Government's Investigation</u>

The defendant, citing no legal authority, opposes the government's request to preclude inquiry regarding the assistance provided by a foreign government (the "Foreign Government") in obtaining an iPhone 14 belonging to the defendant's relative (the "iPhone"). *See* Opp. at 8. He suggests that without identifying the Foreign Government, the government will be unable to authenticate the phone evidence. *See id.* at 9. The defendant is wrong.

At trial, the government will authenticate the data extracted from the iPhone using a certification under Rules 902(13) and 902(14). In addition, the government anticipates calling an FBI special agent to testify that she traveled to a foreign country, obtained the iPhone after conferring with foreign government officials, and forensically extracted data from the device.

9

The data contains conversations involving the defendant and additional evidence related to the defendant's efforts to obtain the $5,000 he paid to undercover FBI agents he believed were hitmen.

The Foreign Government's identity is not relevant to establishing the iPhone data's authenticity. Although the defendant styles his challenge as to the authenticity of the data—asserting that authenticity cannot be established without identifying the Foreign Government—his argument is really about the weight the evidence should be given. As discussed above at Part III and in the government's opening brief, *see* Gov't Mot. at 17-19, the authenticity of this data is properly established with a signed certification and FBI agent testimony. *Cf. United States v. Al Farekh*, No. 15-CR-268 (BMC), ECF No. 118 (E.D.N.Y. Aug. 10, 2017) (granting government's motion *in limine* to present evidence from USB device containing letters from defendant without identifying how or from whom the letters were seized). To the extent the defendant wishes to argue the jury should give the evidence less weight because the prosecution did not reveal the Foreign Government's identity, he is free to do so.

Further, the law enforcement privilege properly shields the Foreign Government's identity from exposure. *See In re City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) (explaining that the privilege protects law enforcement techniques and procedures and prevents interference with investigations). As established in the government's *ex parte* declaration previously filed with the Court (the "Declaration" or "Decl."), the government has a compelling interest in shielding the Foreign Government's identity from disclosure. Any public acknowledgement of this assistance risks hindering future cooperation and could prevent the government from acquiring similar evidence in the future. In challenging the privilege, the defendant is required to show that the evidence at issue "(1) is necessary, or at least important, to his case; and . . . that there is not an alternative means to secure and present this evidence to the jury." *United States v. Hossain*,

No. 19-CR-606 (SHS), 2021 WL 4272827, at *7 (S.D.N.Y. Sept. 21, 2021) (quoting *United States v. Alimehmeti*, 284 F. Supp. 3d 477, 494 (S.D.N.Y. 2018)). The defendant has not—and cannot—make this required showing.

The identity of the Foreign Government is also properly precluded under Rules 402 and 403. The defendant speculates about the importance of the Foreign Government's identity, suggesting—without evidence—that some foreign governments may manipulate forensic data. *See* Opp. at 9. However, the defendant's efforts only further prove why inquiry about the Foreign Government should be barred. The Foreign Government's identity has nothing to do with the ultimate issue in this case: whether the defendant committed the crimes charged in the Indictment. The defendant is on trial, not a foreign government's cooperation with the United States or evidence collection techniques. Inquiry about sensitive law enforcement partnerships risks "bring[ing] before the jury matters utterly irrelevant to the basic charge in this case" and would be an improper distraction. *See United States v. Wilson*, 586 F. Supp. 1011, 1016 (S.D.N.Y. 1984). Therefore, any questioning regarding the Foreign Government's identity should be precluded.

VII. The Court Should Permit the Government to Use Certain Measures to Protect the Identities of Witnesses

The defendant has no objection to allowing two UCs to testify in a light disguise and under a pseudonym, provided that the jury is not made aware of such measures. Opp. at 17. The defendant likewise has no objection to prohibiting members of the public from possessing electronic devices in the courtroom and permitting the UCs and the CS to use non-public entrances to the courthouse and courtroom. *Id.* at 18. The defendant also appears to raise no objection to precluding inquiry into the UCs' true identity, place of residence, location of family, and other investigations unrelated to the defendant or this case. Therefore, the government's motion on these items should be granted as unopposed.

However, the defendant opposes the CS testifying in a light disguise and with a pseudonym because the defendant has known the CS for years. *Id.* at 17. The defendant contends that these measures, therefore, cannot be justified by concerns regarding witness safety. *Id.* That is incorrect.

While the CS's identity is known to the defendant, the CS's identity is not public. Testifying publicly in the CS's true name, without a disguise, would compromise the CS's identity and personal safety as well as the safety of his family. As set forth in the Government's Motions, the CS has expressed concern to the government regarding safety, and as the Declaration filed in support of the Government's Motions describes, those concerns are not unfounded. And the government's and CS's concerns are not just that the defendant will share the CS's name with co-conspirators, *see* Opp. at 17; the precise safety concern to the CS is that anyone may enter the courtroom during the CS's testimony and view the CS and learn his identity. Given the involvement in this case of parties adverse to the United States, there are serious concerns associated with the CS testifying in the CS's true name and without a disguise. Indeed, the Second Circuit has repeatedly recognized the government's strong interest in protecting the identities of confidential witnesses based on concerns for their safety. *See, e.g.*, *Carson v. Fischer*, 421 F.3d 83, 91 (2d Cir. 2005) (affirming district court's decision ordering partial closure of courtroom for confidential source's testimony). And as noted in the Government's Motions, courts in this district and elsewhere have been especially willing to permit the use of an alias in cases where the disclosure of a testifying witness's real identity would endanger the safety of the witness or create national security concerns. *See* Gov't Mot. at 36 (collecting cases).

As to the defendant's concern regarding prejudice to the defendant if the CS testifies with a pseudonym and disguise, *see* Opp. at 17-18, the government will redact the CS's

12

true name from any audio recordings and replace the CS's true name with the CS's pseudonym in any written communications, making it unclear to the jury that the CS is testifying with a pseudonym. Additionally, to the extent the defendant remains concerned regarding any potential prejudice which he has not identified, the Court can provide a limiting instruction to the jury.

Finally, the defendant opposes preclusion of cross-examination regarding the UCs' training. The government has no objection to cross-examination regarding the fact that the UCs were trained, but any specifics regarding the FBI's undercover program are irrelevant to the case and should be precluded, particularly given the concerns such cross-examination would raise as to the government's national security and law enforcement missions. *See* Decl. at 19-20.

VIII. <u>The Court Should Grant the Government's Motions to Preclude Evidence and Testimony Regarding Prior Good Acts and About Possible Punishments as Unopposed</u>

The defendant "does not intend to argue that his innocent conduct on some occasions demonstrates that all of his other conduct was also innocent," and the defendant does not intend to offer evidence or argument about potential punishments. Opp. at 19. Therefore, the government's motions on these topics should be granted as unopposed.

CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant the government's motions *in limine*.

Dated:      Brooklyn, New York
            January 28, 2026

                                        JOSEPH NOCELLA, JR.
                                        United States Attorney
                                        Eastern District of New York

            By:     /s/
                    Sara K. Winik
                    Gilbert M. Rein
                    Nina C. Gupta
                    Assistant U.S. Attorneys
                    (718) 254-7000