UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

UNITED STATES OF AMERICA

     - against -
                                          24 Cr. 362 (ERK)

ASIF MERCHANT,

            Defendant.

---------------------------------------------------------X

## DEFENDANT'S POST-TRIAL MOTIONS

AVRAHAM C. MOSKOWITZ
CHRISTOPHER NEFF
One Battery Park Plaza, 31st FL
New York, New York 10004
(212) 257-6455
amoskowitz@mcgsllp.com

JOSHUA J. LAX
225 Broadway, Suite 715
New York, New York 10007
(212) 566-6213
jlax@fgdmlaw.com

*Attorneys for Defendant Asif Merchant*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 2

LEGAL ARGUMENT .......................................................................................................... 4

I.    This Court Should Enter Judgments of Acquittal on Both Counts Pursuant to Rule 29 .... 4

    A.    Legal Standards on a Rule 29 Motion ............................................................... 4

    B.    The Government Failed to Establish an Essential Element of Count One .................... 5

        1.    A predicate violation of state or federal law is an essential element of Count One. .. 5

        2.    The government failed to produce evidence that the attempted "killing" of which Mr. Merchant is accused, if successful, would have violated a specific state or federal law presented to the grand jury. ...................................................................... 7

    C.    The Evidence on Count One was Insufficient to Establish an Attempt to Commit a Killing ................................................................................................ 9

    D.    No Reasonable Jury Could Convict Mr. Merchant on Count Two ............................... 11

II.    In the alternative, Count One should be dismissed pursuant to Rule 12 because of governmental misconduct in the Grand Jury ............................................................... 14

    A.    Mr. Merchant's Rule 12 Motion was Timely ...................................................... 14

    B.    The Jury Verdict Did Not Moot the Rule 12 Motion ............................................. 16

    C.    Rule 12 Mandates Dismissal of Count One ....................................................... 18

III.    Mr. Merchant Should Be Granted a New Trial Under Rule 33 .................................... 21

A. Legal Standards on a Rule 33 Motion..........................................................................21

B. Evidentiary and Instructional Errors Warrant a New Trial in This Case ......................21

    1. The Court erroneously admitted, and the government heavily relied on, impermissible hearsay. ...............................................................................................21

    2. The Court's instructions misled the jury as to the correct legal standard and failed adequately to inform the jury on the law. .........................................................23

CONCLUSION.................................................................................................................25

**TABLE OF AUTHORITIES**

**Cases**

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) ....................................................... 17, 19

*Costello v. United States*, 350 U.S. 359 (1956).......................................................... 18

*Montague v. United States*, 144 S. Ct. 2654 (2024)........................................... 7

*People v. Calbud, Inc.*, 49 N.Y.2d 389 (N.Y. 1980)............................................ 20

*Russell v. U.S.*, 369 U.S. 749 (1962)............................................................... 9

*Stirone v. United States*, 361 U.S. 212 (1960) ........................................... 18, 19

*Strassheim v. Daily*, 221 U.S. 280 (1911) ........................................................ 24

*United States v. Acquest Dev., LLC*, 932 F. Supp. 2d 453 (W.D.N.Y. 2013) .............................. 19

*United States v. Anderson*, 747 F.3d 51 (2d Cir. 2014)................................................. 10

*United States v. Archer*, 977 F.3d 181 (2d Cir. 2020) .................................................. 21

*United States v. Bari*, 750 F.2d 1169 (2d Cir. 1984) ................................................... 17

*United States v. Bell*, 584 F.3d 478 (2d Cir. 2009)....................................................... 21

*United States v. Brito*, 907 F.2d 392 (2d Cir.1990)....................................................... 17

*United States v. Carrillo*, 229 F.3d 177 (2d Cir. 2000) ............................................. 5, 6

*United States v. Clark*, 740 F.3d 808 (2d Cir. 2014) ...................................................... 5

*United States v. Collins*, 684 F.3d 873 (9th Cir. 2012) ................................................................ 19

*United States v. D'Amato,* 39 F.3d 1249 (2d Cir. 1994) ............................................................. 4

*United States v. Davis*, 103 F. Supp. 3d 396 (S.D.N.Y. 2015) ...................................................... 12

*United States v. Delpit*, 94 F.3d 1134 (8th Cir. 1996) ............................................................... 8

*United States v. Delvecchio*, 816 F.2d 859 (2d Cir. 1987) ........................................................10, 11

*United States v. Dupree*, 870 F.3d 62 (2d Cir. 2017) ................................................................ 7

*United States v. Farhane,* 634 F.3d 127 (2d Cir. 2011)............................................................. 9

*United States v. Ferguson*, 246 F.3d 129 (2d Cir. 2001) ........................................................... 21

*United States v. Frampton*, 382 F.3d 213 (2d Cir. 2004) ........................................................... 12

*United States v. Gonzalez*, 686 F.3d 122 (2d Cir. 2012) ........................................................... 19

*United States v. Hamilton*, 334 F.3d 170 (2d Cir. 2003) ........................................................... 4

*United States v. Hardwick*, 523 F.3d 94, 99–100 (2d Cir. 2008).................................................. 12

*United States v. Hassan*, 578 F.3d 108 (2d Cir. 2008) ........................................................... 9, 23

*United States v. Hawkins*, 547 F.3d 66 (2d Cir. 2008) ............................................................. 5

*United States v. Hess*, 124 U.S. 483 (1888) ..................................................................... 6

*United States v. Hogan*, 712 F.2d 757 (2d Cir. 1983) ........................................................... 17, 18

*United States v. Leslie*, 102 F.3d 1093 (2d Cir. 1997)............................................................. 4

*United States v. Lorenzo*, 534 F.3d 153 (2d Cir. 2008) ............................................................ 5

*United States v. Martinez*, 775 F.2d 31 (2d Cir. 1985) ..............................................................10, 11

*United States v. Mechanik*, 475 U.S. 66 (1986) .................................................................. 16, 17

*United States v. Montague*, 84 F.4th 533 (2d Cir. 2023) ............................................................ 6, 7

*United States v. Orjuela*, 809 F. Supp. 193 (E.D.N.Y. 1992) ........................................................ 19

*United States v. Ortiz*, No. S15 08 Cr. 548 (DC), 2009 WL 3415370 (S.D.N.Y. Oct. 23, 2009) .. 4

