UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

UNITED STATES OF AMERICA,

**MEMORANDUM & ORDER**
24-CR-362(EK)(JRC)

-against-

ASIF MERCHANT,

Defendant.

-----------------------------------x

ERIC KOMITEE, United States District Judge:

Asif Merchant was convicted, following a jury trial, of attempt to commit an act of terrorism transcending national boundaries, in violation of 18 U.S.C. § 2332b (Count One) and murder for hire, in violation of 18 U.S.C. § 1958(a) (Count Two). These charges stem from Merchant's attempt to hire hitmen to kill United States political officials. Merchant now moves for a judgment of acquittal on Counts One and Two under Rule 29, a new trial under Rule 33, and dismissal of Count One under Rule 12. Def.'s Post-Trial Motions, ECF No. 155 ("Def. Br."). For the reasons that follow, these motions are denied.

## I. Background

On September 10, 2024, a grand jury returned a two-count indictment against Merchant. Indictment, ECF. No. 16. Count One charged Merchant with attempting to commit an act of terrorism transcending national boundaries, in violation of 18 U.S.C. § 2332b, by "knowingly and intentionally attempt[ing] to

kill a person within the United States, in violation of the laws of a State and the United States." *Id.* at 1. The indictment did not specify a particular state or federal statute that Merchant's alleged attempted murder violated. *Id.* Count Two charged Merchant with murder for hire, in violation of 18 U.S.C. § 1958(a). *Id.* at 2.

To prove these charges at trial, the government introduced evidence that Merchant sought to hire professional killers to assassinate political officials.

Merchant testified that he was a member of the Islamic Revolutionary Guard Corps ("IRGC"),[1] and that shortly before he traveled from Pakistan to the United States in April 2024, he met with his IRCG handler, Tr. 1125:19-1126:23. Merchant's handler gave him several tasks, including to arrange protests, steal documents, launder money, and have someone killed. Tr. 1125:24-1126:7. The handler did not identify a definitive target for the proposed assassination, but told Merchant that it "could be Donald Trump, Joe Biden or Nikki Haley." Tr. 1206:7-15. With these instructions, Merchant flew to the United States "for the purpose of hiring mafia members to kill a politician."

[1] Merchant testified at trial that he was a member of the Iranian intelligence agency Sepah, Tr. 1108:5-14, and an expert witness clarified that Sepah is another name for the IRGC, Tr. 874:1-6.

Tr. 1158:1-3. Once in the United States, Merchant met with an acquaintance he had tried to recruit to the mission. Tr. 97:15-98:17, 1158:4-6. But instead of joining Merchant’s cause, the acquaintance became an FBI informant. Tr. 92:10-12.

The acquaintance testified that on June 4, 2024, Merchant shared his plan to hire professional killers to kill a “government official or political . . . person” at a rally. Tr. 134:13-135:11. According to this testimony, Merchant demonstrated how the proposed assassination would be carried out by diagramming it on a napkin. Tr. 140:8-142:21. Merchant then asked the acquaintance to “fix a meeting” with professional killers. Tr. 149:13-19. This led to Merchant’s introduction to two undercover FBI agents posing as hitmen. Tr. 254:24-255:4.

At Merchant’s first meeting with the agents, he requested their services for three tasks: stealing documents, organizing protests, and killing someone. Tr. 501:9-12; 1161:8-17. The agents told him that “[e]verything’s got a price” and asked whether he was willing to pay. Tr. 505:23-506:17. Merchant responded, “definitely.” Tr. 506:18-21. The group then set a payment schedule, agreeing that Merchant would pay fifty percent of each job up front and the remaining fifty percent on completion. Tr. 511:15-20; 1162:3-14.

Merchant told the agents that he wanted them to kill politicians, Tr. 507:4-5, but explained that he could not identify the specific target until he returned to Pakistan and consulted with his organization, Tr. 511:7–14, 707:12–23. Merchant discussed how he would securely communicate with the agents from Pakistan, including codes he would use to avoid sharing specifics by phone. Tr. 510:9-511:3. Merchant also confirmed that the agents would accept cash payments from overseas made through a hawala system — an informal money-transfer network that leaves no digital record. Tr. 508:8-509:3.