*United States v. Pauling*, 256 F. Supp. 3d 329 (S.D.N.Y. 2017) ................................................. 4, 5

*United States v. Twersky*, No. S2 92 CR. 1082 (SWK),1994 WL 319367 (S.D.N.Y. June 29, 1994) ............................................................................................................. 20

*United States v. Valle*, 807 F.3d 508 (2d Cir. 2015) ................................................................ 4, 5

*United States v. Vetere*, 663 F. Supp. 381 (S.D.N.Y. 1987) ........................................................ 17

*United States v. Washington,* 318 F.3d 845 (8th Cir. 2003) ........................................................ 12

*United States v. Williams*, 504 U.S. 36 (1992) ................................................................... 17

**Statutes**

18 USC § 1958 ............................................................................................1, 8, 11, 12, 13

18 USC § 2332b ........................................................................................ 1, 5, 6, 7, 8, 15, 18

19 U.S.C. § 1111 ............................................................................................... 14, 23, 24

N.Y. Crim. P. § 20.20 ........................................................................................... 25

**Rules**

Fed R. Crim. P. 7 ................................................................................................ 9

Fed R. Crim. P. 7(c)(1) ...................................................................................... 6

Fed. R. Crim. P. 12 ....................................................................................... 1, 15

Fed. R. Crim. P. 12(b)(3)(A) ............................................................................ 14

Fed. R. Crim. P. 12(c)(3) .................................................................................. 14

Fed. R. Crim. P. 29 .................................................................................. 1, 9, 14

Fed. R. Crim. P. 33 ............................................................... 1, 2, 21, 23, 25

**Constitutional Provisions**

U.S. Const. amend. V .......................................................................... 9, 16, 24

## PRELIMINARY STATEMENT

Defendant Asif Merchant respectfully submits this memorandum of law in support of his motion for a judgment of acquittal, pursuant to Fed. R. Crim. P. 29, or, in the alternative, for dismissal of Count One of the Indictment pursuant to Fed. R. Crim. P. 12, and for a new trial pursuant to Fed. R. Crim. P. 33.

Mr. Merchant moves for a judgment of acquittal on both counts against him pursuant to Rule 29 on the grounds that the evidence is insufficient to sustain a conviction. As to Count One, alleging a violation of the transnational terrorism statute, 18 USC § 2332b, the evidence is insufficient to establish an underlying violation of the law of a state or of the United States, as required by the statute, or to meet the federal definition of attempt. As to Count Two, alleging a violation of the federal murder-for-hire statute, 18 USC § 1958, the evidence is insufficient to establish an agreement to commit murder in consideration of anything of value.

In a filing made just after midnight on the morning of March 5, 2026, the government tacitly admitted that it had not presented a predicate violation of state or federal law to the grand jury in connection with Count One. Accordingly, because a predicate offense is an essential element of the transnational terrorism statute, on March 5, 2026, the defendant orally moved pursuant to Rule 12 for an order dismissing Count One. The Court reserved decision on that motion, which Mr. Mr. Merchant now respectfully renews in the alternative to his Rule 29 motion for a directed verdict of acquittal on Count One.

Finally, Mr. Merchant is entitled to a new trial pursuant to Rule 33 because errors rendered his trial fundamentally unfair. Among other errors. the Court's instructions of law to the jury failed accurately to set forth the predicate offense element of Count One. In addition, the Court erroneously admitted hearsay in the form of a video news report concerning Iran's determination to avenge the killing of Qassem Soleimani. These errors, and the government's repeated reliance

1

during summation on the erroneously admitted hearsay as evidence of Mr. Merchant's motive and state of mind, violated Mr. Merchant's right to a fair trial and warrant granting him a new trial pursuant to Rule 33.

**STATEMENT OF FACTS**

Briefly summarized in the light most favorable to the government, the evidence at trial established the following facts. Mr. Merchant, a Pakistani national with a home and family in Iran, was recruited by an Iranian he believed to be associated with Sepah,[1] an Iranian government agency. After being trained by that individual, known to Mr. Merchant as Meherdad, he traveled to the United States, at the behest of Meherdad, to find "mafia" people willing to pursue four tasks on behalf of Iran: (1) theft of documents, USB drives, or other materials to be identified later, from persons or places to be named later; (2) organizing protests; (3) money laundering; and (4) potentially, the murder for hire of then-candidate Donald Trump, then-candidate Nikki Haley, then-President Joe Biden, or another "political" person.

After arriving in New York, Mr. Merchant met with Nadeem Ali, an acquaintance whom he had met through a mutual friend years earlier and whose former military service potentially made him useful. During a meeting in a Floral Park motel, captured on video, Mr. Merchant described the physical setup of a political rally and asked the acquaintance how he would carry out an assassination of the speaker at that rally. Separately, he conducted Internet searches for Trump rallies and political events.

Ali, acting as a confidential human source for law enforcement, introduced Mr. Merchant to two "mafia" members, who were actually undercover agents of the FBI. In meetings with the

---

[1] The government and several witnesses referred to Sepah as the IRGC and the two names may refer to the same agency, which was known to Mr. Merchant only as Sepah.

2

undercovers, Mr. Merchant explained the four tasks he had been assigned and sought their assistance. However, he did not identify any specific targets for theft, killing, or protests. No agreement was reached with regard to the price that would ultimately be paid for any of the four services he sought from the FBI agents and no timeline was set, other than that Mr. Merchant or one of his "friends" back home would be in contact with the agents, via a cell phone provided by the agents, sometime after Mr. Merchant returned to Pakistan the next month. After one of the FBI agents, posing as a junior member of the Mafia, urged Mr. Merchant to provide the agent playing the role of his "boss" with a token of his appreciation to ensure that the relationship would remain in good standing in the interim before contact was re-established, and after the agent told him that a payment of $5,000 would be an appropriate gift, Mr. Merchant set about obtaining $5,000 to give to the "boss." After he was turned down by several other family members, he ultimately succeeded in obtaining money through his uncle, who in turn reached out to Mr. Merchant's cousin in Tanzania for assistance. The cousin in question, who was the ultimate source of the money, also had ties to Sepah. That cousin arranged for $5,000 to be sent to Mr. Merchant via the hawala system, a money transfer system commonly used in Islamic countries. Mr. Merchant subsequently delivered the money to the undercover agent playing the "boss." The parties understood that Mr. Merchant (or his friends back home, if Mr. Merchant did not personally re-establish contact after returning to Pakistan) would be credited with $5,000 toward the price ultimately agreed upon for one of the three criminal and one non-criminal services he sought, when an agreement as to the details of the services and their price was ultimately reached.