At a second meeting on June 12, 2024, Merchant agreed to pay the agents a $5,000 retainer to secure their services. Tr. 678:18-680:7. Merchant raised the requested money from relatives abroad, Tr. 320:24-321:6, and met with the agents a third time to hand over the $5,000, Tr. 514:12-15; 683:12-16. This served as "an initial down payment" or "retainer" for Merchant's various requests. Tr. 514:16-18; 702:5-8. After receiving the cash, the agents told Merchant, "now we know we're going forward," and Merchant responded, "[y]es, absolutely." Tr. 685:17-25; 516:11-22.

Merchant understood this payment as a "commitment" by the agents "to do a murder" for him. Tr. 1148:1-3. Once this

payment was made, Merchant thought he "had done everything" he "planned to do before leaving." Tr. 1165:20-22. With his "work in the United States . . . done," Merchant accelerated his return flight to Pakistan. Tr. 1165:9-14. But before Merchant could board the flight, he was arrested by the FBI. Tr. 619:3–8.

After the government presented its case, Merchant moved under Rule 29 for a judgment of acquittal on both counts. Tr. 1087:10–12. Merchant also moved under Rule 12 to dismiss Count One, arguing that the indictment was defective. Tr. 1096:2-18. The next day, he made a second Rule 12 motion to dismiss Count One based on alleged errors in the grand jury proceedings. Tr. 1228:21-1229:5. The Court reserved decision on these motions.

On March 6, 2026, the jury found Merchant guilty on both counts in the indictment. Jury Verdict, ECF No. 151.

## II. Discussion

### A. Merchant's Rule 29 Motion is Denied.

Merchant challenges the sufficiency of the evidence to support his convictions for Counts One and Two, seeking a

judgment of acquittal on both.[2]

1. Legal Standard

"A defendant challenging the sufficiency of the evidence bears a heavy burden." *United States v. Lee*, 834 F.3d 145, 152 (2d Cir. 2016).[3] A court "must sustain the jury's verdict if, crediting every inference that could have been drawn in the government's favor and viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Denkberg*, 139 F.4th 147, 155 (2d Cir. 2025). The Court considers "items of evidence not in isolation but in conjunction" and "defer[s] to the jury's evident assessments of the credibility of the witnesses and its resolution of the weight of the evidence." *United States v. O'Brien*, 926 F.3d 57, 79-80 (2d Cir. 2019).

---

[2] While many of Merchant's arguments are based on speculation regarding the government's instructions to the grand jury, he has not asked this Court to unseal the grand jury transcript or to review that transcript *in camera*. Even if we were to construe Merchant's motion as such a request, it would be denied. As set out below, even assuming that Merchant's allegations are true, he has failed to establish a basis to dismiss the indictment. Merchant has therefore failed to meet his burden to demonstrate the "particularized need that outweighs the need for secrecy" that is required for disclosure of grand jury proceedings. *In re Grand Jury Subpoena*, 103. F.3d 234, 239 (2d Cir. 1996); *see also United States v. Bruno*, 159 F. Supp. 3d 311, 322-23 (E.D.N.Y. 2016) (denying a request to review grand jury transcripts *in camera* without a showing that the disclosure was "needed to avoid a possible injustice").

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

2. Count One

a. The evidence at trial was sufficient for a rational jury to find that the attempted killing would have violated state law.

Merchant challenges the sufficiency of the evidence on Count One to find that the murder he attempted, if completed, would have violated a predicate state or federal law. Def. Br. 7-9.

Count One charged Merchant under 18 U.S.C. § 2332b(a)(2), which prohibits "attempts" to commit an act of terrorism transcending national boundaries in violation of Section 2332b(a)(1). Indictment 2, ECF. No. 16. That provision, as relevant here, reaches "[w]hoever, involving conduct transcending national boundaries . . . kills . . . any person within the United States . . . in violation of the laws of any State, or the United States." 18 U.S.C. § 2332b(a)(1). The statute expressly adopts "the elements of the offense under State law" when a prosecution is "based upon the adoption of State law." *Id.* § 2332b(d)(2). It follows that a Section 2332b prosecution requires sufficient evidence for the jury to find, beyond a reasonable doubt, the "essential elements of the state crime" serving as the predicate offense. *See generally United States v. Pimentel*, 346 F.3d 285, 302 (2d Cir. 2003) (holding

that VICAR and RICO, analogous statutes, require the jury to find the elements of the state-law predicate offense).