**LEGAL ARGUMENT**

**I.      THIS COURT SHOULD ENTER JUDGMENTS OF ACQUITTAL ON BOTH COUNTS PURSUANT TO RULE 29**

A. Legal Standards on a Rule 29 Motion

To succeed on a Rule 29 motion, the defendant must demonstrate that "no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. Leslie*, 102 F.3d 1093, 1100 (2d Cir. 1997) (citations omitted).  The jury's guilty verdict will be overturned only "if, after viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences in its favor, the court concludes that any rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Ortiz*, No. S15 08 Cr. 548 (DC), 2009 WL 3415370, at *1 (S.D.N.Y. Oct. 23, 2009) (citation and internal quotation marks omitted); *United States v. Hamilton*, 334 F.3d 170 (2d Cir. 2003).  Because a conviction cannot be based on "speculation and surmise alone," the Government "must do more than introduce evidence at least as consistent with innocence as with guilt."  *United States v. D'Amato,* 39 F.3d 1249, 1256 (2d Cir. 1994) (citations and internal quotation marks omitted).

While a defendant's burden with respect to a Rule 29 motion is considerable, "[i]n reviewing the verdict with such a high level of deference to the jury's determinations, the Court is also mindful of its responsibility to protect the defendant's Fifth Amendment rights."  *United States v. Pauling*, 256 F. Supp. 3d 329, 334 (S.D.N.Y. 2017), *aff'd and remanded*, 924 F.3d 649 (2d Cir. 2019), *citing United States v. Valle*, 807 F.3d 508, 513 (2d Cir. 2015).  If courts "'are to be faithful to the constitutional requirement that no person may be convicted unless the Government has proven guilt beyond a reasonable doubt, we must take seriously our obligation to assess the record to determine . . . whether a jury could *reasonably* find guilt[] beyond a reasonable

4

doubt.'" *Id*. (*quoting Valle*, 807 F.3d at 515 (emphasis in original), *in turn quoting United States v. Clark*, 740 F.3d 808, 811 (2d Cir. 2014)). "In particular, 'specious inferences are not indulged, because it would not satisfy the Constitution to have a jury determine that the defendant is probably guilty. If the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt.'" *Id*. (*quoting United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008)). *See also United States v. Hawkins*, 547 F.3d 66, 71 (2d Cir. 2008).

B. <u>The Government Failed to Establish an Essential Element of Count One</u>

  1. *A predicate violation of state or federal law is an essential element of Count One.*

The transnational terrorism offense charged in Count One, 18 U.S.C. § 2332b, requires proof of every essential element of an underlying predicate violation of state or federal law. Specifically, the phrase "in violation of the law of any State or of the United States," as used in that statute, creates a substantive element of the offense requiring proof of a predicate violation of some other statute. As the Second Circuit explained in *United States v. Carrillo*, discussing statutes using language indistinguishable from the phrase "in violation of the laws of any State or the United States" as used in Section 2332b,

> [B]oth the text of RICO and VICAR demand that predicate acts constitute state law crimes. RICO includes in its definition of prohibited racketeering activity *only* acts prohibited by enumerated federal statutes or "any act or threat involving murder, kidnapping, [etc.] ... *which is chargeable under State law* and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1) (emphasis added). Likewise, VICAR includes in its prohibition *only* enumerated acts that are "*in violation of the laws* of any State or the United States" …18 U.S.C. § 1959(a) (emphasis added). Those statutes therefore seem to require of a predicate act based on state law that the act include the essential elements of the state crime.

229 F.3d 177, 185–86 (2d Cir. 2000); *see also id.* at n.2 (noting that Travel Act is analogous to other statutes employing similar language concerning predicate offenses, and that Judge Sand's instruction that the elements of the predicate state law offense must be charged as elements of the federal crime of violating the Travel Act are frequently applied by analogy to other statutes containing similar language).

The transnational terrorism statute, 18 USC § 2332b, uses language identical to the VICAR statute, *i.e.*, the phrase "in violation of the laws of any State or of the United States." Thus, like the Travel Act, RICO, and VICAR, the transnational terrorism statute requires proof of every essential element of an underlying predicate violation of state or federal law. Failure to instruct the jury on those elements, at a minimum, "risks reversal on appeal," and the "safer course is for trial judges to instruct the jury on the elements of the predicate offenses." *Id.* at 185 (casting doubt on contrary authority but declining expressly to mandate instruction on every element of predicate offenses).

"Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *United States v. Hess*, 124 U.S. 483, 487 (1888). Accordingly, Fed R. Crim. P. 7(c)(1) requires that an indictment contain "the essential facts constituting the offense charged" and that it "give the official or customary citation of the … provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1). Because a predicate offense is an element of the offense to which it is predicate, predicate offenses must be included in indictments, at least by title or official citation. *See United States v. Montague*, 84 F.4th 533, 534 (2d Cir. 2023) (under RICO, "each predicate offense and its elements must be set forth in the indictment. This is black-letter

6

law.");[2] *cf. United States v. Dupree*, 870 F.3d 62, 70 (2d Cir. 2017) (because "a defendant has a substantial right to be tried only on charges presented in an indictment returned by a grand jury," … "an indictment charging an aggravated drug offense under 21 U.S.C. § 841(b)(1)(A) must *always* include a factual allegation of the drug quantity as an essential element")(cleaned up).

It is thus clear that Section 2332b requires proof of an underlying state or federal predicate offense; that the predicate offense in question must be identified in the indictment (though perhaps not in as much detail as would be necessary were it charged separately), and that the "better course" is to charge the jury on every essential element of that underlying predicate offense, regardless of whether the predicate offense's essential elements were individually listed in the indictment or whether the indictment merely identified the predicate offense itself, without listing its elements.