Merchant argues that because the government did not identify a specific state murder statute in the indictment or before the grand jury, it cannot have proved Section 2332b(a)'s predicate-offense element. Def. Br. 7-9. But the Rule 29 inquiry is limited, and measures only "the sufficiency of the evidence . . . against the actual elements of the offense." *United States v. Facen*, 812 F.3d 280, 289 (2d Cir. 2016). As the government points out, the jury was instructed on each element of second-degree murder under New York Penal Law § 125.25(1) and found Merchant guilty. Mem. of Law in Opp'n to Def.'s Mot. for Judgment of Acquittal and for a New Trial 32-33, ECF No. 159 ("Gov't Br."). Measured against those elements, the evidence was sufficient.

Under Section 125.25(1), a person is guilty of murder in the second degree when, "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person." N.Y. Penal Law § 125.25(1).[4] Merchant admitted that he

---

[4] As explained further in Section II.B.2 below, Section 2332b adopts only "the elements of the offense under State law, and not any provisions pertaining to criminal procedure or evidence." 18 U.S.C. § 2332b(d)(2). The government was therefore not required to prove that the intended killing would have occurred within New York's territorial jurisdiction because that

"traveled to the United States for the purpose of hiring mafia members to kill a politician," Tr. 1158:1-3, that he would tell them who to kill once he left the United States, Tr. 1164:18-1165:1, and that he understood his payment to have procured their commitment "to do a murder" for him, Tr. 1148:1-3. This evidence was sufficient to permit a rational jury to find that Merchant intended to cause another person's death and that the killing he sought would, if completed, have constituted murder under Section 125.25(1).

Merchant makes no real argument to the contrary. Instead, he argues that the evidence "necessarily" falls short because Section 125.25(1)'s elements do not match the elements presented to the grand jury. Def. Br. 8. But Merchant cannot seek relief on that basis under Rule 29, which "only authorizes motions challenging the sufficiency of the evidence presented at trial." *United States v. al Ghazi*, No. S307CR354(JSR), 2009 WL 1605741, at *2 (S.D.N.Y. June 9, 2009) (rejecting a defendant's challenge to the indictment as "exceed[ing] the proper scope of Rule 29"). Instead, Merchant's argument is properly understood

---

requirement is imposed by New York procedural law. *See* N.Y. Crim. Proc. Law § 20.20.

as a constructive amendment claim, which the Court addresses in the Rule 33 analysis below.

b. The evidence at trial was sufficient for a rational jury to find beyond a reasonable doubt that Merchant took a substantial step toward murder.

Merchant next argues that the evidence was insufficient to establish that he took a "substantial step" toward murder, as required for attempt liability. Def. Br. 9-11.

An attempt conviction "requires proof that a defendant (a) had the intent to commit the object crime and (b) engaged in conduct amounting to a substantial step towards its commission." *United States v. Farhane*, 634 F.3d 127, 145 (2d Cir. 2011). A substantial step "is conduct planned to culminate in the commission of the substantive crime being attempted," *id.* at 147, and must be "strongly corroborative of the firmness of the defendant's criminal intent," *United States v. Desposito,* 704 F.3d 221, 231 (2d Cir. 2013). "For a defendant to have taken a substantial step, he must have engaged in more than mere preparation, but may have stopped short of the last act necessary for the actual commission of the substantive crime." *United States v. Anderson*, 747 F.3d 51, 73–74 (2d Cir. 2014).

Because "substantial-step analysis necessarily begins with a proper understanding of the crime being attempted," *Farhane*, 634 F.3d at 147, the jury "may give weight to that which has already been done as well as that which remains to be accomplished before commission of the substantive crime," *United States v. Pugh*, 945 F.3d 9, 20 (2d Cir. 2019). "A defendant may be convicted of attempt even where significant steps necessary to carry out the substantive crime are not completed," *id.*, particularly when the defendant "did everything within his power to complete the crime," *Anderson*, 747 F.3d at 74; *see also Desposito,* 704 F.3d at 233.

Merchant traveled to the United States "for the purpose of hiring mafia members to kill a politician." Tr. 1158:1-3. He asked his acquaintance to arrange a meeting with professional killers. Tr. 149:13-19. Then, over the course of three meetings, he told the undercover agents he wanted them to kill a political figure, agreed to payment terms, and arranged for future payments to be routed from abroad. Tr. 507:3–12, 508:8–509:9, 511:15–20, 1161:22–1162:14. When asked to pay a $5,000 retainer to cement the relationship, Merchant raised the money from relatives overseas and promptly paid. Tr. 1162:21-25; 514:12-18, 1145:16-1146:23.