2. *The government failed to produce evidence that the attempted "killing" of which Mr. Merchant is accused, if successful, would have violated a specific state or federal law presented to the grand jury.*

In accordance with the black-letter law that predicate offenses—like all other essential elements of an offense—must be listed in the Indictment, the Department of Justice's Criminal Resource Manual advises prosecutors that the "drafter [of an indictment] must afford the defendant not only a document that contains all of the elements of the offense, whether or not such elements appear in the statute, but one that is sufficiently descriptive to permit the defendant to prepare a defense…" DOJ CRM 214 – Drafting Indictments and Informations.[3] Consistent with that advice, and because a predicate violation of state or federal law is an essential element of an

---

[2] The defendant in *Montague* was charged with engaging in a "Continuing Criminal Enterprise" under RICO, but the indictment in that case did not allege with specificity predicate violations reflecting a continuing "series of violations" as required by that statute. *United States v. Montague*, 84 F.4th 533. The government confessed error in the Supreme Court based on that defect. *Montague v. United States*, 144 S. Ct. 2654 (2024).

[3] An archived version of the Criminal Resource Manual is available at https://www.justice.gov/archives/jm/criminal-resource-manual-214-drafting-indictments-and-informations

18 USC § 2332b offense, the government ordinarily identifies the specific underlying state or federal statute violated when drafting indictments, presents evidence to meet the elements of the underlying statute at trial, and asks that the jury be charged on the elements of the specific statutory predicate that was presented in the grand jury.[4] Instead of following that long-established procedure in this case, the government made the apparently unprecedented decision not to identify a statutory predicate violation in the Indictment or in its requests to charge.[5]

The government's failure to specify a predicate offense necessarily and irrefutably establishes that the government has failed adequately to prove that specific predicate offense. To hold otherwise would violate due process and the presumption of innocence. The government is required, in every prosecution, to prove each of the essential elements of its charges against the accused. In this case, it failed to do so. Accordingly, because it could not request a jury instruction on any predicate offense presented to and found by the grand jury, the government asked the Court to simply instruct the jury that "murder violates the laws of every state."[6] But murder statutes vary widely, and every state has more than one. Proof that satisfies one murder statute does not necessarily satisfy another murder statute—and the proof at trial did not satisfy the elements of

---

[4] Several previous Section 2332b indictment, and the jury charges associated with them (whether in the form requested by the government or as delivered by the court) appear as Exhibits B through D to ECF Doc. No. 144 herein as examples of the manner in which the government typically approaches charging predicate offences in Section 2332b cases and how the government typically thereafter approaches jury instructions on those indictments.

[5] Upon information and belief, as set forth at Section II of this Memorandum, the government also failed to present evidence of a predicate offense in the grand jury.

[6] The government also sought an instruction that the murder for hire charge in Count Two would satisfy the required predicate offense element of Count One. As the Court correctly found, Count Two cannot be a predicate for Count One because the federal murder for hire statute criminalizes interstate conduct, not killing. (Tr. 1335-39); *see, e.g.*, *United States v. Delpit*, 94 F.3d 1134, 1150 (8th Cir.1996) ("The gist of the offense is travel in interstate commerce or the use of facilities in interstate commerce or the mails with the requisite intent and the offense is complete whether or not the murder is carried out or even attempted. … Section 1958(a) is not a murder statute.")

any murder statute presented to the grand jury. A judgment of acquittal must therefore be entered on Count One.

Importantly, the government may not now argue that it proved at trial the elements of any predicate offense not presented to and found by the grand jury. *United States v. Hassan*, 578 F.3d 108, 133-34 (2d Cir. 2008) (finding impermissible constructive amendment when jury charge altered "essential element" from that found by grand jury). The Fifth Amendment guarantees a defendant the right to be tried only for those offenses presented in an indictment returned by a grand jury. *See* Fed. R. Crim. P. 7 (Advisory Committee Note to 1944 enactment). Indictments may not be substantively amended without reconvening the grand jury. *Russell v. U.S.*, 369 U.S. 749, 770-71 (1962) ("[A]n indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form."). Thus, because the government has failed to establish that it presented a predicate offense in the grand jury, and that the grand jury found probable cause to support that predicate offense notwithstanding that no predicate offense is identified in the Indictment, the only possible remedies are to enter a judgment of acquittal on Count One pursuant to Rule 29 or to dismiss that count of the Indictment.

C. The Evidence on Count One was Insufficient to Establish an Attempt to Commit a Killing

Count One must also be dismissed because no reasonable jury could find that Mr. Merchant's took a substantial step toward killing another person in the course of transnational conduct, as required by Count One.

To prove attempt under federal law, the government must establish beyond a reasonable doubt that the defendant "(a) had the intent to commit the object crime and (b) engaged in conduct amounting to a substantial step towards its commission." *United States v. Farhane,* 634 F.3d 127, 145 (2d Cir. 2011). "[F]or a defendant to have taken a 'substantial step,' he must have engaged in

more than 'mere preparation,' but may have stopped short of 'the last act necessary' for the actual commission of the substantive crime." *United States v. Anderson*, 747 F.3d 51, 73–74 (2d Cir. 2014). As this Court correctly charged the jury, "mere preparation such as planning the offense or of devising, obtaining or arranging a means for its commission is not an attempt."

Here, at most, the evidence shows that Mr. Merchant arranged the means for the eventual commission of a substantive murder offense—and even that evidence is equivocal, certainly not reaching the standard of proof beyond a reasonable doubt. Specifically, Mr. Merchant never identified a specific target to be killed and he never reached agreement concerning the terms as to when a killing would be carried out, by what means, at what location, or at what price. Indeed, he did not even commit unequivocally to the notion that the undercover officers would be asked to commit a murder at all, as opposed to being retained to steal, organize protests, or launder money. At most, the evidence established that Mr. Merchant obtained or arranged a means for the commission of an unspecified offense at some later date, *i.e.*, he retained people who might be willing to commit the various crimes discussed if and when terms could be agreed upon. That is not a "substantial step" toward a killing, and no reasonable jury could conclude otherwise.