While Merchant did not name a target, this does not reduce his conduct to mere preparation. He told the agents that he could not identify a target until he consulted with members of his organization in Pakistan. Tr. 511:10–14, 707:18–23. And before Merchant's planned return, he put in place means to transmit the target's name and payment for the job from overseas. Tr. 510:7–511:3, 508:8–509:9. Having done everything within his control in the United States, Merchant considered his work in the country "done" and moved up his departure — but was arrested before he could board his flight. Tr. 1165:9-22, 619:3–15.

Merchant may well be correct that there remained "significant steps necessary to carry out the substantive crime." *Pugh*, 945 F.3d at 20. But a rational jury could nevertheless have easily concluded that by raising funds for a retainer from relatives abroad and paying it to purported hitmen, Merchant took steps "planned to culminate in the commission of the substantive crime" that are "strongly corroborative of the firmness of [his] criminal intent." *Farhane*, 634 F.3d at 147. And although Merchant was arrested before he could return to Pakistan to identify a target, he had "d[one] everything" he could at that point to bring about the crime. *Anderson*, 747 F.3d at 74. Based on this evidence, a

rational jury could find that Merchant took a substantial step toward an intended killing.

The cases Merchant relies on do not suggest otherwise. In *United States v. Martinez*, the Second Circuit concluded that the defendant's "$350 down payment" to a purported hitman was "the last step required" to accomplish the killing. 775 F.2d 31, 35 (2d Cir. 1985). While Merchant emphasizes that the parties in *Martinez* had agreed on a target, here, Merchant needed to consult with his organization abroad before providing the target — and was on his way to do just that when he was arrested. Merchant's conduct is also distinguishable from *United States v. Delvecchio*, 816 F.2d 859 (2d Cir. 1987). In that case, the Second Circuit found the defendants' "verbal agreement" to purchase heroin, without taking any "overt act" toward completing the transaction, insufficient to sustain a conviction for attempt to possess heroin. 816 F.2d at 862. Here, unlike the defendants in *Delvecchio*, Merchant took a number of significant overt actions.

Drawing all inferences in the government's favor, the evidence was sufficient for a rational jury to find that Merchant took a substantial step toward an intentional killing. Merchant's motion for a judgment of acquittal on Count One is therefore denied.

3. Count Two

Merchant also moves for a judgment of acquittal on Count Two, arguing that the evidence was insufficient to establish an agreement to commit murder in exchange for consideration. Def. Br. 11-14.

Murder for hire under Section 1958(a) prohibits "traveling in interstate or foreign commerce, or using a facility of interstate commerce, with intent that a murder be committed as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value." *United States v. Zhang*, 135 F.4th 44, 50 (2d Cir. 2025). The statute defines "anything of pecuniary value" as "anything of value in the form of money, a negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage." 18 U.S.C. § 1958(b)(1). "When the defendant is the solicitor of the murder-for-hire, it is the defendant's intent that controls." *United States v. Hardwick*, 523 F.3d 94, 100 (2d Cir. 2008).

"[T]o sustain a conviction under this statute, there must be a *quid-pro-quo* (or at least the promise of such) between the parties to the transaction." *Zhang*, 135 F.4th at 50. "Not all intended exchanges, however, satisfy the statute's pecuniary value requirement." *United States v. Babilonia*, 854 F.3d 163,

174 (2d Cir. 2017). For example, the promise of "a favor" without evidence "that either party had an understanding as to the form that it would actually take," is insufficient. *United States v. Frampton*, 382 F.3d 213, 219 (2d Cir. 2004).

Merchant argues that "an actual, overt agreement to commit a murder in exchange for consideration is required," and that without evidence of all the terms of the agreement, he must be acquitted. Def. Br. 12-13. But the Second Circuit has held — squarely to the contrary — that "no actual, enforceable agreement is required." *United States v. Anderson*, 188 F.4th 571, 581 (2d Cir. 2026). This is because "[t]he statutory phrase consideration for a promise or agreement to pay does not create a separate agreement element, but rather modifies the type of intent which a defendant must possess, namely, the intent to commit a murder for hire." *Id.* It is therefore Merchant's "intent that controls." *Hardwick*, 523 F.3d at 100. And here, a rational jury could easily find that Merchant intended the agents to commit murder in exchange for a promise of money.

At their first meeting on June 10, Merchant told the agents that he wanted to hire them for three jobs, including killing a politician. Tr. 505:3-7, 507:3-5. The agents told him that "[e]verything's got a price" and asked whether he was willing to pay. Tr. 505:23-506:21. Merchant responded, "definitely."