A brief inquiry into the caselaw of attempt is instructive. In *United States v. Delvecchio*, 816 F.2d 859 (2d Cir. 1987), a case frequently cited as illustrative of actions that are *not* sufficient to demonstrate attempt, the substantive crime at issue was possession of a large quantity of heroin. The Second Circuit held that proof that the defendants had met with suppliers, agreed on terms, and provided their beeper numbers for use in a transaction to be consummated at a later date established, at most, a "verbal agreement," which, the Circuit explained, "without more, is insufficient as a matter of law to support an attempt." By contrast, the Second Circuit found that the evidence was sufficient to establish an attempted murder for hire in *United States v. Martinez*,

775 F.2d 31 (2d Cir. 1985).  In that case, the defendant solicited a killer, made an agreement as to who would carry out the killing, told the killer exactly who would be killed, agreed on exactly how much the assassin would be paid, agreed on exactly how the killing would be carried out, and agreed exactly how payment would be made.  The *Martinez* majority found that evidence sufficient to establish an attempt—but even given that degree of evidence, there was a spirited dissent in that case.

The evidence against Mr. Merchant is akin to the evidence found insufficient in *Delveccio* and is much weaker than the evidence found sufficient in *Martinez*.  Indeed, the evidence against Mr. Merchant in this case is weaker than the evidence found sufficient in *Delveccio*.  In *Delveccio,* the defendant sought out a supplier of narcotics, attempted to contact the supplier by sending flowers, met with the supplier twice, agreed upon a price for five kilos of heroin, the terms of payment and the date and time of the proposed transaction, and the Court found that evidence insufficient to establish an attempt. The evidence, at most, shows mere preparation—an agreement to further discuss the terms on which a killing of an unspecified individual might be carried out sometime in the future. Unlike in *Delvecchio*, there was no agreement on who the target would be, when the killing would take place, or what price would be paid.  That is not sufficient under the federal law of attempt.  Viewing the evidence in the light most favorable to the government, no reasonable jury could find that Mr. Merchant attempted to kill a person in violation of the law of a state or of the United States.

D.  <u>No Reasonable Jury Could Convict Mr. Merchant on Count Two</u>

The evidence was insufficient for any reasonable jury to convict Mr. Merchant of murder for hire under 18 USC § 1958 as charged in Count Two.  As this Court charged the jury, Count Two has three essential elements: (1) interstate or foreign conduct; (2) done with the intent that a murder be committed; and (3) that the defendant intended that the murder be committed as

consideration for the receipt of anything of value. (ECF 150-4 at 39.) Here, even assuming *arguendo* that the evidence was sufficient to establish the first two elements, the evidence concerning consideration was too nebulous, and the purported agreement to pay consideration too inchoate, for any reasonable jury to return a conviction.

Section 1958 requires the government to prove a murder would be committed "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value." 18 U.S.C.A. § 1958(a). An actual, overt agreement to commit a murder in exchange for consideration is required. As the Second Circuit has explained, the consideration requirement is akin to that required in the context of contract law. *See*, *e.g.*, *United States v. Hardwick*, 523 F.3d 94, 99–100 (2d Cir. 2008) ("The consideration requirement of Section 1958 is interpreted in 'the traditional sense of bargained for exchange,' so that there must be a 'quid-pro-quo (or at least the promise of such) between the parties to the transaction,'"); *United States v. Davis*, 103 F. Supp. 3d 396, 404 (S.D.N.Y. 2015) ("Consideration here must involve an intended quid-pro-quo of anything of pecuniary value."). "'[C]onsideration retains its contract law meaning of a bargained-for exchange of something of value.'" *Hardwick*, 523 F.3d at 100 (quoting *United States v. Washington,* 318 F.3d 845, 854 (8th Cir. 2003)).

In keeping with traditional contract-law concepts, the "consideration" for a murder for hire must be of concrete pecuniary value, not speculative or theoretical. For example, in *United States v. Frampton*, 382 F.3d 213 (2d Cir. 2004), the Second Circuit affirmed a judgment of acquittal for a murder-for-hire charge where the alleged consideration was "an unspecified future 'favor.'" *Frampton*, 382 F.3d at 217. The Court explained that "the mere fact that the consideration offered by one (the solicitor) in exchange for another's (the murderer's) agreement to commit a murder *could* inure to the economic benefit of the latter is insufficient." *Id*. at 219. The Court held "that

consideration in the form of a 'favor' is insufficient to support a conviction under § 1958, at least in the absence of evidence suggesting that either party had an understanding as to the form that it would actually take." *Id*.

Here, the evidence was not sufficient to demonstrate an agreement to commit a killing in exchange for specified pecuniary consideration; instead, at most, the evidence showed an agreement to negotiate and agree on specific terms sometime in the future. Mr. Merchant and the undercover officers did not agree on a specific service to be carried out, instead leaving open the possibility that Mr. Merchant would later contract the FBI agents to provide services in the form of organizing protests, laundering money, stealing, or committing a murder. The parties did not agree on a specific victim, timeline, location, method, or price in the event that a murder would ultimately be carried out. Absent these essential contractual terms, there cannot be said to have been an agreement to commit murder in exchange for pecuniary consideration.

That Mr. Merchant gave one of the undercover FBI agents $5,000 does not cure the amorphous, inchoate nature of the purported agreement. The evidence at trial was, at best, equivocal as to whether the $5,000 was a payment for services to be rendered or whether it was merely a gift, gratuity, or token of respect. Even viewing the evidence in the light most helpful to the government and assuming that it was a deposit paid toward services to be rendered later, it was not paid in consideration of any specific service. Instead, on the evidence, the "payment" would have been credited toward any of the four services Mr. Merchant ultimately desired the FBI agents to carry out—possibly murder, but it was equally possible that the services ultimately sought would consist of money laundering, theft, or the organizing of a protest. Thus, no overt agreement or understanding was ever reached, formal or informal, that a murder would be committed in

13

exchange for something of pecuniary value. No reasonable jury could find otherwise, and a judgment of acquittal should therefore be entered on Count Two.

II. **IN THE ALTERNATIVE, COUNT ONE SHOULD BE DISMISSED PURSUANT TO RULE 12 BECAUSE OF GOVERNMENTAL MISCONDUCT IN THE GRAND JURY**

A. <u>Mr. Merchant's Rule 12 Motion was Timely</u>

Motions "alleging a defect in instituting the prosecution, including … an error in the grand-jury proceeding" "must be raised by pretrial motion if the basis for the motion is then reasonably available." Fed. R. Crim. P. 12(b)(3)(A). "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3). Here, Mr. Merchant's Rule 12 motion concerning a defect in the grand jury proceedings was not "reasonably available" before trial because the defect in the grand jury proceedings was not then apparent. The defense made its motion as soon as it became aware of the likely defect in the grand jury proceedings. Accordingly, the motion was timely made. In the alternative, this Court should find good cause for the delay and should resolve the motion on its merits.