*Id.* After the agents told him the work "would cost money," Tr. 1161:22-1162:14, they confirmed a payment schedule for future jobs, Tr. 511:15-20, and agreed that Merchant could pay in cash routed through a hawala from overseas, Tr. 508:8-509:9. On June 12, Merchant agreed to pay a $5,000 retainer, Tr. 678:22-680:7, 1162:21-25, and on June 21, he paid it, Tr. 683:12-16. At trial, Merchant testified that he understood his payment as securing their "commitment . . . to do a murder" for him. Tr. 1148:1-3. This evidence was sufficient to sustain Merchant's conviction on Count Two.

Merchant emphasizes that the victim's identity and full price had not been set, and relies on *Frampton* to argue that Section 1958(a) requires a more detailed agreement. Def. Br. 12-13. But *Frampton* did not require agreement on these terms. It held only that the promise of "an unspecified future favor," without evidence "that either party had an understanding as to the form that it would actually take," could not support a conviction. *Frampton*, 382 F.3d at 217, 219. Here, the evidence supported that Merchant's promised consideration would take the form of a cash payment, Tr. 508:8-509:9, and that the murder would be of a high-ranking political figure, Tr. 226:3-12; 1206:7-15. *Frampton* requires nothing more.

Merchant also argues that the evidence was insufficient because it is unclear whether the $5,000 was a "gift" or a "payment for services to be rendered," or if that payment would be credited toward a murder. Def. Br. 13. But at this stage the Court must "credit[] every inference that could have been drawn in the government's favor." *Denkberg*, 139 F.4th at 155. And here, the agents testified — and the recorded evidence corroborated — that the payment was "an initial down payment" for their services, Tr. 514:16-18, to be "credited against any future payments," Tr. 680:3-7, and that those services included a future assassination, Tr. 501:9-12. While the consideration and the killing must be mutually inducing promises, *Anderson*, 188 F.4th at 581, there is no requirement that the consideration be allocated to murder alone. A rational jury could therefore find that the $5,000 was consideration for a future killing. Indeed, the content and context of the conversations between the defendant and the undercover agents tend strongly to undermine any suggestion that the payment was a mere gift.

In any event, Section 1958(a) is satisfied when a murder is intended "as consideration for a promise or agreement to pay" anything of pecuniary value. *Zhang*, 135 F.4th at 50. Merchant's promise to pay the agents half of each job's price in

advance and the remainder on completion independently satisfies the consideration element. Merchant's motion for judgment of acquittal on Count Two is therefore denied.

**B. Merchant's Rule 33 Motion is Denied.**

In the alternative, Merchant moves for a new trial under Rule 33, arguing that (1) the jury instructions misstated the law, (2) those instructions worked a constructive amendment of the indictment, and (3) the Court admitted inadmissible hearsay evidence at trial. Def. Br. 21-25.

1. Legal Standard

Under Rule 33, a court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. While "Rule 33 confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice," that discretion must be exercised "sparingly" and limited to "the most extraordinary circumstances." *United States v. Sanchez*, 969 F.2d 1409, 1413-14 (2d Cir. 1992). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001).

2. The jury instructions set forth the correct legal standard.

Merchant argues that the jury instructions misstated the legal standard for Section 2332b's predicate-offense element. Def. Br. 24-25. As explained in Section II.A.2 above, Section 2332b explicitly adopts "the elements of the offense under State law" when a prosecution is "based upon the adoption of State law," 18 U.S.C. § 2332b(d)(2), and there must be evidence sufficient for those elements to be found by the jury at trial, *Pimentel*, 346 F.3d at 302. The Second Circuit has not, however, required that the jury be instructed on the definitions of state-law predicate offenses in every instance. *Id.*; *United States v. Carrillo*, 229 F.3d 177, 186 (2d Cir. 2000). It has instead affirmed convictions when the jury heard "undisputed evidence" of the underlying crime, reasoning that in such situations, the Court's "failure to define the predicate act" was "of small practical consequence." *Pimentel*, 346 F.3d at 303-04. The Circuit has repeatedly advised, however, "that the safer course [is] for trial judges to instruct the jury on the elements of the predicate offense" rather than giving a "generic definition." *Id.* at 304.

Here, the Court took the safer course. The jury was instructed that to convict on Count One, it must find "that the defendant's conduct constituted an offense that violated the laws of any state or of the United States." Tr. 1483:15-17.