On March 4, 2026, pursuant to Rule 29, the defense argued for a judgment of acquittal on Count One on the basis that the government failed to present evidence to meet the elements of whatever predicate violation of state or federal law it had presented to the grand jury. In response, just after midnight on March 5, 2026, the government filed a letter in which it implied, implausibly, that it had presented in the grand jury evidence to meet "the elements of murder in every state." (ECF 143 at 3.) In its letter and at the charging conference that day, the government asked that the Court "instruct the jury that murder as proscribed by Section 1111, violates the law in every state within the United States, including the District of Columbia," suggesting that the Court would otherwise be required to instruct the jury on the elements of every state's murder statutes. (ECF

143 at 3; Tr. 1285-86, 1290-91, 1297.) Notably, even as it asked the Court to instruct the jury on only some of the elements of a statute the government did not claim to have presented in the grand jury, the government conceded that Section 2332b requires a predicate violation of state or federal law. (Tr. 1290.)

Because it is not plausible that the government instructed the grand jury on the elements of *every* murder statute in *every* state, the defense understood the government's March 5 letter as a tacit admission that the government had failed to present the grand jury with evidence concerning the elements of *any* specific state murder statute. Instead, it appears that the government told the grand jury that the essential element of a predicate violation of state or federal law would be met, as a matter of law, if the grand jury found that Mr. Merchant intentionally attempted to kill a person. Specifically, the government likely instructed the grand jury, in sum and substance, that "murder violates the law of every state"—just as the government asked this Court to instruct the petit jury—and that every intentional killing is murder, but that it did not instruct the grand jury on the essential elements of any specific state statute. Upon information and belief, the government further instructed the grand jury that murder for hire, as charged in Count Two, would also constitute an unlawful killing in satisfaction of the predicate offense element of Count One—but as this Court correctly found at the charging conference, murder for hire does not require a "killing" and thus cannot be a predicate offense for Count One, so any such instruction would misstate the law.

Upon discovering this apparent defect in the grand jury proceedings, the defense moved orally for dismissal of Count One pursuant to Rule 12 on March 5, 2026, during the first court session after the midnight filing that first revealed the error in the grand jury proceedings. (Tr. 1228.) Because the basis for the defendant's motion was not reasonably available before the

government implicitly admitted its error in the grand jury during trial, and because the defense raised the motion as soon as possible thereafter, the motion was timely (or, in the alternative, good cause for an untimely motion exists) under Rule 12.  The Court reserved decision.  (Tr. 1229.)

  B. <u>The Jury Verdict Did Not Moot the Rule 12 Motion</u>

Most Rule 12 motions, if not decided before trial, are mooted by a subsequent jury verdict. *United States v. Mechanik*, 475 U.S. 66 (1986).  In *Mechanik*, the Supreme Court explained that a "petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted." *Id.* at 67.  In other words, a "subsequent guilty verdict not only means that there was probable cause to believe that the defendants were guilty as charged, but that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." *Id.* at 70.  Notably, *Mechanik* was concerned with procedural defects in the grand jury proceedings—specifically, the presence of unauthorized persons during testimony in support of a superseding indictment.  The indictment was not otherwise defective, and the tainted charges in the superseding indictment essentially duplicated charges originally brought in an indictment that was "concededly free of any error." *Id.* at 67.

The *Mechanik* rule has no applicability to the circumstances presented in this case, because the petit jury (like the grand jury) was not instructed on the elements of a predicate violation of state or federal law.  As a result, the indictment in this case is not free from error, as was the original indictment in *Mechanik*; instead, it fails to identify a predicate offense as required by the Fifth Amendment and governing law.  Nor could the petit jury's verdict have cured any defect in the proof put before the grand jury.  The petit jury—like the grand jury before it—was inaccurately instructed that murder, defined as an intentional killing, violates the law of every state and of the

16

United States as a matter of law. The petit jury accordingly could not have found the required predicate offense element of Count One beyond a reasonable doubt. Put simply, because the petit jury proceedings suffered from exactly the same defect as the grand jury proceedings, the petit jury proceedings could not cure the grand jury defect. Indeed, in announcing the *Mechanik* majority's holding, the Supreme Court left open the possibility that a court might exercise its supervisory power and dismiss an indictment—even post-conviction—when prosecutorial acts of misconduct misled or misinformed the grand jury. *Id*. at 72; *see United States v. Williams*, 504 U.S. 36, 46 (1992) (reiterating that "the supervisory power can be used to dismiss an indictment because of misconduct before the grand jury") (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988)); *United States v. Brito*, 907 F.2d 392, 394–95 (2d Cir.1990) (reluctantly declining to exercise supervisory authority to dismiss indictment post-conviction but explaining that power to do so exists).

Because of the paramount importance of grand jury independence, the "law of this Circuit is that dismissal of an indictment is justified … pursuant to [a court's] supervisory power, to prevent prosecutorial impairment of the grand jury's independent role." *United States v. Hogan*, 712 F.2d 757, 761 (2d Cir. 1983) (dismissing indictment after verdict because "the impartiality and independent nature of the grand jury process was seriously impaired by the AUSA's argument" and use of hearsay evidence). This is so even if a petit jury has already returned a conviction on the charges in the indictment. *Id.* at 757; *United States v. Vetere*, 663 F. Supp. 381, 386 (S.D.N.Y. 1987); *cf. United States v. Bari*, 750 F.2d 1169, 1176 (2d Cir. 1984) ("When, as here, a petit jury has found a defendant guilty beyond a reasonable doubt after hearing all the evidence, including that which was not before the grand jury and the absence of which is claimed to taint the

indictment, dismissal of the indictment can be justified only as a method of deterring prosecutorial misconduct.")

This Court accordingly retains the power to dismiss Count One based on the prosecution's erroneous instructions in the grand jury, notwithstanding the subsequent petit jury verdict.