The Court then explained that murder "violates the law of every state," Tr. 1483:17-19, but defined murder in terms tracking New York Penal Law § 125.25(1), element-by-element. That statute imposes criminal liability on a person who (as the Court instructed the jury) "with intent to cause the death of another person, . . . causes the death of such person or of a third person." Tr. 1483:20-22; *see* N.Y. Penal Law § 125.25(1).[5] The Court next instructed the jury on New York's definition of intent.[6] Finally, the Court explained that "if you find beyond a reasonable doubt that the defendant attempted to commit murder, [the predicate-offense] element will be satisfied." Tr. 1483:25-1484:2.

Merchant argues that this charge was incomplete because "state laws generally criminalize only those killings that take place in, or have a result in, the state where charges are brought," and the Court did not charge a jurisdictional

[5] Because the source of the jury charge was not the federal murder statute, 18 U.S.C. § 1111, the Court does not address Merchant's argument that the jury charge failed to correctly include each of the elements of that statute. *See* Def. Br. 23-24.

[6] The Court charged the jury that "[a] person intends to cause the death of another when that person's conscious objective or purpose is to cause the death of another." Tr. 1483:22–25. New York's model jury instructions for second-degree murder provide that "a person acts with intent to cause the death of another when that person's conscious objective or purpose is to cause the death of another." N.Y. Penal Law § 125.25(1) Criminal Jury Instruction.

element. Def. Br. 24-25. But New York's murder statute has no jurisdictional element. The geographic reach of New York's criminal laws is set by procedural law. *See* N.Y. Crim. Proc. Law § 20.20. And in a Section 2332b prosecution "based upon the adoption of State law, only the elements of the offense under State law, and not any provisions pertaining to criminal procedure or evidence, are adopted." 18 U.S.C. § 2332b(d)(2).

Finally, Merchant argues that some intentional killings are justified, and therefore lawful. Def. Br. 25. But justification is a defense under New York law, not an element of the crime. N.Y. Penal Law § 35.00. Because Merchant did not raise that defense, no justification instruction was necessary here.[7] The jury instructions therefore correctly set forth the elements of the predicate offense, and Merchant has shown no instructional error, let alone manifest injustice.

3. The Court's jury instructions did not constructively amend the indictment.

Merchant next argues that, even if the petit jury was properly instructed, the Court constructively amended the indictment by charging the elements of a specific murder statute

[7] While Merchant offered evidence of his fear for his family's safety to *negate his intent* to commit the charged crimes, Tr. 1076:14-1077:3, 1080:1-9, he chose not to argue — or seek an instruction concerning — a justification or duress defense.

"not found by the grand jury." Def. Br. 23. But the constructive-amendment inquiry asks whether the trial altered the "terms of the indictment," not whether it matched the elements as presented in the grand jury. *United States v. Lisyansky*, 806 F.3d 706, 712 (2d Cir. 2015). And because the indictment gave Merchant notice of the core of criminality to be proved at trial, this argument falls short.

"To prevail on a constructive amendment claim, a defendant must demonstrate that the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify *essential elements* of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *Id.* "Not every divergence from the terms of an indictment, however, qualifies as a constructive amendment." *Id*. Rather, the Second Circuit has "consistently permitted significant flexibility in proof adduced at trial to support a defendant's conviction, provided that the defendant was given *notice* of the *core of criminality* to be proven against him." *Id*. And when the "charges are constructively narrowed" or "a generally framed indictment encompasses the specific legal theory or evidence used at trial, there is no constructive

amendment." *United States v. Salmonese*, 352 F.3d 608, 620 (2d Cir. 2003).

Count One of the indictment alleged that Merchant violated Section 2332b by "knowingly and intentionally attempt[ing] to kill a person within the United States, in violation of the laws of a State and the United States." Indictment 1, ECF No. 16. This allegation gave Merchant notice of the core of criminality that the government would attempt to prove: he attempted to commit a killing that would have violated state or federal law. The Court's instructions matched that charge, requiring the jury find that Merchant "intended to . . . kill another person in violation of the laws of a state or of the United States," Tr. 1482:6-9, before charging the elements necessary to find a person "guilty of murder" under New York Penal Law § 125.25(1), Tr. 1483:20-1484:2. These jury instructions permissibly charged a "specific legal theory" — that the attempted killing violated a particular state murder statute — encompassed within the indictment's broader theory that Merchant attempted to kill a person in violation of state or federal law. *Salmonese*, 352 F.3d at 620. Merchant therefore cannot show that these instructions "so altered an essential element of the charge that, upon review, it is uncertain whether [he] was convicted of conduct that was the subject of the grand

jury's indictment." *United States v. Rigas*, 490 F.3d 208, 227 (2d Cir. 2007). Because the terms of the indictment gave Merchant notice of the core of criminality proved at trial, his constructive amendment claim must likewise be rejected.