C.  Rule 12 Mandates Dismissal of Count One

In this case, Count One must be dismissed because the government's erroneous legal instructions deprived the grand jury of its independent authority to determine whether there was probable cause to believe that the attempted killing alleged in Count One would, if consummated, have been "in violation of the law of any State or of the United States."  18 USC § 2332b.

As the Second Circuit and the Supreme Court have explained, grand jury independence is of paramount importance to the American justice system.  "Charged to indict no one on account of prejudice or to refuse to indict anyone as a special favor, this bulwark against Star Chamber proceedings in England was believed so essential to basic liberties that it was incorporated in the Fifth Amendment to the United States Constitution." *United States v. Hogan*, 712 F.2d 757, 759 (2d Cir. 1983) (citing *Costello v. United States*, 350 U.S. 359, 362 (1956)).  "Interposing a grand jury between the individual and the government serves the intended purpose of limiting indictments for higher crimes to those offenses charged by a group of one's fellow citizens acting independently of the prosecution and the court." *Id.* (citing *Stirone v. United States*, 361 U.S. 212, 218 (1960)).  In its independent position in the justice system, the grand jury serves as both an accuser sworn to investigate wrongdoing and as "a shield, standing between the accuser and the accused, protecting the individual citizen against oppressive and unfounded government prosecution." *Id.* (citations omitted).  For that reason,, due process and the rules of ethics impose critical limitations on prosecutors' conduct, forbidding misleading or fundamentally unfair tactics in the grand jury.  *Id.*

"It is not the responsibility of an individual representative of the government to determine whether evidence is in fact 'sufficient' to indict; that responsibility lies with the grand jury alone." *United States v. Orjuela*, 809 F. Supp. 193, 197 (E.D.N.Y. 1992) (citing *Stirone v. United States*, 361 U.S. 212, 218–19 (1960) ("The very purpose of the requirement that a man be indicted by a grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge.")). "'The right to have the grand jury make the charge on *its own judgment* is a substantial right which cannot be taken away.'" *United States v. Acquest Dev., LLC*, 932 F. Supp. 2d 453, 459 (W.D.N.Y. 2013) (quoting *Stirone*, 361 U.S. at 218–19 and *United States v. Gonzalez*, 686 F.3d 122, 127 (2d Cir. 2012) (emphasis in original). "If the Grand Jury Clause means anything, it means that a criminal indictment must actually issue from a grand jury, not some other source.... In order for an indictment to be recognized as actually issuing from a grand jury, it must be the product of an investigative deliberation that is independent of both the prosecuting attorney and the court. Without a guarantee of independence, the indictment would not be the genuine issue of a grand jury within the meaning of the Constitution." *Id.* (citations and internal alterations omitted). "Thus, '[i]t is well-established that the Fifth Amendment may be violated if the independence of the grand jury in performing its historical function is substantially infringed.'" *Id.* (citing *United States v. Collins*, 684 F.3d 873, 885 (9th Cir. 2012)). "In other words, the inquiry is focused on whether the alleged errors infringed upon the grand jury's ability to exercise independent judgment." *Id.* (citation omitted); *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 259 (1988) (explaining that an infringement of the grand jury's independence "may result in grave doubt as to a violation's effect on the grand jury's decision to indict," warranting dismissal of the indictment).

"As a legal advisor to the grand jury, the prosecutor must give the grand jury sufficient information concerning the relevant law 'to enable it intelligently to decide whether a crime has been committed.'" *United States v. Twersky*, No. S2 92 CR. 1082 (SWK), 1994 WL 319367, at *4 (S.D.N.Y. June 29, 1994) (quoting *People v. Calbud, Inc.*, 49 N.Y.2d 389, 395 (N.Y. 1980)). "Although the prosecutor need not give legal instructions which approach the comprehensiveness of the trial judge's charge to the jury, an instruction may be 'so misleading' due to mistakes or omissions, that the ensuing indictment 'will not be permitted to stand even though it is supported by legally sufficient evidence.'" *Id.*

Here, the government's instructions of law in the grand jury effectively took from the grand jury the right to analyze independently whether an essential element of Court One was supported by probable cause. Although Count One required proof that the attempted killing would, if completed, have constituted a violation of state or federal law, the government instructed the grand jury—incorrectly—that every intentional killing is a violation of the law of every state and of the United States. The government then compounded that error by further instructing the grand jury that murder for hire, as charged in Count Two, constitutes a killing in violation of federal law, this notwithstanding the fact that the federal murder for hire statute criminalizes interstate conduct with the intent to kill and does not require a killing. These two errors, independently and collectively, deprived the grand jury of its independence. By instructing the grand jury that an essential element of Count One would be met as a matter of law upon a finding either that Count Two was supported by probable cause or that there was probable cause to believe that Count One implicated an intentional killing (regardless of whether that intentional killing would have met the elements of any specified state or federal law), the government impermissibly infringed on the grand jury's independent right and obligation independently to consider whether the predicate offense element

of Count One was supported by probable cause, and it impermissibly infringed on Mr. Merchant's Fifth Amendment right to face trial only on an indictment returned by an independent grand jury. Count One of the Indictment must therefore be dismissed.

### III.    MR. MERCHANT SHOULD BE GRANTED A NEW TRIAL UNDER RULE 33

A. <u>Legal Standards on a Rule 33 Motion</u>

Rule 33 permits a court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. The rule gives the trial court "broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001) (citation omitted).

A district court may not grant a Rule 33 motion based on the weight of the evidence alone unless the evidence preponderates heavily against the verdict to such an extent that it would be "manifest injustice" to let the verdict stand. *United States v. Archer*, 977 F.3d 181, 188 (2d Cir. 2020). "[A]bsent a situation in which the evidence was patently incredible or defied physical realities, or where an evidentiary or instructional error compromised the reliability of the verdict, a district court must defer to the jury's resolution of conflicting evidence . . . [and] must be careful to consider any reliable trial evidence as a whole, rather than on a piecemeal basis." *Id.* at 188–89. "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *United States v. Bell*, 584 F.3d 478, 2009 WL 3353084, at *4 (2d Cir. 2009) (*per curiam*).