4. The statements on Merchant's Facebook page were <u>properly admitted.</u>

Merchant next argues that a new trial is warranted because the Court improperly admitted hearsay evidence. Specifically, he challenges the Court's admission of (1) GX 272, a news clip Merchant shared on his Facebook feed in which a representative of the Iranian government states that it would avenge United States's killing of General Soleimani, and (2) GX 245, an image Merchant posted that included nonparty comments stating "Allah willing." Def. Br. 21-23.

Hearsay is a statement offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). A statement "offered as circumstantial evidence of [the defendant's] state of mind" is not hearsay, "because it was not offered to prove the truth of the matter asserted." *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988). Here, neither challenged exhibit was offered for its truth and therefore both were properly admitted. GX 272 was not offered to prove that Iran would avenge General Soleimani's death. Instead, it was offered

to show that *Merchant shared* the video, providing some circumstantial evidence of his motive and intent for the attempted killing. *Id.* at 21. And the comments on GX 245, stating "Allah willing," certainly were not offered for their truth. Rather, these comments merely provide context for the image Merchant posted. *United States v. Bouterse*, 765 F. App'x 463, 468 (2d Cir. 2019) ("[S]tatements not offered for their truth, but instead, for their effect on the listener or for context, may be introduced as non-hearsay statements."). Because none of the challenged evidence was erroneously admitted, Merchant's Rule 33 motion on this ground is denied.[8]

### C. Merchant's Rule 12 Motion to Dismiss Count One is Denied.

Though he has not had access to the relevant transcripts, Merchant contends that the government must have instructed the grand jury incorrectly on the question of what would suffice to satisfy the predicate-offense element of Count One. Def. Br. 14-16. On that basis, he seeks dismissal of

---

[8] Merchant does not make a separate Rule 403 argument in his briefing, including no reference to that rule or related caselaw. Instead, he argues that a new trial is warranted under Rule 33 because the supposedly erroneously admitted evidence was not harmless but was instead highly prejudicial. Because Merchant does not clearly assert a separate Rule 403 argument, this Court does not address it. *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Count One under Rule 12(b)(3). Because Merchant's motion is not only untimely, but meritless, it is denied.

1. Merchant has failed to show good cause for his untimely Rule 12 motion.

Merchant argues that his Rule 12 motion was timely because the alleged grand jury defect was not apparent until the government's March 5 letter, and that, in the alternative, he has shown good cause for raising it mid-trial. Def. Br. 14-16.

A motion alleging "an error in the grand-jury proceeding" "must be raised by pretrial motion if the basis for the motion is then reasonably available." Fed. R. Crim. P. 12(b)(3); *see also O'Brien*, 926 F.3d at 83. A court may, however, consider an untimely motion "if the party shows good cause." Fed. R. Crim. P. 12(c)(3). Good cause does not exist when the facts underlying the motion "were notorious and available" to the moving party "in the exercise of due diligence before the trial." *O'Brien*, 926 F.3d at 83. And "[a] strategic decision by counsel not to pursue a claim" or the "inadvertence of one's attorney" are "insufficient to establish cause." *United States v. Yousef*, 327 F.3d 56, 125 (2d Cir. 2003).

Merchant contends that he was first put on notice that the government did not properly instruct the grand jury on a qualifying predicate offense when the government submitted its

March 5 letter regarding its proposed jury charge. Def. Br. 15; *see* March 5 Letter 3, ECF No. 143 (asking that "the Court instruct the jury that murder as proscribed by [18 U.S.C. § 1111] violates the law in every state," "rather than instruct[ing] the jury on the elements of murder in every state"). But Merchant's claim boils down to an assertion that the government erred in instructing the grand jury on a qualifying predicate offense sufficient to indict on Count One. The indictment, available to Merchant for some seventeen months pretrial, identified no specific predicate statute. Indictment, ECF No. 16.