B. <u>Evidentiary and Instructional Errors Warrant a New Trial in This Case</u>

1. *The Court erroneously admitted, and the government heavily relied on, impermissible hearsay.*

Over the defendant's objection, the Court admitted as "statements of a party" a large number of photographs and videos recovered from a Facebook account associated with a username

and email address connected with Mr. Merchant. (Tr. 1188-89.) The defense stipulated that these records were true and accurate copies of records stored in electronic systems maintained by Meta, Inc., but not that they were business records entitled to a presumption of reliability. Of particular salience, the Court admitted into evidence a video clip from the news service Middle East Eye, Govt. Ex. 272. In that video clip, a representative of the Iranian government, in military uniform, states in sum and substance that the Iranian government will obtain vengeance for the targeted killing of General Soleimani by the United States. In admitting the evidence, the Court explained that the government official's statement

> seems to me to go straightforwardly to motive and not to implicate anyone's religious beliefs at all, but rather to say that somebody needs to take revenge for the killing of General Soleimani, and that's what this entire case is about. That seems like a relatively easy call to make. That will be admitted.

(Tr. 1194-95.) The Court also permitted the government to admit several exhibits, drawn from that same Facebook account, that included comments posted by unknown persons who were not identified at trial, including a meme showing a computer-generated image of President Trump's severed head, on which nonparties commented "Allah willing," which was admitted as Gov. Ex. 245.

The news clip video, and the nonparty comments, were inadmissible hearsay, notwithstanding the Court's conclusion that they were relevant to Mr. Merchant's motive, and the government failed to establish any legal basis for their admission into evidence. Moreover, they were highly prejudicial exactly because the comments made by nonparties were so clearly relevant to the government's theory of motive. As the Court noted, the proposition that "somebody needs to take revenge for the killing of General Soleimani" is, from the government's perspective, "what this entire case is about." For that same reason, the erroneous admission of the news clip was particularly prejudicial to the defense.

Notably, the government relied heavily on the inadmissible hearsay sourced from Facebook in its closing argument, compounding the prejudice by inviting the jury to rely on statements of nonparties as indicative of Mr. Merchant's own beliefs and motives. (Tr. 1397-99.) These errors deprived Mr. Merchant of a fair trial and warrant a new trial under Rule 33.

2. *The Court's instructions misled the jury as to the correct legal standard and failed adequately to inform the jury on the law.*

Having failed to allege and prove a required element of Count One (i.e., a predicate violation of state or federal law) the government asked the Court to charge the jury on the "non-jurisdictional elements" of 18 U.S.C. § 1111, and the Court gave essentially the charge requested by the Government.[7] Specifically, the Court instructed the jury:

> [Y]ou must find that the defendant's conduct constituted an offense that violated the laws of any state or of the United States. I instruct you as a matter of law that murder violates the law of every state within the United States, including the District of Columbia. Generally speaking, a person is guilty of murder when, with intent to cause death of another person, he causes the death of such person or of a third person. A person intends to cause the death of another when that person's conscious objective or purpose is to cause the death of another. Consequently, if you find beyond a reasonable doubt that the defendant attempted to commit murder, this element will be satisfied.

(ECF 150-4 at 37; Tr. 1483.)

That charge was erroneous for several reasons. First, it was error to charge the jury on a predicate offense not found by the grand jury that returned the indictment. *United States v. Hassan*, 578 F.3d at 133-34 (finding impermissible constructive amendment when jury charge altered "essential element" from that found by grand jury). The government does not claim to have

---

[7] The Government subsequently agreed that Count One requires proof of a predicate offense and requested that the jury be charged on the elements of first-degree murder under New York law and further instructed that the murder for hire offense charged in Count Two would satisfy the predicate offense requirement. (ECF 147 at 2.) The Court ultimately declined to give those instructions.

presented evidence of a Section 1111 offense to the to the grand jury (with or without its required jurisdictional element) and it did not list that statute as a predicate offense in the Indictment—and indeed, there was no evidence that Mr. Merchant attempted to kill a person within the special maritime and territorial jurisdiction of the United States. Accordingly, charging the jury on the non-jurisdictional elements of Section 1111 was a violation of the Fifth Amendment's requirement that Mr. Merchant be tried only for offenses found by the grand jury.

The Court's instruction was also erroneous in that it did not correctly set forth the legal standard and did not adequately inform the jury on the law. If the jurisdictional element is not met, a killing that violates the remaining elements of Section 1111 does not violate federal law. Section 1111 criminalizes only killings that take place "the special maritime and territorial jurisdiction of the United States." Thus, because the Court's instructions did not include the required jurisdictional element, the Court's instructions did not set out the elements of a federal offense, and a person could meet the elements of the "predicate offense" described in the Court's instructions without violating federal law. Thus, the Court's instruction failed accurately to set forth the federal law of murder.

The Court's instruction also failed accurately to inform the jury on the law of the States. Every state's murder statute criminalizes only a subset of all possible killings that are done with malice aforethought. Among other things, state laws generally criminalize only those killings that take place in, or have a result in, the state where charges are brought. This is so because states generally cannot enforce their murder laws extraterritorially to reach conduct that occurs entirely outside their borders. *See*, *Strassheim v. Daily*, 221 U.S. 280, 285 (1911) ("Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed

in getting him within its power."). By way of example, if a North Carolina resident kills another North Carolina resident in North Carolina, and his conduct does not affect New York in any way, that killing is not a violation of any of New York's murder statutes. *See* N.Y. Crim. P. § 20.20 (setting forth geographical scope of New York's criminal laws). Put simply, not every intentional killing violates the law of every state—and indeed, some intentional killings (such as those done in a military offensive) do not violate the law of any state. It was therefore error to instruct the jury that a person who, "with intent to cause death of another person … causes the death of such person or of a third person" "violates the law of every state within the United States, including the District of Columbia."

Mr. Merchant should therefore be granted a new trial pursuant to Rule 33.

## CONCLUSION

For the reasons set forth above and based on the authorities cited herein, Mr. Merchant's motions under Rules 12, 29, and 33 should be granted.


Dated: New York, New York
        April 13, 2026

                                        Respectfully submitted,


                                        _____

                                        Avraham C. Moskowitz
                                        Christopher Neff
                                        Joshua J. Lax
                                        *Attorneys for Defendant Asif Merchant*