In the exercise of (minimal) due diligence, that omission on the face of the indictment should have put Merchant on notice of the alleged error. In fact, a colloquy occurring during trial indicates that it *had actually* put Merchant on such notice. The day before the government submitted its March 5 letter, Merchant's counsel argued at trial that the government "failed to identify a predicate offense in the indictment," Tr. 1089:14-15, and on that basis suggested that the government may have "failed to put those elements before the grand jury," Tr. 1089:18-19. Because the facts underlying Merchant's Rule 12 challenge were reasonably available before March 5 — and, indeed, before trial, *O'Brien*, 926 F.3d at 83 — his motion is

untimely and he has failed to show good cause to excuse the delay.

2. In any event, the relief Merchant requests is unavailable because the petit jury's verdict rendered any grand jury error harmless.

Addressing Merchant's claims on the merits, he argues that the government incorrectly instructed the grand jury on what was sufficient to establish Count One's predicate offense. Specifically, he surmises that the government must have told the grand jury the predicate-offense element would be satisfied by a finding of probable cause on Count Two or that the charged conduct involved an intentional killing, regardless of whether that killing violated a specified law.[9] Even assuming Merchant's allegations are true, the petit jury's verdict rendered any claimed error harmless.[10]

"[T]he petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable

---

[9] This Court does not address whether each of Merchant's allegations, if true, would describe legal error. In the context of RICO prosecutions, however, the Second Circuit has indicated that providing the grand jury a "generic definition" of the state-law predicate act is sufficient. *United States v. Orena*, 32 F.3d 704, 714 (2d Cir. 1994); *see Carrillo*, 229 F.3d at 183 (distinguishing the "purposes and requirements of the indictment" from what "the government must prove" at trial).

[10] As previously noted, Merchant did not request that this Court inspect or otherwise disclose the grand jury minutes. *See supra* note 2. But even construing his motion as such a request, Merchant's allegations are insufficient to establish a basis for disclosure under applicable standards. *See id.*

cause to charge the defendants with the offenses for which they were convicted," rendering "any error in the grand jury proceeding . . . harmless." *United States v. Mechanik*, 475 U.S. 66, 67, 70 (1986). The Second Circuit has recognized that, under *Mechanik*, an "error in explaining the law" to the grand jury is "cured" by a conviction at trial. *Lopez v. Riley*, 865 F.2d 30, 33 (2d Cir. 1989).

Merchant argues that *Mechanik* does not apply because the petit jury was not properly instructed on Section 2332b's predicate-offense element and therefore could not have found that element beyond a reasonable doubt. Def. Br. 16-17. But as explained above on Merchant's Rule 29 and Rule 33 motions, the petit jury was properly instructed on the elements of Section 2332b, including its predicate-offense element, and found Merchant guilty. Under *Mechanik*, this verdict cures any erroneous legal instructions in the grand jury proceeding. *United States v. Murphy*, No. 18-CR-373-11, 2023 WL 3098490, at *4 (S.D.N.Y. Apr. 26, 2023) (concluding that potential error in the grand jury instructions was rendered harmless by the petit jury's verdict).

Merchant also argues that the Court may dismiss Count One under its supervisory power to deter prosecutorial misconduct, regardless of the petit jury's verdict. Def. Br.

17. But the Supreme Court has made clear that a court's supervisory powers cannot be used to evade harmless-error review, and dismissal is appropriate only if the "errors prejudiced the defendant[]." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). To serve as a basis for dismissal, the misconduct must have "deprived [the] defendant of a fair determination of the issue of guilt or innocence" at trial. *United States v. Friedman*, 854 F.2d 535, 583-84 (2d Cir. 1988) (applying *Mechanik* even when the government was assumed to have "willfully and repeatedly" violated grand jury rules). Merchant alleges an error in explaining what was required to find probable cause on an element of Count One. But because the petit jury was properly instructed on the law, and found Merchant guilty beyond a reasonable doubt, this error was "cured in the trial before the petit jury." *Lopez*, 865 F.2d at 33; *see also Murphy*, 2023 WL 3098490, at *4. Merchant has put forward no convincing basis to conclude that the alleged misconduct deprived him of a fair determination at trial, and his Rule 12 claim must therefore be rejected.

## III. Conclusion

The Court concludes that the jury's guilty verdict was supported by competent, satisfactory, and sufficient evidence properly admitted in a fair trial, and that Merchant raises no

substantial issues in his post-trial briefing. Accordingly, Merchant's motions for a judgment of acquittal under Rule 29, a new trial under Rule 33, and dismissal of Count One of the indictment under Rule 12 are denied.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated: November 3, 2026
Brooklyn, New York